**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN CA 313138)
SHarutyunyan@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

**JENNER & BLOCK LLP**
Adam G. Unikowsky (*pro hac vice*)
AUnikowsky@jenner.com
1099 New York Ave NW
Washington, DC 20001
Telephone: 202 639-6000
Facsimile: 202 639-6066

*Attorneys for Defendant*
*Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LUCY YE individually, and on behalf of all others similarly situated,

Plaintiff.

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 4:26-cv-01744-KAW

**DEFENDANT UBER TECHNOLOGIES, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Date: June 18, 2026
Time: 1:30 p.m.
Courtroom: TBD
Judge: Hon. Kandis A. Westmore

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTE THAT on June 18, 2026, at 1:30 p.m., or as soon thereafter as the matter may be heard in a to be determined Courtroom of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, CA 94612, before Honorable Judge Kandis A. Westmore, Defendant Uber Technologies, Inc. ("Uber") will, and hereby does, move the Court for an order to compel individual arbitration of the claims of Plaintiff Lucy Ye ("Plaintiff") and stay this action pending the completion of the individual arbitration proceedings.

Uber brings this Motion pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., on the ground that Plaintiff's claims are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate her claims individually. Plaintiff assented to a binding arbitration provision in Uber's Terms of Use that squarely covers Plaintiff's claims and this dispute. Uber asks the Court to enter an order enforcing the arbitration provision, compelling individual arbitration of Plaintiff's claims, and staying this action accordingly.

This Motion is based on this Notice of Motion and Motion; Memorandum of Points and Authorities in Support Thereof; the Declaration of Allison Gordon, and all exhibits thereto; all documents in the Court's file; and on such other arguments as may be presented to the Court. Pursuant to Local Rule 7-1 (c), a proposed order accompanies this Motion.

Respectfully submitted.

Dated: April 24, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*
Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
** Pro hac vice*

# TABLE OF CONTENTS


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 1

I. UberX Is One of Uber's Mobility Service Product Offerings. ..... 1

II. Plaintiff Accepted Uber's Terms. ..... 2

III. The Terms Contain a Broad Arbitration Agreement and a Delegation Agreement. ..... 2

IV. Plaintiff Filed this Lawsuit in Violation of the Terms. ..... 3

ARGUMENT ..... 4

I. The Parties Formed an Arbitration Agreement That Encompasses This Dispute. ..... 4

II. The FAA Applies to the Arbitration Agreement. ..... 5

III. The Delegation Agreement Should be Enforced. ..... 5

A. The Delegation Agreement Clearly and Unmistakably Delegates Threshold Arbitrability Issues to the Arbitrator. ..... 6

B. An Arbitrator Must Decide Plaintiff's Enforceability Challenges. ..... 7

IV. The Class Action Waiver and the Mass Action Waiver Are Both Enforceable. ..... 8

A. The Waivers Do Not Render the Arbitration Agreement Illusory. ..... 8

B. The Class Action Waiver and Mass Action Waiver Are Not Unconscionable. ..... 9

1. There Is No Procedural Unconscionability. ..... 10

2. The FAA Preempts Any Argument That the Class Action Waiver Is Substantively Unconscionable. ..... 11

3. The Mass Action Waiver Is Not Substantively Unconscionable. ..... 12

V. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable. ..... 16

A. The Pre-Arbitration Dispute Resolution Conference Is Not Unconscionable. ..... 16

B. The Grouping Provision Is Not Unconscionable. ..... 17

C. Other Miscellaneous Provisions Challenged by Plaintiff Are Not Unconscionable. ..... 18

D. Heckman Is Readily Distinguishable. ..... 20

VI. The Court Should Sever Any Provision It Deems Unenforceable. ..... 21

VII. This Lawsuit Must Be Stayed Pending Arbitration. ....22

CONCLUSION....22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**


*Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867 (N.D. Cal. 2023) ....................7, 11

*Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773 (Ct. App. 2012) ....................10

*Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) ....................14

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669 (Cal. 2000) ....................10

*Asmus v. Pac. Bell*, 999 P.2d 71 (Cal. 2000) ....................8

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ....................*passim*

*Baltazar v. Forever 21, Inc.*, 367 P.3d 6 (Cal. 2016) ....................10

*Barnett v. V.T. Motors LLC*, 2021 WL 5759113 (D. Ariz. Dec. 3, 2021) ....................9

*Batory v. Sears, Roebuck & Co.*, 124 F. App'x 530 (9th Cir. 2005) ....................9

*Bennett v. Hibernia Bank*, 305 P.2d 20 (Cal. 1956) ....................5

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023) ....................16, 17

*Bishay v. Marshack (In re Bishay)*, 2012 WL 5236169 (B.A.P. 9th Cir. Oct. 24, 2012) ....................15

*Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 82 (D.C. Cir. 2005) ....................17

*Booth v. United States*, 914 F.3d 1199 (9th Cir. 2019) ....................16

*Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287 (E.D. Cal. July 31, 2025) ....................15, 22

*Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022) ....................6, 8

*Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985 (N.D. Cal. 2017) ....................4, 10

*Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 704 (9th Cir. 2024) ....................12

*Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946 (N.D. Cal. 2023) ....................11

*Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481 (9th Cir. 1991) ....................15

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. ....................6

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024) ....................6

*Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797 (N.D. Cal. 2021) ....20

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ....15, 17

*Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881 (N.D. Cal. Feb. 2, 2017) (Westmore, J.) ....19, 20

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert denied*, 146 S. Ct. 96 (2025) ....21, 22

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ....4, 6

*Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021) ....12, 14

*Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023)....8

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....15, 18

*Huber v. Uber Techs., Inc.*, No. 25CU012082C (San Diego Sup. Ct. Jan. 8, 2026) ....7

*Jacksen v. Chapman Scottsdale Autoplex, LLC*, 2021 WL 3410912 (D. Ariz. July 21, 2021) ....7

*Jenkins v. PetSmart, LLC*, 2023 WL 8548677 (E.D. Pa. Dec. 11, 2023) ....15, 22

*Keebaugh v. Warner Bros. Ent. Inc.,* 100 F.4th 1005, 1023 (9th Cir. 2024)....12

*Keller v. Chegg, Inc.*, 2023 WL 5279649 (N.D. Cal. Aug. 15, 2023) ....10

*Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024)....7, 22

*Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004 (N.D. Cal. 2024)....11

*McCaffrey Grp., Inc. v. Super. Ct.*, 169 Cal. Rptr. 3d 766 (Ct. App. 2014) ....10

*Mendoza v. QVC, INC.*, 2021 WL 859998 (C.D. Cal. Mar. 8, 2021)....17

*Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994 (N.D. Cal. 2011)....14

*Mitton v. State Bar of Cal.*, 455 P.2d 753 (Cal. 1969)....17

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) ....6, 7

*Moore v. Trader Joe's Co.,* 4 F.4th 874, 882-85 (9th Cir. 2021)....1

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....5, 12

*Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052 (D. Nev. 2019) ....4

*Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124 (N.D. Cal. 2018), *aff'd*, 971 F.3d 1088 (9th Cir. 2020)....5

