JANOVE PLLC 979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LUCY YE, JULIA FLEMING, and JACQUELINE CLAY, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

UBER TECHNOLOGIES, INC.,

Defendant.

Case No. 4:26-cv-1744-KAW

**DISCOVERY DISPUTE LETTER RE: REQUESTS FOR PRODUCTION**

The parties submit this joint discovery dispute letter as per the Court's Individual Rules.

Before submitting this letter, the parties met and conferred over videoconference because an in-person meeting was not practical given counsels' locations in different parts of the country.

The parties have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery.

Pursuant to Civil Local Rule 5-1(i)(3), the filer of this document attests that all signatories concur in the filing of this joint discovery dispute letter.

Respectfully submitted,

*/s/ Liana Roza Vitale*

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940

**JANOVE PLLC**
Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiffs and the Proposed Classes***

*/s/ Sati Harutyunyan*

**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN CA 313138)
SHarutyunyan@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Telephone: (213) 239-5100

**JENNER & BLOCK LLP**
Adam G. Unikowsky (pro hac vice)
AUnikowsky@jenner.com
1099 New York Ave NW
Washington, D.C. 20001
Telephone: (202) 639-6000

***Attorneys for Defendant***

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Dear Judge Westmore:

On June 12, 2026, Uber moved to compel arbitration and stay this action ("MTCA") in response to Plaintiffs' first amended complaint.[1] Uber's Terms of Use that are the subject of the MTCA are at Dkt. 22-1 at 101.[2] The Parties dispute whether pre-arbitration discovery is appropriate. Specifically, Plaintiffs wish to continue pursuing RFPs 1, 2, and 3, and Uber objects, as set out below.

**<u>Plaintiffs' Summary of Factual Background Related to Unconscionability Discovery.</u>**

Plaintiffs seek discovery concerning the unconscionability of Uber's Terms, and Uber's argument that the delegation provision they contain is not unconscionable. As Plaintiffs explained in the other joint discovery letter being filed today, the delegation clause requires claimants to navigate a labyrinthine set of procedural hurdles before their unconscionability arguments (or their claims) can be heard by an arbitrator, and then gives Uber the ability to shut down the arbitration and force claimants to return to court any time multiple claimants file similar claims.

This renders the delegation clause, along with most of Uber's dispute resolution provisions, independently unconscionable, and the unconscionability is compounded by the way they operate in tandem. *See Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *1 (9th Cir. Aug. 27, 2025) ("Further, the delegation clause, read together with the batching provision, is substantively unconscionable because it could create lengthy delays to resolve a gateway issue; those delays could have a chilling effect on players bringing claims to begin with…."); *see also Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 990 (N.D. Cal. 2025) ('[T]he mass arbitration provision itself creates the risk of de facto waiver of valid claims, weighing heavily in favor of finding substantive unconscionability."); *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024) ("Arbitration, as understood by Congress when it enacted the FAA, was designed to be a fair and efficient alternative to bilateral judicial proceedings. It may not be too much to say that this method of dispute resolution … is "unworthy even of the name of arbitration.").

The requested discovery seeks evidence about how these unconscionable provisions function, and how the delegation clause unconscionably forces claimants to jump through these hoops before they can even obtain a ruling from an arbitrator about whether these processes are unconscionable. Seeking discovery is a standard and unobjectionable way to comply with a burden of proof. If Uber does not wish to produce discovery on issues related to the motion to compel arbitration, it should be precluded from arguing that Plaintiffs have not submitted sufficient evidence on these points. Indeed, that appears to be the argument that Uber made in the case it mistakenly claims approved the terms that Plaintiffs challenge here (albeit in a different context), and a reason for Plaintiffs' discovery requests.

In its Order, the Court authorized Plaintiffs "to explain how each specific discovery request is related to the issue of unconscionability, specifically that of the delegation clause." Plaintiffs have carefully considered the Court's guidance, and seek unconscionability discovery only as to a small subset of their original requests, and focused primarily on the issues the Court already concluded

---

[1] Uber also moved to compel arbitration in response to Plaintiff Ye's original complaint. Dkt. 22. Plaintiff Ye sought the discovery at issue in this letter after filing the original complaint and the Parties previously submitted two joint discovery letters for the Court's decision. Dkts. 33, 34.

[2] This citation is to the declaration in support of Uber's initial MTCA. The declaration in support of Uber's second MTCA (Dkt. 35) does not attach these Terms. Uber will resubmit these Terms in a supplemental declaration in support of its reply when briefing on Uber's MTCA resumes.