*Nuriyev v. Uber Techs., Inc.*, 2025 WL 2822878 (N.D. Cal. Oct. 3, 2025) ....4

*O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018)....5

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505 (9th Cir. 2023) ....11

*Olson v. FCA US, LLC*, -- F.4th --, 2026 WL 934267 (9th Cir. Apr. 7, 2026)....6

*Philpott v. Ernst & Young LLP*, 2010 WL 11406230 (W.D. Wash. Dec. 29, 2010)....17

*Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273 (S.D.N.Y. 2025)....22

*Platt Pac., Inc. v. Andelson*, 862 P.2d 158 (Cal. 1993) ....18

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017)....20

*Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520 (Ct. App. 2024)....22

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010)....4, 5

*Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209 (9th Cir. 2026) ....14

*Scally v. PetSmart LLC*, 2023 WL 9103618 (N.D. Cal. May 25, 2023) ....22

*Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727 (9th Cir. 2006)....9

*Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 518 (Ct. App. 2013)....17

*Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987)....16

*Shivkov v. Artex Risk Sols., Inc.,* 974 F.3d 1051, 1066-67 (9th Cir. 2020)....12

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ....22

*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ....7

*Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945 (N.D. Cal. Nov. 9, 2023)....13, 19

*Taylor v. Shutterfly, Inc.*, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ....7

*Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621 (Ct. App. 2014) ....6

*Tutor-Saliba Corp. v. Starr Excess Liab. Ins. Co., Ltd.*, 2015 WL 13285089 (C.D. Cal. Apr. 23, 2015)....15

*Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)....12

*Waggoner v. Panera, LLC*, 2025 WL 2377072 (C.D. Cal. May 20, 2025)....9

*Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544 (Ct. App. 2006) .......... 11

*Wisniewski v. Clary*, 120 Cal. Rptr. 176 (Ct. App. 1975) .......... 17

**Statutes**

9 U.S.C. § 1, *et seq* .......... 1

9 U.S.C. § 2 .......... 5, 11

9 U.S.C. § 3 .......... 12, 22

Cal. Civ. Proc. Code § 1060 .......... 4, 5

## INTRODUCTION

Plaintiff Lucy Ye filed this putative class action on behalf of Uber customers who purportedly paid for a ride advertised as "Faster" or with a specific arrival time but who were not picked up within the advertised time. Plaintiff alleges violations of California state law and seeks a declaration that her arbitration agreement with Uber is void and unenforceable. Plaintiff's claims are meritless. As the Complaint acknowledges, Uber makes clear to consumers that "ETA times are estimates and not guaranteed. A variety of external factors such as heavy traffic or road construction can impact travel time." Compl. ¶ 26. Moreover, reasonable consumers are charged with using their experience and common sense in assessing advertising claims. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882–85 (9th Cir. 2021).

Although Plaintiff's claims should be dismissed, it should be an arbitrator—not this Court—that should dismiss them. Plaintiff, an Uber user, entered into a binding agreement with Uber requiring her to resolve any disputes arising from her relationship with Uber through individualized arbitration. This lawsuit falls squarely within the scope of that arbitration agreement, which is enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA"). While Plaintiff's Complaint challenges various aspects of the arbitration agreement, the agreement contains a standalone Delegation Agreement which requires an arbitrator, not this Court, to resolve the bulk of those issues. Plaintiff's challenges that are properly raised in court—her challenge to the Delegation Agreement itself, as well as the Arbitration Agreement's class action and mass action waivers—fail in light of abundant case law upholding similar provisions.

The Court should enforce the Parties' arbitration agreement and stay this lawsuit.

## STATEMENT OF FACTS

### I. UberX Is One of Uber's Mobility Service Product Offerings.

Uber is a technology company that develops and operates digital marketplace platforms, including Uber's well-known mobility platform, which offers riders a number of different options for securing rides, such as UberX, Uber Black, and Uber Comfort, among others. Declaration of Allison Gordon ("Gordon Decl.") ¶ 4. UberX, one of Uber's core ride service offerings, matches riders with nearby drivers for private transportation. Gordon Decl. ¶ 4. Riders connect with drivers through the Uber app. Gordon Decl. ¶ 4.

Any rider who wishes to access the Uber App must first go through the sign-up process and agree at the time of her registration to Uber's Terms of Use ("Terms"). Gordon Decl. ¶ 5.

## II. Plaintiff Accepted Uber's Terms.

Plaintiff created an Uber account on October 31, 2016 and, as a condition of accessing and using Uber's platform, agreed to the Terms at the time of her registration. Gordon Decl. ¶ 8 & Ex. A. Uber periodically updates its Terms, each time requiring its users to consent to the updated Terms, Gordon Decl. ¶¶ 6, 12–13; Uber last did so on March 9, 2026, Gordon Decl. ¶ 17 & Ex. G.4. Plaintiff most recently agreed to Uber's updated Terms on April 1, 2026. Gordon Decl. ¶ 16 & Ex. A. Plaintiff bases the allegations in her Complaint on the arbitration agreement in the Terms as they existed as of January 15, 2026. Compl. ¶ 57. That arbitration agreement is substantively identical to the arbitration agreement in the Terms to which Plaintiff most recently agreed. Gordon Decl. ¶ 17 & Ex. G.4.

## III. The Terms Contain a Broad Arbitration Agreement and a Delegation Agreement.

Uber's Terms include a comprehensive Arbitration Agreement that covers "any dispute, claim, lawsuit, or controversy in any way arising between [the consumer] and Uber," including any dispute arising out of or relating to the Terms or Plaintiff's use of Uber's platform at any time. Terms § 2(a)(1). The Arbitration Agreement excludes individual small claims cases, individual cases of sexual assault or sexual harassment, and intellectual property claims seeking equitable relief. Terms § 2(b). The Arbitration Agreement includes a Class Action Waiver and a Mass Action Waiver, both of which are designed to ensure that Plaintiff and Uber will arbitrate their claims on an individualized basis. The Class Action Waiver bars either party from pursuing any dispute "as a class, collective, coordinated, consolidated, and/or representative action"—though it does not prevent either party from participating in a class settlement. Terms § 2(a)(2). The Mass Action Waiver similarly precludes resolution of disputes as a "Mass Action," defined as a proceeding in which a party is represented by counsel who has filed 50 or more substantially similar arbitration demands against the other party within 180 days. Terms § 2(a)(3).

In the event of a Mass Action, either party may opt out of arbitration within thirty days to proceed with their claims on an individual basis in court. Terms § 2(a)(3)(b). If neither party opts out, the Terms establish an efficient means of resolving the mass arbitration: a Special Master resolves common threshold procedural disputes, with any claims withstanding that threshold review proceeding to individualized

arbitration in groups of no more than one hundred. Terms §§ 2(a)(3)(c). Uber bears all Special Master and Dispute Procedure costs and filing fee obligations are stayed during Special Master proceedings—meaning that no claimant faces out-of-pocket expense while the threshold process runs its course. Terms § 2(a)(3)(b). Every claimant whose claim moves forward receives an individual hearing before an arbitrator who is expressly *not* bound by decisions in any other proceeding. Terms § 2(g).

The Arbitration Agreement includes several provisions designed to ensure that the arbitration agreement is fair to riders. A claimant's responsibility to pay filing, administrative, and arbitrator fees does not exceed the amount the claimant would be required to pay if she filed her claim in court. Terms § 2(h). Any claimant with a gross monthly income of less than 300% of the federal poverty guidelines can seek a waiver of arbitration fees and costs, exclusive of arbitrator fees. *Id.* And arbitration takes place in the claimant's home county. Terms § 2(e).