979 Osos St., Ste. A5 San Luis Obispo, CA 93401 500 7th Ave., 8th Fl. New York, NY 10018 1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
JANOVE PLLC

"seem connected" to Plaintiffs' unconscionability arguments. Dkt. 40 at 4:5–6. Plaintiffs' specific showing of relevance for each of these requests is set out below.

**<u>Defendant's Response to Plaintiffs' Legal Argument Above</u>.**[3]

The Court should deny Plaintiffs' proposed RFPs in full. Like the interrogatories, the RFPs fail to satisfy Plaintiffs' "burden of explaining how each specific discovery request is related to the issue of unconscionability, specifically that of the delegation clause." Dkt. 40 at 4. Uber incorporates by reference its position from the Parties' joint letter concerning the interrogatories: namely, a challenge to a delegation agreement must specifically address why the delegation of certain issues to the arbitrator is unconscionable, and Plaintiffs' unconscionability arguments are in any event wrong. Because RFPs 1 and 2 merely seek documents "[f]or each instance identified in response to" Interrogatories 2 and 6, they rise and fall with those interrogatories, and are thus improper for their lack of any connection to the Delegation Agreement. Neither does RFP 3 mention delegation, much less relate to any argument that delegation is unconscionable.

Plaintiffs have made no effort to heed the Court's admonition that "the vast majority of Plaintiffs' proposed discovery is overbroad," including even those requests that "seem connected" to their arguments. Dkt. 40 at 3–4. Although Plaintiffs assure the Court that they have carefully considered the Court's guidance, every request in this letter is reproduced verbatim from Plaintiffs' May 7, 2026 requests. The only "narrowing" offered by Plaintiffs is to limit the requests to the operative 2026 Terms, which fails to respond to the Court's observation that these requests still pertain to information about customers "other than Plaintiff[s]." Dkt. 40 at 3 (quoting *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1007 (N.D. Cal. 2011)).

Even setting aside Plaintiffs' failure to comply with the Court's Order to focus on delegation-specific unconscionability issues, Plaintiffs' central justification for their discovery requests—that they need discovery to test Uber's defenses—fails. *First*, the burden of proving unconscionability rests on Plaintiffs. *See OTO, L.L.C. v. Kho*, 447 P.3d 680, 690 (Cal. 2019). The Supreme Court has emphasized that procedural risks that are "too speculative" cannot be grounds for invalidating an arbitration agreement. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). While there may be extreme scenarios—as in *Pandolfi*—where the alleged risks are sufficiently palpable such that some discovery may be warranted to buttress a plaintiff's colorable unconscionability argument, no such argument exists here. Uber's MTCA has already explained at length why Plaintiffs' concerns about the statute of limitations fall into the "too speculative" category. Dkt. 35 at 20–21, 24–27. Plaintiffs cannot bootstrap themselves into an affirmative entitlement to discovery by launching far-fetched hypotheticals and then shifting the burden of proof to Uber.

*Second*, Uber's unconscionability defense rests on the text of the Terms and on caselaw holding substantively similar provisions enforceable as a matter of law. Dkt. 35 at 17–30. Uber's legal argument cannot be "refuted" by document production. For example, the Ninth Circuit has held that "[p]re-arbitration dispute resolution procedures are commonplace and can be both reasonable and laudable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (internal quotation marks omitted); Dkt. 35 at 28. Similarly, even if Plaintiffs' imagined scenario involving a Mass Action materializes in this case, it is well-established that parties are free to agree to arbitrate some types of disputes but not others, meaning that a mutually available opt-out procedure triggered under

---

[3] Uber notes that this letter does not fully conform to the Court's requirements and that Plaintiffs' "factual background" is in fact a summary of their mistaken legal arguments. *See also* Dkt. 40 at 4. Uber has raised the non-compliance to Plaintiffs.

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

specific conditions cannot be unconscionable. Dkt. 35 at 21.

Finally, even if any RFP were specifically directed at the Delegation Agreement, Uber's burden would be disproportionate to any (if extant at all) relevance. Imposing such a burden on Uber would be antithetical to the Supreme Court's mandate that the FAA "calls for a summary and speedy disposition" of motions to compel arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983). Uber addresses each RFP in turn below.

**RFP 1:** For each instance identified in response to Interrogatory 2 above,[4] documents sufficient to show the reasons given by Uber for its assertion that a notice of dispute was non-compliant, and the dates on which Uber's assertion of non-compliance was communicated to the party submitting the notice of dispute.

**RFP 2:** For each instance identified in response to Interrogatory 6 above,[5] documents sufficient to show the reasons given by Uber for its assertion of non-compliance, and the dates on which Uber's assertion of non-compliance was communicated to the party bringing the arbitration.