The Arbitration Agreement includes a Delegation Agreement which, with specified exceptions, delegates disputes over the scope and enforceability of the Arbitration Agreement to the arbitrator. It provides that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable." Terms § 2(a)(4). The arbitrator also has "exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel." *Id.* The Delegation Agreement carves out two exceptions, expressly stating that the court will adjudicate challenges to the Class Action Waiver and the Mass Action Waiver. *Id.*

The Arbitration Agreement further provides that before either party can demand arbitration, both parties must participate in an informal dispute resolution conference. Terms § 2(d). The conference is designed to facilitate "a prompt, low-cost, and mutually beneficial outcome." *Id*. Counsel for both parties may attend. *Id.*

## IV. <u>Plaintiff Filed this Lawsuit in Violation of the Terms.</u>

Plaintiff brings claims on behalf of a putative class of Uber riders who paid for a ride advertised as "Faster" or with a specific arrival time but were allegedly not picked up within the advertised time. Compl.

at 1–2, ¶¶ 1–6; ¶ 121. She asserts claims under the California Unfair Competition Law, False Advertising Law, and Consumer Legal Remedies Act, and seeks injunctive relief, restitution, and damages. Compl. at 1–2, ¶ 6; 39–40. Plaintiff also contends the Arbitration Agreement is unenforceable and seeks a declaration that the Arbitration Agreement is void in its entirety. Compl. at 1–2, ¶ 6; ¶ 183.

## ARGUMENT

This Court should compel arbitration and stay the case. Under the FAA, Plaintiff must arbitrate her claims on an individual basis. The Arbitration Agreement contains a Delegation Agreement that, with two specified exceptions, clearly and unmistakably commits gateway questions of arbitrability to an arbitrator. Because the Delegation Agreement is valid, the Court should enforce it and refer all threshold challenges—other than challenges to the Class Action Waiver and Mass Action Waiver, which are reserved for the Court—to the arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65, 67–68 (2019); *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–72 (2010).

### I. The Parties Formed an Arbitration Agreement That Encompasses This Dispute.

Plaintiff is a party to the Arbitration Agreement. The Terms, including the Arbitration Agreement therein, are a contract between Plaintiff and Uber. Plaintiff assented to Uber's Terms—and the Arbitration Agreement contained therein—when she affirmed her consent to the Terms. Gordon Decl. ¶¶ 12–16 & Ex. A. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 990–91 (N.D. Cal. 2017) (accountholder's assent to Uber's terms when signing up for an account satisfied contract-formation requirements); *Mwithiga v. Uber Techs., Inc.*, 376 F. Supp. 3d 1052, 1061 (D. Nev. 2019) (accountholder assented to arbitration agreement, including delegation clause, as part of account registration process); *Nuriyev v. Uber Techs., Inc.*, 2025 WL 2822878, at *3 (N.D. Cal. Oct. 3, 2025) (same for Uber's driver agreement). Indeed, Count VI of the Complaint presupposes that the Terms are a contract between Plaintiff and Uber: Plaintiff seeks a declaration under Cal. Civ. Proc. Code § 1060, which applies to a person "interested under a written instrument … or under a contract." Compl. ¶ 180; *see Bennett v. Hibernia Bank*, 305 P.2d 20, 26 (Cal. 1956) (§ 1060 covers disputes over "the legal rights and duties of the respective parties under a contract").

The Arbitration Agreement also covers this dispute. Plaintiff's claims arise from her use of the Uber platform and fall squarely within the Covered Disputes provision of the Arbitration Agreement.

Terms § 2(a)(1); Compl. at 2, ¶ 7 (alleging that "[o]n at least forty occasions within the past year, Ms. Ye paid for an UberX rather than paying for a Wait & Save.").

## II. The FAA Applies to the Arbitration Agreement.

The FAA applies to the Arbitration Agreement. Uber's platform connects users with drivers throughout the United States, constituting a "contract evidencing a transaction involving commerce." 9 U.S.C. § 2. *Namisnak v. Uber Techs., Inc.*, 315 F. Supp. 3d 1124, 1126 (N.D. Cal. 2018) (explaining that Uber's terms and conditions agreement is subject to the FAA), *aff'd*, 971 F.3d 1088 (9th Cir. 2020); *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) (applying the FAA to agreement between Uber and drivers). In addition, the Terms themselves state that the FAA applies. Terms § 2(c).

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a liberal federal policy favoring arbitration and requires courts to enforce arbitration agreements according to their terms. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). The statute "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center*, 561 U.S. at 67. It requires enforcement of individualized arbitration agreements and preempts contrary state law. *Concepcion*, 563 U.S. at 351. Any doubts about the scope of an arbitration agreement are resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

To the extent the FAA does not apply, California law does. Terms § 2(c) ("If the FAA and applicable arbitration provider's rules are found to not apply to any issue regarding the interpretation or enforcement of this Arbitration Agreement, then that issue shall be resolved under the laws of the state where you reside when you accept these Terms"); Compl. at 2, ¶ 7 (Plaintiff is a California resident).

## III. The Delegation Agreement Should be Enforced.

The Complaint alleges that the Arbitration Agreement is unenforceable on numerous grounds. But under the Delegation Agreement, those challenges, other than Plaintiff's challenges to the Class Action Waiver and Mass Action Waiver, are reserved for the arbitrator. The Court should enforce the Delegation Agreement and allow the arbitrator to decide Plaintiff's challenges.

### A. The Delegation Agreement Clearly and Unmistakably Delegates Threshold Arbitrability Issues to the Arbitrator.

"A delegation clause is effectively a second arbitration agreement in which the parties agree to arbitrate threshold issues concerning the interpretation or scope of a primary arbitration agreement." *Olson v. FCA US, LLC*, -- F.4th --, 2026 WL 934267, at *2 (9th Cir. Apr. 7, 2026). Arbitrators decide those issues when the arbitration agreement contains "clear and unmistakable" evidence that the parties intended to delegate those questions to the arbitrator. *Id.*; *see First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944–45 (1995). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein*, 586 U.S. at 71.

The Delegation Agreement satisfies the clear-and-unmistakable standard. It grants the arbitrator exclusive authority over disputes relating to "the interpretation, applicability, enforceability, or formation of this Arbitration Agreement," Terms § 2(a)(4); "any claim that all or any part of this Arbitration Agreement is void or voidable," *id.*; "all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory," *id.*; and "any defense to arbitration, including without limitation waiver, delay, laches, or estoppel," *id.* Language covering "all issues … including issues of enforceability" presents an "easy case" for delegation. *Tiri v. Lucky Chances, Inc.*, 171 Cal. Rptr. 3d 621, 630 (Ct. App. 2014) (internal quotation marks omitted). And California courts have routinely enforced substantially similar delegation language, including in Uber's Terms. *E.g.*, *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1026, 1034 (9th Cir. 2022); *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024).

The Delegation Agreement includes the following carve-outs:

> However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes concerning the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.

Terms § 2(a)(4). Plaintiff claims that these carve-outs amount to "contradictory language" that nullifies "clear and unmistakable evidence of the parties' intent to delegate arbitrability issues." Compl.