**Plaintiffs' Position**. Responsive information is relevant to the operation of Uber's unconscionable pre-dispute and mass action processes, which the Terms impose before claimants can pursue any delegated issues with an arbitrator, as described above. As explained in the other joint letter concerning Plaintiffs' interrogatories, to have an arbitrator decide any threshold issue of unconscionability (which Uber claims are partially, but not entirely, delegated to the arbitrator) would require the following steps: (1) send a detailed notice of claim in hard copy; (2) individually and "personally" join a meeting with Uber representatives and "fully participate in the conference," even if represented by counsel; (3) commence arbitration with specific hard copy and signature requirements; (4) have the claim potentially kicked out and start over if any of the above requirements are not met; (5) have the claim derailed into a separate "mass action" process if Uber asserts that other claimants filed similar claims; (6) have the claim kicked out of arbitration if that process results in a decision in Uber's favor; and then (7) find that statutes of limitations were not tolled while Uber disputed compliance with its pre-dispute requirements or the existence of a "mass action." Notably, all of this occurs ***before*** the claimant can even raise the issue of whether any partial delegation clause is unconscionable.[6]

---

[4] **Interrogatory 2 is as follows:** State the number of instances, broken out by year and applicable Terms of Service, in which Uber asserted that a written notice of dispute did not comply with the requirements described in any applicable Terms of Service, including the Terms' "Pre-Arbitration Dispute Resolution" process.

[5] **Interrogatory 6 is as follows:** State the number of instances, broken out by year and applicable Terms of Service, in which Uber asserted that an arbitration could not proceed because of non-compliance with any the requirements described in any applicable Terms of Service, including the Terms' provisions on "Mass Actions," "Pre-Arbitration Dispute Resolution," "Initiating Arbitration" and "Preventing Conflicts of Interest."

[6] Plaintiffs note that the terms would be unconscionable even if Uber waived all of its onerous pre-dispute requirements. California law requires courts to evaluate terms as of the time of formation and recognizes that the mere existence of terms like these can deter claimants from pursuing meritorious claims. *See Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742, at *2 (9th Cir. Aug. 27, 2025) ("Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions." ... [T]he district court was still within its discretion to find that severance was not

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Although the unconscionability is clear from the face of the agreement, *see* Dkt. 32, ¶¶ 67–155 (non-exhaustive listing of unconscionable terms), if Uber wants to argue that Plaintiffs' concerns about these provisions are "hypothetical" and "groundless," then Plaintiffs should be allowed to conduct discovery concerning how these exact same terms have historically operated. For example, Uber argues that some of Plaintiffs' challenges to the arbitration agreement involve "speculation about a hypothetical argument Uber might make in response to a hypothetical conference." Dkt. 22 at 17:6–7. This discovery will shed light on what type of arguments Uber has already made under the exact provisions at issue here. Notably, the unconscionability issues that matter most to Uber (concerning the mass action waiver and class action waiver) are exempted from these requirements, and can be raised in court at any time and with no comparable prerequisites—which suggests Uber knows full well the burdens imposed by its terms are not merely "hypothetical."

Uber makes several other factual assertions in its motion to compel that Plaintiffs believe will be refuted through this discovery. First, Uber suggests that—contrary to what is alleged in the complaint—its dispute resolution terms seek "speed" and "efficiency," Dkt. 22 at 11:21, *see also arguments at id.* at 18:5 (the dispute resolution processes "promote efficiency"); 15:11–12 (terms are "designed to promote the timely resolution of threshold issues"); 16:19 ("enhance[] the chances for settlement"). The documents requested will provide evidence concerning the purported speed and efficiency of Uber's dispute resolution processes. Uber cannot raise arguments about how these provisions purportedly operate and then claim that discovery concerning their operation is not relevant to the unconscionability analysis. The Court already recognized that these requests seem connected to Plaintiffs' unconscionability arguments. Dkt. 40 at 4:5–6. In line with the Court's ruling, Plaintiffs now seek only information responsive to this request with respect to the operative 2026 Terms—which are the exact same Terms Uber contends that Plaintiffs must follow to have any delegated question resolved by an arbitrator.

**Defendant's Position.** These requests are expressly derivative of Interrogatories 2 and 6 and are improper for the same reasons set out in the interrogatories letter: documents concerning Uber's assertions that *other claimants'* notices of dispute or arbitration demands were non-compliant say nothing about whether the delegation of arbitrability in *Plaintiffs'* agreements is unconscionable, and "discovery as to agreements, disputes, arbitrations, and lawsuits related to other customers [is] improper." Dkt. 40 at 3. The fact that Uber may have exercised its contractual right with respect to non-parties and articulated why such parties failed to comply with the Terms is no evidence of the relevant provisions' unreasonableness, much less unconscionability.