¶ 111. Therefore, Plaintiff claims, the delegation clause should be ignored in its entirety. *Id.* There is nothing contradictory, however, about two specific and limited exceptions that follow a general delegation clause; parties are entitled to agree to arbitrate some arbitrability issues and not others. Indeed, the carve-outs reinforce that the Delegation Agreement clearly and unmistakably covers all arbitrability disputes except for the specifically enumerated exceptions.

The Ninth Circuit rejected Plaintiff's logic in *Mohamed*, holding that a broad delegation provision was not rendered ambiguous simply because it contained specific carve-outs. *Mohamed*, 848 F.3d at 1209. Indeed, "[n]umerous courts in this circuit have found that despite a carveout, the question of arbitrability, even on the subject of what has been carved out, must be decided by the arbitrator." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018). In other words, delegation clauses with carveouts are routinely upheld. *See Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 878–79 (N.D. Cal. 2023) (collecting cases); *Jacksen v. Chapman Scottsdale Autoplex, LLC*, 2021 WL 3410912, at *3 (D. Ariz. July 21, 2021) (finding no inconsistency between a general delegation provision and a severability provision that implied that "a court or arbitrator" could rule on enforceability); *Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) ("[A]n express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court."); *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112, 1128 (S.D. Cal. 2024) (rejecting the argument that exceptions to a delegation clause rendered it unconscionable). In keeping with this principle, a California state court recently enforced a prior version of the Delegation Agreement in Uber's Terms that contained the same Class and Mass Action Waiver carve-out, concluding that the "delegation clause clearly and unmistakenly delegates the threshold issue of arbitrability to the arbitrator" and that the plaintiff's unconscionability challenge against the delegation clause had no merit. *Huber v. Uber Techs., Inc.*, No. 25CU012082C, at 6 (San Diego Sup. Ct. Jan. 8, 2026) (internal quotation marks omitted). The Court should follow this unbroken line of authority and enforce the Delegation Agreement.

**B. <u>An Arbitrator Must Decide Plaintiff's Enforceability Challenges.</u>**

If an arbitration agreement contains a delegation clause, a court may entertain an unconscionability challenge that "impugn[s] the validity of the delegation clause[] specifically." *Caremark*, 43 F.4th at 1033. But "a challenge to the enforceability of the arbitration provisions as a whole" must be decided by the

arbitrator. *Id.* Thus, unless the plaintiff can show that "*the delegation of arbitrability to the arbitrator* would be unconscionable," the arbitrator decides arbitrability. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1003 (9th Cir. 2023). Here, Plaintiff's Complaint includes no unconscionability challenge that is specifically directed at the Delegation Agreement. Instead, Plaintiff directs her arguments to other provisions of the Arbitration Agreement or the Arbitration Agreement as a whole. Accordingly, the Delegation Agreement should be enforced, and the arbitrator should decide Plaintiff's challenges that are not expressly reserved for the court.

## IV. The Class Action Waiver and the Mass Action Waiver Are Both Enforceable.

While the Delegation Agreement commits the balance of arbitrability questions to the arbitrator, it expressly reserves two categories of challenges for this Court: those directed at the Class Action Waiver and those directed at the Mass Action Waiver. Terms § 2(a)(4). Both waivers are valid and enforceable.

### A. The Waivers Do Not Render the Arbitration Agreement Illusory.

Plaintiff argues that, by virtue of the Class Action Waiver and Mass Action Waiver, the Arbitration Agreement is not an arbitration agreement at all. The Court should reject that claim.

Plaintiff contends that the Class Action Waiver is "illusory"—and hence that there is no arbitration agreement at all—because the Terms permit both parties to participate in a classwide settlement despite prohibiting classwide arbitration. Compl. ¶¶ 104–05. That is incorrect. An agreement is illusory only where a party retains the unconstrained right to perform or withdraw from the agreement at its pleasure. *See Asmus v. Pac. Bell*, 999 P.2d 71, 79 (Cal. 2000). That is not what the settlement carve-out does. Any party that wishes to arbitrate has the right to do so. While Plaintiff and Uber can enter into a class settlement if both parties agree, either party can insist on individual arbitration. Likewise, any class member has the right to opt out of any class settlement and enforce the arbitration agreement. The additional option of participating in a classwide settlement does not somehow render illusory the right to arbitrate individually. *See Batory v. Sears, Roebuck & Co.*, 124 F. App'x 530, 533 (9th Cir. 2005) (rejecting argument that arbitration agreement is illusory where no party "retains an unfettered right to cancel the agreement"); *cf. Waggoner v. Panera, LLC*, 2025 WL 2377072, at *7 (C.D. Cal. May 20, 2025) (arbitration agreement was not illusory where its modification provision did not apply to accrued or known claims).

As for the Mass Action Waiver, Plaintiff points to the provision authorizing either party to opt out of arbitration *if* the panel of arbitrators concludes that either party violated the Mass Action Waiver. Compl. ¶¶ 70–73. According to Plaintiff, "Uber can choose which consumers must arbitrate and which must go to court." *Id.* ¶ 72. This mischaracterizes how the agreement operates. In *every* case involving a dispute covered by the Arbitration Agreement, the parties must proceed to arbitration. If either party contends that the Mass Action Waiver was violated, *the arbitrators* (not Uber) decide whether a violation occurred. Terms § 2(a)(3)(b). Only after the arbitrators resolve *that* threshold dispute may a party choose to opt out. *Id*. And if the case is not a Mass Action—and this case, involving only one plaintiff, is plainly not—arbitration is mandatory for both sides. *Id*. The fact that the Arbitration Agreement authorizes parties to opt out of arbitration in one particular *type* of dispute does not compromise the agreement's status as an arbitration agreement. Indeed, the Mass Action Waiver aligns with the FAA's goal of ensuring that arbitration is a simple, low-cost alternative to litigation. Mass arbitrations—that is, arbitrations in which an attorney recruits hundreds or thousands of clients to file arbitration demands simultaneously—result in precisely the type of complexity, administrative burden, and delay that arbitration is intended to avoid. The Mass Action Waiver ensures that either party can opt out of that type of arbitration-in-name-only while preserving mandatory arbitration for ordinary disputes.

Even where the right to opt out is not mutual (unlike this case), a post hoc opt-out procedure does not invalidate an arbitration agreement if that procedure "applies only to particular issues" and is triggered "only under a specified condition." *Barnett v. V.T. Motors LLC*, 2021 WL 5759113, at *4 (D. Ariz. Dec. 3, 2021). Indeed, parties routinely enter into arbitration agreements that cover some types of disputes and not others. *See Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) ("The scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted in the submission agreement."). The parties' freedom to choose the scope of arbitration plainly encompasses the freedom to reserve the right to opt out of arbitration in specific circumstances subject to the arbitrator's determination that those circumstances are met.

**B. <u>The Class Action Waiver and Mass Action Waiver Are Not Unconscionable.</u>**

Plaintiff also contends that the Class Action Waiver and Mass Action Waiver are unconscionable. Those arguments fail. Neither provision is procedurally unconscionable. As for substantive

unconscionability, the Supreme Court has made clear that the FAA requires enforcement of individualized arbitration agreements and preempts contrary state law. *See Concepcion*, 563 U.S. at 348. Meanwhile, Plaintiff's challenge to the Mass Action Waiver is irrelevant to Plaintiff and meritless in any event.