The RFPs also multiply the interrogatories' burden: in addition to a numerical tally, RFPs 1 and 2 would require Uber to locate, collect, review, and produce the underlying correspondence from each individual claimant's dispute file—records concerning non-parties, laden with their personal information that would require redaction—for every instance identified. That case-by-case collection and review effort is unnecessary to a threshold motion concerning legal issues, particularly where Plaintiffs themselves fail to articulate how these RFPs "relate to the issue of unconscionability, specifically that of the delegation clause." Dkt. 40 at 4.

Plaintiffs' argument that the Delegation Agreement's carve-outs for challenges to the Mass Action Waiver and the Class Action Waiver unfairly reserve Uber's preferred issues for judicial review misunderstands the Terms. Those carve-outs allow a plaintiff to raise such challenges before a court, and numerous courts have held delegation clauses with carve-outs to be valid. Dkt. 35 at 17–19.

---

in the interests of justice because Avia should not benefit from the batching provision's chilling effects.") (emphasis original).

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
500 7th Ave., 8th Fl. New York, NY 10018
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

Plaintiffs cannot complain about delegation and in the same breath also complain about the availability of judicial review for certain issues.

**RFP 3:** Any written processes, scripts or template questions used by Uber representatives in connection with any Pre-Arbitration Dispute Resolution process, including documents reflecting any efforts made "in a good-faith effort to resolve" claims "informally," and any steps taken to evaluate whether a notice of dispute or informal dispute resolution conference complied with the requirements of the Terms.

**Plaintiffs' Position**. This discovery is relevant for similar reasons to the above requests—it will allow the Court to better evaluate Defendant's arguments about what these procedures are intended to accomplish and how they operate. Further, Plaintiffs' specifically challenge the requirement that a claimant must "personally" join a meeting with Uber representatives and "fully participate in the conference," as violating Cal. Prof. Rule 4.2(a), because these meetings appear to involve scripts drafted by lawyers that "us[e] the client as a conduit for conveying to the represented opposing party words or thoughts originating with the attorney," which Rule 4.2(a) prohibits. *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 153 Cal. Rptr. 3d 583, 602 (Cal. App. 2013). The documents requested in RFP 3 will bear on these issues, and shed light on whether the conferences are actually designed to achieve informal resolution and how claimants are expected to "appear at ***and fully participate*** in the conference" (emphasis added) before they can have any threshold dispute about whether these conferences are unconscionable resolved by an arbitrator. They will also address Uber's argument that some of Plaintiffs' challenges to the arbitration agreement involve "speculation about a hypothetical argument Uber might make in response to a hypothetical conference," by shedding light on Uber's actual approach to these conferences. Dkt. 22 at 17:6–7.

As with Plaintiffs' other requests addressed in these letters, Plaintiffs' last offer of compromise is to narrow the request to only written processes, scripts or template questions used in connection with the operative 2026 terms that Uber argues Plaintiffs must follow. Plaintiff notes that although defense counsel has undisputedly engaged in good faith in the meet and confer process, Uber has not offered one single compromise position in connection with any discovery request, either before or after the Court's Order finding that certain requests "seem connected" to Plaintiffs' arguments and instructing the parties to meet and confer, and notwithstanding Your Honor's rules.

**Defendant's Position.** The Court did not identify this request as even "seem[ing] connected" to Plaintiffs' unconscionability arguments, Dkt. 40 at 4, and Plaintiffs have not narrowed a word of it besides modifying the temporal scope to the operative 2026 Terms. Uber's internal scripts, templates, and evaluation procedures for the pre-arbitration conferences—if such things exist at all—say nothing about whether the pre-arbitration conference requirement is unconscionable, much less whether the delegation of arbitrability is unconscionable. Plaintiffs' underlying premise that these conferences are unconscionable because they cause a violation of Rule 4.2 is legally incorrect because the Terms allow each claimant's counsel to be present. Dkt. 35 at 29–30. RFP 3 amounts to a broad, invasive fishing expedition into material certain to include a significant amount of attorney work product and other privileged internal documents of Uber's. Plaintiffs cannot complain that Uber is refusing to accommodate their unnecessary requests when Uber's position has always been that the alleged unconscionability of the Arbitration Agreement—and specifically, the Delegation Agreement—is a legal question resolvable without factual discovery. Dkt. 35 at 16–33.