**1. There Is No Procedural Unconscionability.**

Under California law, a court may invalidate a contract provision on unconscionability grounds only upon a showing of both procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000); *Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 793 (Ct. App. 2012). Both elements must be present. 137 Cal. Rptr. 3d at 793. California applies a sliding-scale approach under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz*, 6 P.3d at 690; *see, e.g.*, *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 12–13, 16 (Cal. 2016) (applying the sliding-scale approach to arbitration agreement to conclude it was not unconscionable).

Procedural unconscionability turns on whether there was "either *oppression* or *surprise*" in the contracting process. *McCaffrey Grp., Inc. v. Super. Ct.*, 169 Cal. Rptr. 3d 766, 781 (Ct. App. 2014). Neither was present here.

As to surprise: the Terms required Plaintiff to affirmatively click a box confirming that she had reviewed and agreed to them before accessing the platform. Gordon Decl. ¶ 12–15. Courts have routinely upheld such agreements. *See Cordas*, 228 F. Supp. 3d at 990–91; *Keller v. Chegg, Inc.*, 2023 WL 5279649, at *3 (N.D. Cal. Aug. 15, 2023) ("Courts routinely find clickwrap agreements valid and enforceable…."). Far from concealing the Arbitration Agreement, the Terms conspicuously state in capitalized text on the first page that the Terms include "THE ARBITRATION AGREEMENT IN SECTION 2 BELOW." Section 2 of the Terms introduces the heading "Arbitration Agreement" in large, boldfaced font and uses underlined subheadings to identify key provisions such as the Class Action Waiver and the Mass Action Waiver. This is sufficiently clear to overcome any allegation of surprise. *See, e.g.*, *Longboy v. Pinnacle Prop. Mgmt. Servs., LLC*, 718 F. Supp. 3d 1004, 1015 (N.D. Cal. 2024) (finding no surprise where terms included on "[t]he very first page … a bolded paragraph" clarifying the requirement to arbitrate and used "clearly labeled capitalized headings" for arbitration-related rules); *Oberstein v. Live Nation Ent., Inc.*, 60

F.4th 505, 516 (9th Cir. 2023) (finding sufficient constructive notice where hyperlink to terms of use was "conspicuously distinguished from the surrounding text").

As to oppression: Plaintiff had meaningful alternatives to Uber, including competing ride service platforms such as Lyft, Waymo, Flywheel, and Curb, as well as conventional taxis and public transportation. In such circumstances, "when the customer has meaningful choices", there "can be no oppression establishing procedural unconscionability." *Wayne v. Staples, Inc.*, 37 Cal. Rptr. 3d 544, 556 (Ct. App. 2006); *see Donovan v. Coinbase Glob., Inc.*, 649 F. Supp. 3d 946, 953 (N.D. Cal. 2023) (finding only minimal degree of procedural unconscionability in Coinbase's adhesive arbitration agreement where plaintiffs had alternative options for cryptocurrency services); *Aggarwal*, 685 F. Supp. 3d at 881 (similar).

Given that there is little, if any, procedural unconscionability, a high level of substantive unconscionability would be needed to find the Class Action Waiver or Mass Action Waiver unconscionable. Neither comes close to meeting that threshold.

### 2. **<u>The FAA Preempts Any Argument That the Class Action Waiver Is Substantively Unconscionable.</u>**

The FAA requires enforcement of class action waivers in arbitration agreements. *Concepcion*, 563 U.S. at 348; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 507–10 (2018); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 187–88 (2019). In *Concepcion*, the Supreme Court squarely rejected California's *Discover Bank* rule, under which class action waivers in consumer adhesion contracts were deemed unconscionable per se. 563 U.S. at 348. Any state law rule that would similarly invalidate Uber's Class Action Waiver is preempted by the FAA. *Id.* at 340, 346–52. Classwide arbitration is inconsistent with the fundamental attributes of the individualized arbitration process contemplated by the FAA, particularly as to speed, efficiency, and the preservation of the private, bilateral character of the proceeding. *Id.* at 347–48, 352; *Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1066–67 (9th Cir. 2020).

Plaintiff identifies nothing in the Class Action Waiver that would warrant departing from the Supreme Court's rulings that individualized arbitration agreements must be enforced. Plaintiff objects to the provision barring "consolidated … multi-plaintiff claims." Compl. ¶ 106 (quoting Terms § 2(b)). That provision is consistent with the requirement of individualized arbitration that courts have repeatedly enforced. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1023 (9th Cir. 2024) ("[A]rbitration

agreements can generally waive collective, classwide, and representative claims." (quotation marks omitted)); *cf. Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 704 (9th Cir. 2024) (interpreting an arbitration agreement's waiver of class and collective actions as also excluding non-individual PAGA claims).[1]

Plaintiff also objects to Section 2(a)(2) of the Terms, the provision stating that if any portion of the Class Action Waiver is deemed unenforceable, any claims subject to individualized arbitration proceed first in arbitration prior to adjudicating the other claims. Compl. ¶ 107. According to Plaintiff, this provision "would effectively nullify any court order holding the Class Action Waiver unenforceable." *Id.* This argument makes little sense. The Supreme Court rejected a nearly identical argument in *Viking River Cruises, Inc. v. Moriana*, compelling arbitration of the plaintiff's individual claim even after the broader representative-action waiver was partially invalidated. 596 U.S. 639, 659–62 (2022). That is precisely the order of operations contemplated by the Terms. In the unlikely event that the Court nullifies a portion of the Class Action Waiver, § 2(a)(2) simply sequences the dispute resolution process: first arbitration, then litigation. There is nothing unconscionable about that process—it is consistent with the FAA's requirement that litigation be stayed until the arbitration "has been had." 9 U.S.C. § 3; *cf. Moses H. Cone*, 460 U.S. at 20 (holding that "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement" in light of "Congress' clear intent, in the [FAA], to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible").

**3. <u>The Mass Action Waiver Is Not Substantively Unconscionable.</u>**

Plaintiff's challenges to the Mass Action Waiver—which applies when a party is represented by counsel who has filed 50 or more substantially similar arbitration demands within 180 days, Terms § 2(a)(3)—fail for two reasons: (1) the waiver is irrelevant to Plaintiff because Plaintiff is not affected by it and would not benefit from invalidating it; and (2) the waiver is enforceable on the merits.

**a) <u>Plaintiff Cannot Benefit From Her Challenge to the Mass Action Waiver.</u>**

[1] In passing, Plaintiff purports to bring a claim for injunctive relief "on behalf of the public." Compl. at 39. But Plaintiff's claims seek relief on behalf of Uber users, not the public at large. Compl. ¶ 165. Like Plaintiff's class action claim for damages, Plaintiff's claim for injunctive relief cannot proceed; she must instead engage in individualized arbitration. *See Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 548–49 (9th Cir. 2021) (when plaintiff sought injunctive relief on behalf of all Comcast cable subscribers, FAA required enforcement of individualized arbitration agreement).

As a threshold matter, the Mass Action Waiver is not relevant to Plaintiff. "[T]he definition of a 'Mass Action' includes, but is not limited to, instances in which you or Uber are represented by a law firm or collection of law firms that has filed 50 or more arbitration demands of a substantially similar nature against the other party within 180 days of the arbitration demand filed on your or Uber's behalf." Terms § 2(a)(3)(a). Plaintiff is a single individual who does not allege that any other individuals have filed or will file substantially similar arbitration demands. Thus, this is a class action (in which a single plaintiff seeks to represent numerous absent class members), not a mass action (in which many claimants assert the same or similar arbitration claims together). Although the Mass Action Waiver contains the "includes, but not limited to" language, Plaintiff offers no theory as to how *this* single-plaintiff action could possibly be a "Mass Action." Lest there be any doubt, Uber expressly concedes that a single-claimant arbitration, unaccompanied by similar arbitration demands by other claimants, is not a "Mass Action" and would not make that argument in arbitration; even if it did, such a contention would fail immediately. While the ultimate question of whether a Mass Action has been filed is reserved for the arbitrator, Plaintiff offers no plausible theory under which this could qualify. Her challenges to the waiver are purely academic.

Even though the Mass Action Waiver does not affect Plaintiff, she nonetheless challenges it, colliding headfirst with the common-sensical principle that "[t]o assert a right or challenge a violation of a right under a particular provision of a contract, the individual must have been affected by or interacted with the particular provision." *Stevenson v. Sirius XM Radio Inc.*, 2023 WL 7434945, at *4 (N.D. Cal. Nov. 9, 2023); *see Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535, 541 (9th Cir. 2021) (courts should not "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute"); *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1003 (N.D. Cal. 2011) (party lacked standing to challenge a modification provision in arbitration agreement because she "has not shown how the modification clause has been applied to her"). Her argument appears to go as follows: the Mass Action Waiver is unconscionable as to *other* hypothetical disputes, which implies that the whole arbitration agreement is unconscionable, which means she may proceed with her class action.

Even assuming the dubious premise that a plaintiff may challenge a contractual provision that does not affect her, that argument fails because the Arbitration Agreement provides that any unenforceable provision shall be severed with "no impact whatsoever on the remainder of the Arbitration Agreement or

the parties' ability to compel arbitration of any remaining claims on an individual basis." Terms § 2(j). Such severability clauses are enforceable and do not undermine other provisions of the Agreement requiring disputes to be arbitrated. *See Sandler v. Modernizing Med., Inc.*, 170 F.4th 1209, 1212–13 (9th Cir. 2026) (holding that "[t]wo things can be true at once: First, parties can agree that disputes … shall be heard by an arbitrator" and "[s]econd," "*if* a court somehow reaches … the enforceability of contractual provisions, the severability clause tries to ensure that any invalidation would be limited"). So Plaintiff's best-case scenario is that the Mass Action Waiver—a provision that has no effect on her—is severed, and the rest of the Arbitration Agreement, including the Class Action Waiver, is enforced. Because Plaintiff could not benefit from any ruling that the Mass Action Waiver is unconscionable, the Court should not issue an advisory ruling on that issue. *See Arizona v. Yellen*, 34 F.4th 841, 848 (9th Cir. 2022) (court should not "issue advisory opinions or declare rights in hypothetical cases" (quotation marks omitted)).

**b) <u>The Mass Action Waiver Is Enforceable on the Merits.</u>**

The Mass Action Waiver addresses the phenomenon in which plaintiffs' firms have recruited thousands of unvetted clients and burdened arbitration providers with the difficult administrative task of simultaneously processing mass filings regardless of individual merit. The Mass Action Waiver in the Terms guarantees the parties the right to an arbitral forum on the threshold decision of whether the Mass Action Waiver has been violated and allows either party to opt out if the arbitrator finds such a violation. Courts have repeatedly upheld provisions allowing parties to opt out of arbitration under similar circumstances. *See Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *4–5 (E.D. Cal. July 31, 2025) (mass arbitration waiver provision with bellwether protocols was not unconscionable); *Jenkins v. PetSmart, LLC*, 2023 WL 8548677, at *14 (E.D. Pa. Dec. 11, 2023) (enforcing mass arbitration waiver).

Plaintiff argues that the Terms' definition of "Mass Action" is "vague and ambiguous" because it fails to specify with greater precision how many claims must be filed, over what period, or how similar such claims must be. Compl. ¶ 67. But the Terms are clear: they define "Mass Action" to include instances in which either party's counsel files 50 or more substantially similar arbitration demands within 180 days. Plaintiff does not explain why any ambiguity at the margins of the phrase "Mass Action" would render the Mass Action Waiver, much less the Arbitration Agreement as a whole, unconscionable. *See Bishay v. Marshack (In re Bishay)*, 2012 WL 5236169, at *7 (B.A.P. 9th Cir. Oct. 24, 2012) ("[T]he existence of

minor areas of disagreement [regarding the meaning of contractual terms] will not render the contract void and entirely unenforceable.").

Plaintiff insists that the Dispute Procedure relating to mass action violations "has no set deadlines, rules, processes or procedures" and could therefore be "protracted and open-ended." Compl. ¶¶ 69, 71. Neither concern holds up. Arbitration providers and individual arbitrators routinely set deadlines, rules, and procedures; there is nothing unconscionable about leaving those details to the discretion of a neutral third party. *See, e.g.*, *Tutor-Saliba Corp. v. Starr Excess Liab. Ins. Co., Ltd.*, 2015 WL 13285089, at *9 (C.D. Cal. Apr. 23, 2015); *Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1484 (9th Cir. 1991); *cf. Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (procedural questions arising from a dispute are presumptively for the arbitrator, not the judge). Indeed, most arbitration providers, including ADR Services, now have mass arbitration protocols designed to "promote the timely resolution of threshold issues", rendering specific language in the arbitration agreement regarding "rules, processes or procedures" unnecessary. *See* ADR Services, Inc. Arbitration Rules at 6–8, https://tinyurl.com/2xusheu4. Nor is there any basis for predicting delay: the Dispute Procedure asks an arbitrator to resolve a narrow threshold question about whether a Mass Action was filed. Speculation that this will be slow cannot invalidate an arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) (refusing to invalidate arbitration agreement where the claimed procedural risk was "too speculative"). The Supreme Court has made clear that "judicial suspicion of … the competence of arbitration tribunals" cannot "inhibit enforcement of the [Federal Arbitration] Act." *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quotation marks omitted).

Plaintiff's concern that the Mass Action Waiver could cause claims to become time-barred, Compl. ¶ 74, is a purely theoretical risk that bears no relation to this case. It does not justify invalidating the Mass Action Waiver—let alone the entire Arbitration Agreement—on its face. And if a timely-filed arbitration demand were later dismissed under the Mass Action Waiver and refiled in court, the interval would present a paradigmatic case for equitable tolling. *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019). Further, Uber would likely voluntarily toll under such unusual circumstances.

Plaintiff also challenges the grouping procedures in Section 2(a)(3)(c), but those challenges are not properly before the Court. The Delegation Agreement assigns only Mass Action Waiver challenges to the

Court. The grouping procedures, however, apply only where "neither party exercises its right to opt out of arbitration pursuant to Section 2(a)(3)(b)"—meaning they come into play only when the parties have chosen not to enforce the Mass Action Waiver. Terms § 2(a)(3)(c). Hence, challenges to the grouping procedures are not challenges to the Mass Action Waiver and are committed to the arbitrator.

## V. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable.

Should the Court determine that the Delegation Agreement does not apply or is unenforceable, it should still compel arbitration. The Arbitration Agreement is enforceable. As explained in connection with the Class Action Waiver and the Mass Action Waiver, there is no procedural unconscionability. Nor can Plaintiff show that any provision of the Arbitration Agreement is substantively unconscionable.

### A. The Pre-Arbitration Dispute Resolution Conference Is Not Unconscionable.

Plaintiff alleges that the pre-arbitration conference requirement in Section 2(d) of the Terms is unconscionable because it interferes with the attorney-client relationship and causes delay. Compl. ¶¶ 91–102. The Delegation Agreement requires this argument to be considered by the arbitrator. But if the Court nonetheless reaches it, there is nothing unconscionable about that requirement. Pre-arbitration procedures can be both "reasonable and laudable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 518 (Ct. App. 2013)). Like in *Bielski*, Uber's conference requirement applies symmetrically to both parties, and it tolls the statute of limitations for the duration of the pre-dispute process. The requirement that the parties themselves attend "undoubtedly enhances the chances for settlement because the parties may then become active participants in the settlement negotiations." *Wisniewski v. Clary*, 120 Cal. Rptr. 176, 179 (Ct. App. 1975).

The conference requirement does not violate California Rule of Professional Conduct 4.2. Although ethical concerns might be present if Uber's counsel directly communicated with represented claimants *without* their counsel present, the Terms state that parties may appear at the conference with their counsel. Terms § 2(d). Such communications are appropriate and ethical: parties routinely attend mediations and settlement conferences alongside their counsel, including where opposing counsel is present. *See, e.g., Wisniewski*, 120 Cal. Rptr. at 180 (court may compel a litigant "to engage personally in settlement negotiations"). As the California Supreme Court has recognized, when a party's counsel is

present during any communication, counsel can readily address any area of concern. *Mitton v. State Bar of Cal.*, 455 P.2d 753, 758 (Cal. 1969).

Plaintiff also speculates that Uber might later argue Plaintiff failed to "fully participate" in the pre-dispute process if Plaintiff does not personally communicate with Uber's counsel. Compl. ¶¶ 93–95. But a person can "fully participate" in a conference even if she communicates through counsel—this happens in mediations and settlement conferences every day. In any event, Plaintiff's speculation about a hypothetical argument Uber might make in response to a hypothetical conference is no basis to invalidate an arbitration agreement. *Green Tree*, 531 U.S. at 91 (refusing to invalidate arbitration agreement based on "too speculative" procedural risks); *Mendoza v. QVC, INC.*, 2021 WL 859998, at *3 (C.D. Cal. Mar. 8, 2021) ("Speculation about what *might* happen in the arbitral forum is plainly insufficient to render the agreement to arbitrate unenforceable." (quoting *Booker v. Robert Half Int'l, Inc.*, 413 F.3d 77, 82 (D.C. Cir. 2005)); *Philpott v. Ernst & Young LLP*, 2010 WL 11406230, at *5 (W.D. Wash. Dec. 29, 2010) (rejecting unconscionability argument based on speculation about whether arbitrator may order discovery).

Finally, the pre-arbitration notice requirement, which involves "mailing and emailing," Compl. ¶ 100, is not unconscionable; such requirements are routine. *See, e.g., Concepcion*, 563 U.S. at 336 (addressing agreement requiring a "one-page Notice of Dispute form"); *Platt Pac., Inc. v. Andelson*, 862 P.2d 158, 162 (Cal. 1993). Further, the notice requirements can be (and frequently are) addressed in the pre-hearing dispute resolution conference. In any event, procedural questions like notice requirements are "presumptively not for the judge, but for an arbitrator, to decide." *Howsam*, 537 U.S. at 84.

**B. <u>The Grouping Provision Is Not Unconscionable</u>.**

Plaintiff contends that the grouping provision (Terms § 2(a)(3)(c)) is both too slow and too fast. Too slow, because the questions are "complicated" and could "bog down the proceedings." Compl. ¶ 77. And too fast, because they do not permit "resolving issues collectively." *Id.* ¶ 81.

As noted above, under the Delegation Agreement, this issue is reserved for the arbitrator. *Supra* at p. 18. For good reason: if Plaintiff has any concerns about the grouping process, the arbitrator presiding over that process is in the best position to address them.

If the Court reaches the issue, it should uphold the provisions requiring appointment of a Special Master followed by grouping of claims. These provisions serve a straightforward purpose. They allow a

Special Master to resolve common threshold issues—disputes about arbitration fees, filing requirements, and similar administrative matters—that would otherwise have to be addressed claim by claim, multiplying delay and expense. At the same time, they preserve what matters most: every claimant receives an individualized hearing on the merits before an arbitrator who is not bound by decisions in any other proceeding. Terms § 2(g). They also promote efficiency by ensuring arbitrations can be resolved in groups of no more than 100 demands per group—a number that is sufficiently small that arbitrations do not become de facto class actions, but nonetheless ensures that massive mass arbitrations involving tens of thousands of claims do not take years or decades to resolve. This structure advances precisely the bilateral, individual-focused arbitration the Supreme Court has repeatedly endorsed. *See, e.g., Concepcion*, 563 U.S. at 348.

Plaintiff's concern that the statute of limitations might expire before a claim is "processed" (Compl. ¶¶ 58–61, 84–85) misunderstands the Agreement: if a claim is timely filed, any delay associated with the Special Master process would not render that claim untimely. Nothing in the Terms states that "consumers are barred from filing new claims while a Special Master is appointed" (Compl. ¶ 84). Plaintiff expresses a generalized concern about delay, Compl. ¶ 79, but fails to explain why a Special Master could not rule on threshold issues expeditiously. In fact, addressing claim administration issues on a claimant-by-claimant basis would be far slower—indeed impracticable in a Mass Action—for any arbitration provider. And Plaintiff's concern that claims could be "bog[ged] down," Compl. ¶ 77, is belied by the provision's design, which isolates threshold issues for efficient resolution precisely to keep the merits track moving.

Plaintiff speculates that Uber "could take the position that *any* claim filed during a Special Master's appointment is a Mass Arbitration Demand," Compl. ¶ 82. But a single claim plainly does not constitute a "Mass Arbitration Demand," and an arbitrator would say so immediately. Speculation about whether Uber will make a frivolous argument that it will immediately lose does not establish unconscionability.

### C. <u>Other Miscellaneous Provisions Challenged by Plaintiff Are Not Unconscionable</u>.

Each of Plaintiff's remaining challenges—to the Limitation of Liability provision, the waiver and indemnification provisions, the ADR Arbitration Rules and associated fees, and the intellectual property carve-out, Compl. ¶¶ 108, 112–19—concerns the enforceability of provisions within the Terms. For the reasons explained above, *see supra* at pp. 6–9, these challenges fall under the scope of the Delegation Clause and are therefore not properly before this Court. Further, Plaintiff does not explain how any of

these challenges have any bearing on this dispute—they are merely abstract attacks on irrelevant portions of the Terms. Plaintiff thus has no occasion to challenge provisions that do not affect her. *See Stevenson*, 2023 WL 7434945, at *4. Even if the Court were to reach these challenges, none has merit.

*Intellectual Property Carve-Out*. Plaintiff takes issue with the Terms' carve-out of injunctive or equitable relief claims regarding intellectual property rights from the scope of arbitration. Compl. ¶ 108; *see* Terms § 2(b). According to Plaintiff, this provision is unconscionably asymmetric because Uber is more likely to invoke it. To the extent Plaintiff implies that an arbitration agreement is unconscionable anytime it contains a carve-out that is in practice asymmetrically applied, Plaintiff is wrong. *See Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881, at *11 (N.D. Cal. Feb. 2, 2017) (Westmore, J.) (holding that an asymmetrical exclusion of claims related to the defendant's intellectual property did not render arbitration agreement substantively unconscionable). Moreover, Plaintiff's characterization is far from certain: Uber has been sued for patent infringement on numerous occasions.

*Limitation of Liability*. Notwithstanding Plaintiff's allegation that the Limitation of Liability provision "insulate[s] Uber from consumer claims," Compl. ¶ 112, such provisions are routinely enforced. *See Golden Gate Way, LLC v. Enercon Servs., Inc.*, 572 F. Supp. 3d 797, 814 (N.D. Cal. 2021) ("Limitation of liability clauses have long been recognized as valid under California law." (cleaned up)). Moreover, the provision here expressly excepts any liabilities "that cannot be excluded under applicable law." Terms § 8. Plaintiff's suggestion that the clause creates "difficult and arcane questions" for a Special Master, Compl. ¶ 115, is difficult to understand: it merely recites that the Special Master has to follow the law, which the Special Master must do in every case. Moreover, Plaintiff's concerns about "difficult and arcane questions" are speculative and have no bearing on the Arbitration Agreement's enforceability.

*Waiver and Indemnification*. Plaintiff complains that the Terms include one-sided waiver and indemnification provisions. Compl. ¶¶ 116–17. These provisions have nothing to do with this case. The waiver provision addresses Uber's failure to enforce its own rights under the Terms—a matter unrelated to any arbitral proceeding Plaintiff would pursue. Likewise, the indemnification provision addresses claims arising from a consumer's use of Uber's services and does not relate to the fairness of the Arbitration Agreement. Even if she could explain how these provisions affect her, a contractual provision cannot render an arbitration agreement unconscionable merely by virtue of being asymmetric. *See Poublon v.*

*C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) ("Not all one-sided contract provisions are unconscionable." (quotation marks omitted)); *Han*, 2017 WL 446881, at *11.

*ADR Arbitration Rules and Fees*. Plaintiff objects to the selection of ADR Services as the arbitration provider for California disputes and characterizes its fee schedule as unconscionable. Compl. ¶ 118. But Plaintiff does not identify any specific defect in the standard ADR Rules that would make them unconscionable. In any event, the Terms' fee provision neutralizes any concern about cost: Plaintiff's "responsibility to pay any filing, administrative, and arbitrator fees … shall be up to the amount [she] would be required to pay if [she] filed a claim in court." Terms § 2(h). As for Plaintiff's complaint that Uber can indefinitely delay fee payments, it stems from the same meritless concerns that Uber can unduly prolong the dispute resolution process, which Uber addressed above. *See supra* at pp. 17–18.

**D. *Heckman* Is Readily Distinguishable.**

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert denied*, 146 S. Ct. 96 (2025), on which Plaintiff relies, bears no resemblance to this case. *Heckman* condemned a mass arbitration protocol combining several interlocking features—which the court found individually troubling and collectively fatal. None of those features appears in Uber's Terms.

In *Heckman*, a subset of "bellwether" arbitrations were conducted, and their results had binding precedential effect on all other claimants—including those who had no notice of, and no opportunity to participate in, the bellwether proceedings. 120 F.4th at 678–79. The Ninth Circuit held that this representative feature rendered the protocol impermissible because it transformed the arrangement into something functionally equivalent to class arbitration. *Id.* at 684. Uber's Terms contain no bellwether mechanism. No decision in any arbitration has any binding or precedential effect on any other claimant's case. Terms § 2(g) ("[T]he Arbitrator's decision shall be binding only upon the parties to the arbitration that are the subject of the decision"). Each claim is decided on its own facts by an arbitrator answerable only to the parties before her. The grouping provisions serve administrative purposes only—organizing claims into groups of no more than 100 for case management efficiency—without affecting any claimant's right to individual resolution. *Heckman* expressed concern that, to the extent the arbitrator had discretion not to apply bellwether precedent, the arbitration association's rules provided insufficient guidance on how to exercise that discretion. 120 F.4th at 685. That concern is not present here, given the Arbitration

Agreement's statement that no arbitrator's decision will bind every other arbitration. Even within a group, "[r]egardless of the grouping described above, the arbitrator shall resolve all arbitrations within a group on an individual basis." Terms § 2(a)(3)(c)(ii).

The *Heckman* protocol also featured severe limitations on briefing and discovery and an appeals structure that systematically favored the defendant. 120 F.4th at 685–87. Uber's Terms impose no analogous restrictions. Each party has equivalent procedural rights throughout the arbitral process, and no appeals structure advantages one side over the other. The *Heckman* protocol's procedure for choosing an arbitrator also conflicted with California law. *Id.* at 687. Plaintiff makes no analogous argument here.

*Heckman* condemned a scheme the court determined was designed to take away claimants' ability to meaningfully vindicate their rights. Uber's protocol is the opposite: a framework designed to make individualized resolution administratively feasible while preserving every claimant's right to a full, individual hearing on the merits. Courts have repeatedly distinguished *Heckman* in cases not presenting *Heckman*'s idiosyncratic features. *See Burkhardt*, 2025 WL 2172287, at *4–5; *Kohler*, 757 F. Supp. 3d at 1126–27; *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 296–98 (S.D.N.Y. 2025); *Jenkins*, 2023 WL 8548677, at *14.

## VI. <u>The Court Should Sever Any Provision It Deems Unenforceable.</u>

Should the Court determine that any portion of the Arbitration Agreement is unenforceable, the remedy is severance of that portion, not wholesale invalidation of the Arbitration Agreement. The Terms contain an express severability provision that any "unenforceable or unlawful provision shall be severed from the[] Terms" with "no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis." Terms § 2(j).

Courts must give effect to a severability clause as an expression of the parties' intent. *See Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 547 (Ct. App. 2024); *Scally v. PetSmart LLC*, 2023 WL 9103618, at *4 (N.D. Cal. May 25, 2023); *supra* at p. 15–16. The core obligation—individual arbitration of Plaintiff's claims—is unaffected by any challenged provision.

## VII. This Lawsuit Must Be Stayed Pending Arbitration.

When a court finds that a lawsuit involves an arbitrable dispute and a party requests a stay, Section 3 of the FAA compels the court to stay the proceedings. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). The Terms independently require a stay. *See* Terms § 2(k).

## CONCLUSION

Plaintiff agreed to arbitrate her claims against Uber on an individual basis. The Court should compel individual arbitration of all of Plaintiff's claims, and stay this action pending completion of arbitration.

Respectfully submitted,

Dated: April 24, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*
Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
** Pro hac vice*