Raphael Janove (SBN 361193)
raphael@janove.law
**JANOVE PLLC**
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940

Liana Vitale (SBN 348772)
liana@janove.law
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

***Attorneys for Plaintiffs and Proposed Classes***

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCY YE, JULIA FLEMING, and JACQUELINE CLAY individually and on behalf of all others similarly situated,<br>*Plaintiffs*,<br>v.<br>UBER TECHNOLOGIES, INC.,<br>*Defendant*. | Case No. 4:26-cv-01744-KAW<br>**PLAINTIFFS' OPPOSITION TO DEFENDANT UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br>Judge: Honorable Kandis A. Westmore<br>Date: November 19, 2026<br>Time: 1:30 PM<br>Courtroom: 4 – 3rd Floor |

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

## TABLE OF CONTENTS

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 2

ARGUMENT ........ 6

- I. The Conflicting Delegation Clauses Are Not Enforceable. ........ 6
  - A. The Terms do not clearly and unmistakably delegate arbitrability. ........ 6
  - B. The delegation clause is independently unconscionable. ........ 9
    - 1. The delegation clause is procedurally unconscionable. ........ 9
    - 2. The delegation clause is substantively unconscionable. ........ 10
- II. The "Arbitration" Agreement Is Unconscionable. ........ 12
  - A. The agreement is procedurally unconscionable. ........ 12
  - B. The agreement is substantively unconscionable. ........ 14
    - 1. The one-sided pre-arbitration requirements frustrate claims. ........ 14
    - 2. The Mass Action protocol is unconscionable. ........ 17
    - 3. Plaintiffs Have Standing to Challenge the Mass Action Protocol. ........ 20
    - 4. The Class Action Waiver unlawfully bars public injunctive relief. ........ 21
  - C. The remaining one-sided provisions confirm a systematic effort to prevent consumers from vindicating their rights and that severance is inappropriate. ........ 22
- III. The Class Action Waiver is Unenforceable. ........ 24
- IV. Uber's Scheme Departs from the Bilateral Arbitration the FAA Protects and is not an Agreement to Arbitrate. ........ 24

CONCLUSION ........ 26

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

## TABLE OF AUTHORITIES

**Cases**

*Aggarwal v. Coinbase, Inc.*
685 F. Supp. 3d 867 (N.D. Cal. 2023) ..... 7

*Almond v. Uber Technologies, Inc.*,
No. CGC-25-630922 (Cal. Super. Ct., S.F. Cnty., May 21, 2026) ..... 8

*Armendariz v. Found. Health Psychcare Servs., Inc.*
24 Cal. 4th 83 (2000) ..... 13, 22

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ..... 24, 25

*Barnett v. V.T. Motors LLC*
2021 WL 5759113 (D. Ariz. Dec. 3, 2021) ..... 25

*Batory v. Sears, Roebuck & Co.*,
124 F. App'x 530 (9th Cir. 2005) ..... 25

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) ..... 7, 9, 14

*Blair v. Rent-A-Center, Inc.*
928 F.3d 819 (9th Cir. 2019) ..... 21, 22

*Booth v. United States*
914 F.3d 1199 (9th Cir. 2019) ..... 19

*Burkhardt v. Extra Space Mgmt., Inc.*
2025 WL 2172287 (E.D. Cal. July 31, 2025) ..... 20, 25

*Caremark, LLC v. Chickasaw Nation*
43 F.4th 1021 (9th Cir. 2022) ..... 8

*Davis v. Experian Info. Sols., Inc.*
2025 WL 2998157 (N.D. Cal. Oct. 24, 2025) ..... 25

*Discover Bank v. Superior Court*
36 Cal. 4th 148 (2005) ..... 24

*Fisher v. MoneyGram Int'l, Inc.*
66 Cal. App. 5th 1084 (2021) ..... 12

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*
97 F.4th 1190 (9th Cir. 2024) ..... 8

*Gardner v. AMN Healthcare Servs., Inc.*
2025 WL 3751929 (N.D. Cal. Dec. 29, 2025) ..... 20

*Gatton v. T-Mobile USA, Inc.*
152 Cal. App. 4th 571 (2007) ..... 12

*Gerber v. Twitter, Inc.*
2024 WL 5173313 (N.D. Cal. Dec. 18, 2024) ..... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000) ..... 18

*Gustin v. Club Demonstration Servs., Inc.*
2026 WL 1948873 (E.D. Cal. July 6, 2026) ..... 1, 17

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

115 Broadway, 5th Fl.
New York, NY 10006

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

JANOVE PLLC

*Heckman v. Live Nation Ent., Inc.*
686 F. Supp. 3d 939 (C.D. Cal. 2023) .......... 7, 23

*Heckman v. Live Nation Entertainment, Inc.*
120 F.4th 670 (9th Cir. 2024) .......... passim

*Hodges v. Comcast Cable Commc'ns, LLC*,
21 F.4th 535 (9th Cir. 2021) .......... 20, 21

*Homedics, Inc. v. Valley Forge Ins. Co.*
315 F.3d 1135 (9th Cir. 2003) .......... 9

*In re Tesla Advanced Driver Assistance Sys. Litig.*
2023 WL 6391477 (N.D. Cal. Sept. 30, 2023) .......... 6

*Ingle v. Circuit City Stores, Inc.*
328 F.3d 1165 (9th Cir. 2003) .......... 13

*Jack v. Ring LLC*
91 Cal. App. 5th 1186 (2023) .......... 7

*Jacksen v. Chapman Scottsdale Autoplex, LLC*
2021 WL 3410912 (D. Ariz. July 21, 2021) .......... 7

*Jenkins v. PetSmart, LLC*
2023 WL 8548677 (E.D. Pa. Dec. 11, 2023) .......... 20, 25

*Jones v. Starz Entm't, LLC*
129 F.4th 1176 (9th Cir. 2025) .......... 25

*Kohler v. Whaleco, Inc.*
757 F. Supp. 3d 1112 (S.D. Cal. 2024) .......... 25

*Lim v. TForce Logistics, LLC*
8 F.4th 992 (9th Cir. 2021) .......... 21

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. July 1, 2022) .......... passim

*Mafaher v. Uber Techs., Inc.*,
No. 25STCV17232 (Cal. Super. Ct., L.A. Cnty., May 1, 2026) .......... 19, 22

*McBurnie v. RAC Acceptance E., LLC*
95 F.4th 1188 (9th Cir. 2024) .......... 21

*McGill v. Citibank, N.A.*
2 Cal. 5th 945 (2017) .......... 2, 21, 22

*McKeown v. SAS Retail Servs., LLC*
2025 WL 3563717 (N.D. Cal. Dec. 12, 2025) .......... 1, 17

*Mohamed v. Uber Techs., Inc.*
848 F.3d 1201 (9th Cir. 2016) .......... 8, 9, 12

*O'Malley v. Williams-Sonoma, Inc.*
2026 WL 2640697 (N.D. Cal. Sept. 8, 2026) .......... passim

*Pandolfi v. AviaGames, Inc.*,
2024 WL 4051754 (N.D. Cal. Sept. 4, 2024) .......... passim

*Pandolfi v. Aviagames, Inc.*,
2025 WL 2463742 (9th Cir. Aug. 27, 2025) .......... 9, 13, 14, 23

*Peters v. Guaranteed Rate, Inc.*,
2024 WL 2925309 (N.D. Cal. June 10, 2024) .......... 17, 21

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

*Peters v. Guaranteed Rate, Inc.*, 2025 WL 1904424 (9th Cir. July 10, 2025) ... 11

*Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192 (N.D. Cal. Nov. 18, 2025) ... 7

*Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273 (S.D.N.Y. 2025) ... 25

*Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478 (2024) ... passim

*Rent-A-Center, W., Inc. v. Jackson* 561 U.S. 63 (2010) ... 6

*Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025) ... passim

*S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.* 153 Cal. Rptr. 3d 583 (Ct. App. 2013) ... 15, 16

*Sanchez v. Superior Ct.* 108 Cal. App. 5th 615 (2025) ... 13

*Sanchez v. Valencia Holding Co.* 61 Cal. 4th 899 (2015) ... 12

*Shearson/Am. Exp., Inc. v. McMahon* 482 U.S. 220 (1987) ... 18

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.* 6 Cal. 5th 59 (2018) ... 16

*Shroyer v. New Cingular Wireless Servs., Inc.* 498 F.3d 976 (9th Cir. 2007) ... 12

*SteppeChange LLC v. VEON Ltd.* 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ... 7

*Swartz v. ESPN Inc.*, 2026 WL 1507403 (M.D. Pa. May 29, 2026) ... 8

*Taylor v. Shutterfly, Inc.* 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ... 7

*Wisniewski v. Clary* 46 Cal. App. 3d 499 (Ct. App. 1975) ... 15

*Wray v. Humble Bundle, Inc.* 824 F. Supp. 3d 868 (N.D. Cal. 2025) ... 25

*Wu v. Uber Techs., Inc.* 43 N.Y.3d 288 (2024) ... 8

**Statutes**

9 U.S.C. § 2 ... 25

Cal. Civ. Code § 1670.5(a) ... 17, 20, 22

Cal. Civ. Code § 1751 ... 24

Cal. Civ. Code § 1781 ... 24

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

**Rules**

Cal. R. Ct. 3.855(a) ... 18
Cal. R. Ct. 3.857(b) ... 18

**Other Authorities**

ABA Model Rules of Prof'l Conduct, Rule 4.2 ... 15
ADR Servs. Arb. Rule 10 (eff. Oct. 7, 2024) ... 11, 12
California State Rule of Professional Conduct 4.2(a) ... 16
State Bar of Cal. Standing Comm. on Prof'l Responsibility and Conduct, Formal Op. No. 2011-181 (2011) ... 15

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

## INTRODUCTION

Uber portrays this as a routine motion to compel arbitration: Plaintiffs agreed to individual arbitration, most of their objections to it must be resolved by an arbitrator, and the rest lack merit. Dkt. No. 35 ("Mot."). Uber's Terms tell a different story. They establish an unusually complex dispute-resolution scheme that deters claims and burdens claimants at every stage—before a demand is filed, while threshold disputes are resolved, and even after a claimant has entered the arbitral forum. Statutes of limitations run throughout much of this process, setting claimants up for Uber to argue the claims are time-barred, if and when claimants finally get to file them.

The Ninth Circuit and other courts in this District have refused to enforce agreements that function similarly.[1] Every concern those courts identified—open-ended delay, a trigger keyed to the claimant's choice of counsel, and an asymmetry under which only consumers will ever be burdened—is present here. Uber uses bespoke mechanisms to deter claims and delay merits resolution: an ethically dubious pre-arbitration "personal meet and confer" requirement, an automatic stay if Uber says too many similar claims were filed, a Special Master process for disputes about "arbitration demands." Consumers must navigate most of these before they can even raise threshold challenges like unconscionability. Worse, after forcing claimants through these procedural hurdles, Uber can later opt out of arbitration entirely. So the Terms don't bind Uber to arbitration at all. They simply impose one-sided procedural hurdles that claimants must navigate before Uber invokes its right to kick them out of arbitration and force them to pursue claims in court—but only on an individual basis, and only if the statute of limitations has not run out by then.

Uber's Terms do not contain a clear and unmistakable delegation clause sending any of these issues to an arbitrator. Rather, the Terms make a confusing attempt to split up the unconscionability analysis so that the parts Uber cares most about go directly to court, while other unconscionability

---

[1] *See Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024); *Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *5–8, *11 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025) (mem.), *cert. denied*, No. 25-1008 (U.S. May 18, 2026); *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 990–92 (N.D. Cal. 2025); *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697 (N.D. Cal. Sept. 8, 2026); *Gustin v. Club Demonstration Servs., Inc.*, 2026 WL 1948873, at *8 (E.D. Cal. July 6, 2026) (cataloguing unconscionable arbitration agreements); *McKeown v. SAS Retail Servs., LLC*, 2025 WL 3563717, at *7–8 (N.D. Cal. Dec. 12, 2025); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040–44 (N.D. Cal. 2022).

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

challenges would be heard by an arbitrator only after extensive delay, if ever. Even Uber admits that most of Plaintiffs' unconscionability challenges should be resolved by this Court.

Any delegation would be unconscionable too. Consumers would be surprised by these confusing and unorthodox terms, which Uber imposed through an adhesive agreement with no upfront opt-out. And the same unconscionable process that chills merits claims also imposes unfair and one-sided burdens that apply directly to unconscionability challenges.

Most consumers will never undertake such a process to recover small amounts. Those who do can have their claims stayed, frozen, and challenged anew at virtually any time. Terms § 2(a)(3)(b)–(c). Either way, a consumer has no meaningful way to hold Uber responsible for its wrongdoing. The Terms also bar consumers from seeking public injunctive relief in any forum, in violation of *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) and established Ninth Circuit precedent. Uber, meanwhile, remains free to collect sham fees from millions of customers indefinitely.

These defects are so intertwined with the operation of the agreement that severance cannot cure them. The Terms should be invalidated, and Uber's motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs brought this lawsuit to address Uber's deceptive marketing through consumer protection statutes and to invalidate Uber's unconscionable Terms through declaratory judgment.[2] Uber provides on-demand rideshare services. Amended Complaint, ("AC") Dkt. No. 32 at ¶ 1. Customers tell Uber the address of their destination, and then choose their desired ride from options offered by Uber. AC ¶¶ 1–2. These options include rides that arrive sooner (marketed as "Faster" rides, with a precise arrival time and a higher price), and rides for users that prefer to "Wait & Save" with a ride that arrives later and within an estimated range (rather than at a precise arrival time). AC ¶ 2. Uber frequently deceives customers about the promised arrival times—charging extra for rides that are supposed to arrive sooner, but do not. ¶ 4. Uber will charge a premium price for a ride that

[2] Uber does not specify which Terms it moves to compel arbitration under, another defect fatal to its Motion. It notes that Plaintiffs challenge provisions in the January 15, 2026 Terms, which Uber says are "substantively identical to the arbitration agreement in the Terms to which Plaintiffs most recently agreed" in April 2026. Mot. at 11. But Uber's motion attaches neither set of terms. Plaintiffs are therefore submitting the January Terms as Exhibit A to the Vitale Declaration, and refer to them throughout this Opposition.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

is promised to arrive as little as *one minute* faster, because it knows that this difference is important to many Uber customers who seek faster and more predictable pickups. ¶ 3. To hold Uber accountable for this deceptive advertising, the Terms require consumers like Plaintiffs to clear the following hurdles, none of which Uber is likely to ever face.

*Before arbitration can be filed*. A consumer must mail Uber's Legal Department written notice of her claim with specific details about her account—though Uber may notify her of claims by email. Terms § 2(d). She must then "personally meet and confer, via telephone or videoconference" with Uber. *Id*. Even if represented by counsel, she "must also appear [] ***and*** fully participate" in the conference, and she may not attend with other claimants. *Id.* (emphasis added). Any demand filed before this "conference" is complete "shall" be dismissed. *Id.*

*When filing arbitration*. If a consumer completes the notice requirements and "fully participate[s]" in the "conference" to Uber's satisfaction, she must then serve her arbitration demand by mail and email. Terms § 2(d). She must also attach a copy of any litigation-funding agreement, or a statement that none exists, and waive privilege over anything shared with a funder. *Id.* § 5. (These privilege-waiver provisions are hidden near the end of Section 5, titled "Accessing the Services"). The Terms contain a one-sided signature requirement and asymmetrical Rule 11 obligations on claims filed by "you," but no comparable requirement for claims, defenses or procedural arguments raised by Uber. Terms § 2(d). Uber fakes mutuality by having the Terms authorize an arbitrator to afford relief or impose sanctions "for either party's violation of this requirement." Terms § 2(d); Mot. at 24:3–4. But the requirement applies only to "you," *i.e.* consumers, so Uber could never violate it, even in the unlikely event Uber filed arbitration claims. Terms § 2(d) ("By signing the demand for arbitration, ***you*** agree to take reasonable steps to ensure that … ") (emphasis added).

*The Mass Action stay*. Uber may then assert that a demand is part of a prohibited "Mass Action"—an open-ended and vaguely defined term. *Id.* § 2(a)(3)(a)–(b). A Mass Action "includes, but is not limited to," cases in which a party's lawyers or a "collection of law firms" have filed 50 or more "substantially similar" demands within 180 days, without specifying potential limits or other inclusions. *Id.* From the moment Uber raises a Mass Action challenge, "any further arbitration

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

proceedings" are "stayed." *Id.* § 2(a)(3)(b). A three-arbitrator panel then takes briefing and evidence and issues written findings on the Mass Action issue, on no deadline. *Id.* Even a demand already "processed as [an] individual arbitration demand[]" may be swept into this procedure retroactively based on strangers' later filings. *Id.* § 2(a)(3)(c)(iii).

*The post-hoc arbitration opt-out*. If the panel, applying Uber's definition, finds the claim to be part of a Mass Action, Uber may cancel arbitration and require claimants to move to court. *Id.* § 2(a)(3)(b). The consumer may now opt out of arbitration too, but only by a notice she personally signs and sends by Priority Mail or hand delivery; Uber need only notify the claimant's lawyer. *Id.*

If Uber opts out, the consumer is sent to court to sue alone for relatively minimal damages. *Id.* § 2(a)(2). In no forum may she seek "any non-individual relief" to stop the practice for others. *Id.* §§ 2(a)(2), 2(a)(3)(a). The consumer's post-hoc right to opt-out may also be illusory because statutes of limitations continue to run except during the personal meet and confer period. So by the time a panel concludes a Mass Action exists and parties can opt out of arbitration, a new court proceeding may be time-barred. Nothing stops Uber from forcing claimants out of arbitration and into court, then raising these arguments.

*The Special Master*. If neither party opts out—and, as noted above, claimants may be forced to stay in arbitration because of statute of limitations concerns—Uber has 15 days to request a Special Master to resolve "threshold disputes regarding the arbitration demands submitted in the Mass Action." *Id.* § 2(a)(3)(c)(i). These focus on challenges to whether claims can proceed, and "include, but are not limited to" any alleged "violation of these Terms." *Id*. The arbitration provider must "refrain from further processing" every disputed demand, and the Special Master has "no authority to consolidate cases" and no deadline. *Id.* So Uber can derail the arbitration again with contentions that claimants failed to comply with some aspect of its pre-dispute process. Even undisputed demands wait; they are assigned to arbitrators only "[a]fter proceedings before the Special Master have concluded." *Id.* § 2(a)(3)(c)(ii). Statutes of limitations are not tolled while this happens, so if the "violation" requires claimants to try again their claims may be time-barred.

*The hearing queue*. If claimants make it this far, the demand is then sorted into a group of up to 100 and assigned to a single arbitrator, who must decide each claim individually, in no

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

prescribed order and on no schedule. *Id.* §§ 2(a)(3)(c)(ii), 2(g). The consumer could be last in line. And even at this stage, the Terms preserve, without deadline or procedure, objections that a law firm's multiple filings violate "any term of this Agreement." *Id.* § 2(a)(3)(c)(ii).

<u>No tolling</u>. As noted above, statutes of limitations continue to run during significant portions of Uber's lengthy pre-merits processes. The Terms provide that the "statute of limitations and any filing fee deadlines shall be tolled while the parties engage in" the personal "meet and confer" with Uber described in Terms § 2(d), but there is no other tolling. In fact, the Terms state: "All statutes of limitations that would otherwise be applicable will apply to any arbitration proceeding." Terms § 2(c). At three stages—the Mass Action determination panel, the Special Master, and the hearing queue—the Terms set no deadline, while limitations periods continue to run. *Id.* § 2(a)(3)(b)-(c).

If a party commences an arbitration and Uber asserts that the claimant did not "fully participate" in the required personal meet and confer, the parties then argue the point while the statute of limitation runs. Then, if the arbitrator ultimately dismisses the claim for having not satisfied this "condition precedent" to arbitration because a claimant did not "fully participate"—whatever that means, Terms § 2(d)—the statute of limitations runs throughout this process. The claimant must start a new arbitration, but by then the claims may be time-barred. This creates a mechanism through which Uber can extinguish claims before they can be resolved on the merits. It also means that the right for claimants to "opt out" of arbitration after a Mass Action ruling is effectively limited to those claims whose statutes of limitations have not run out while Uber raises mass action challenges.

<u>Other unfair and one-sided provisions</u>. Uber's terms contain many other unfair and one-sided provisions. Uber disclaims liability for consequential damages, while requiring consumers to indemnify it. *Id.* § 8. The indemnification for "breach or violation of any of these Terms" also opens the door for Uber to shift its costs and attorney's fees related to "violation of the Mass Action Waiver" onto the consumer—a threat that seriously deters claims, especially when claimants cannot even control whether or not they are swept up into Mass Actions. *Id.* §§ 8, 2(a)(3)(a). Only Uber's failure to enforce a right is protected from waiver. *Id.* § 9. Consumers who do not dispute a charge in Uber's app within 30 days "waive[] [their] right to later dispute the amounts charged." Terms

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

§ 7—a one-sided 30-day limitations period on the very claims Plaintiffs bring. Uber on the other hand, may "adjust Charges for any or all services or goods obtained through the use of the Services at any time." *Id*. The intellectual-property carve-out exempts from arbitration claims only Uber would bring. Terms § 2(b). The offer-of-judgment provision shifts costs to consumers in small-dollar disputes, including potentially arbitrator's fees and other costs not incurred in court. *Id.* § 2(f).

## ARGUMENT

### I. The Conflicting Delegation Clauses Are Not Enforceable.

#### A. The Terms do not clearly and unmistakably delegate arbitrability.

A delegation is enforceable only if it "clearly and unmistakably" assigns arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *In re Tesla Advanced Driver Assistance Sys. Litig.*, 2023 WL 6391477, at *6 (N.D. Cal. Sept. 30, 2023). The Terms do the opposite. They first provide that "any dispute, claim, lawsuit, or controversy in any way arising between you and Uber will be settled by binding individual arbitration between you and Uber, and not in a court of law," with the "only exceptions to this arbitration agreement [being] those expressly provided below in Section 2(b)." Terms § 2(a)(1). They go on to grant an arbitrator "exclusive authority to resolve all threshold arbitrability issues," including "without limitation any claim that all or any part of this Arbitration Agreement is void or voidable" and whether the Terms are "unconscionable." Terms § 2(a)(4). They then—but not in Section 2(b), where the "only exceptions to this arbitration agreement" are said to be found—reverse this delegation by requiring that "only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes concerning" the Mass Action and Class Action Waivers, including whether they are "unenforceable, unconscionable, illegal, void, or voidable." Terms § 2(a)(4). Next, a carveout to the carveout provides that actually "an arbitrator or panel of arbitrators" can decide whether a party has violated the Mass Action Waiver—plainly a "dispute concerning" that waiver, which the Terms earlier committed exclusively to a court. Terms §§ 2(a)(4), 2(a)(3)(b). Uber's use of "except that" and "however" does not cure the issue, because there is no way to tell what exactly is excepted.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

Plaintiffs do not contend that a coherent carve-out, standing alone, defeats delegation. But an agreement that "points in two directions" on who decides a given challenge does not clearly and unmistakably delegate it. *Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (2023); *Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192, at *1 (N.D. Cal. Nov. 18, 2025) ("delegation isn't clear because of the contradictory nature of the provision"). Uber's authority holding that a carve-out for certain types of claims does not automatically defeat delegation is inapposite; these cases do not condone splitting review of interrelated and overlapping aspects of a complex dispute resolution process between courts and arbitrators. Mot. at 9–10 (citing *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018); *Aggarwal v. Coinbase, Inc.*, 685 F. Supp. 3d 867, 878–79 (N.D. Cal. 2023); *Jacksen v. Chapman Scottsdale Autoplex, LLC*, 2021 WL 3410912 (D. Ariz. July 21, 2021); *Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018)).

Illustrating the lack of clarity here, Uber concedes that the Court has authority to resolve unconscionability challenges to the Mass Action and Class Action Waivers ("Waivers"). Mot. at 12–18. Yet it artificially limits what it deems unconscionability challenges concerning the Waivers. Mot. at 19–24. But *all* of Plaintiffs' unconscionability arguments are "disputes concerning the" Waivers, because they require an analysis of how the Waivers and other interlocking dispute resolution provisions work together to deter and delay claims. The Ninth Circuit has repeatedly emphasized that "[i]n evaluating an unconscionability challenge to a delegation provision . . . , a court must be able to interpret that provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023); *see also Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 957 (C.D. Cal. 2023), *aff'd* 120 F.4th 670 (9th Cir. 2024) ("[T]he unconscionability inquiry requires a court to examine the totality of the agreement's substantive terms as well as the circumstances of its formation to determine whether the overall bargain was unreasonably one-sided.").

Under Uber's reading of the Terms, no single forum can hear a complete unconscionability challenge—a structural disadvantage that inures entirely to Uber's benefit. It is also unfair for Uber to preserve fast-track access to courts for the issues that matter most to Uber, while other issues are consigned to a lengthy pre-dispute process and then arbitration.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

Uber's authorities did not confront this combination of defects. Mot. 8. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021 (9th Cir. 2022), *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190 (9th Cir. 2024), did not consider *any* carve-out from the delegation clause. Same for *Swartz v. ESPN Inc.*, 2026 WL 1507403, at *9 (M.D. Pa. May 29, 2026) and *Wu v. Uber Techs., Inc.*, 43 N.Y.3d 288, 310 (2024). *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016), considered a single carve-out assigning waiver validity to courts—with no overlapping aspects, no parallel proceedings, no fragmented grants of authority, and no conflicting "only exceptions" clause. Unlike the Terms here, *Mohamed* addressed a clear carve out for "any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable." *Id.* at 1208. Uber's new Terms use far more expansive and ambiguous phrasing—granting the court "exclusive authority" over "any and all disputes concerning" the Waivers, and employing "including, but not limited to" modifiers rather than identifying a specific type of challenge. Terms § 2(a)(4). These much broader definitions set up a conflict with other provisions and make delegation unclear.

The nonbinding state court decisions Uber relies on, but did not submit to this Court, do not grapple with the above issues at all.[3] Nor do they appear to have considered *Pandolfi*, *Rios*, *O'Malley*, or *MacClelland*, decisions from courts in this District that invalidated arbitration clauses with similar unconscionable terms and "mass arbitration" protocols to Uber's. *See* n.1, *supra*. (The *Almond* decision mentioned them only to assert that "the facts in *Pandolfi* are distinguishable from those presented here," and dismiss *Rios* and *MacClelland* as "not binding"—tacitly acknowledging that there is no principled way to distinguish them. Vitale Decl. Ex. B (*Almond v. Uber Technologies, Inc.,* No. CGC-25-630922 (Cal. Super. Ct., S.F. Cnty. May 21, 2026) at 17:4–5, n.3.)

If anything, the state court decisions Uber mistakenly relies on only serve to confirm that no reasonable consumer could expect these provisions or understand how they work—many of these issues are overlooked even in a litigation context. These decisions also addressed different

[3] Plaintiffs are submitting these state court decisions as Exhibits B, C, and D to the Vitale Declaration. If the Court wishes, Plaintiffs would also be pleased to submit the plaintiffs' briefing in these cases so the Court can see that many of the issues raised here were not addressed. This may be because those cases addressed different agreements.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

agreements, at least one of which was "not a consumer contract of adhesion, and it contain[ed] an opt-out provision." Ex. B (*Almond*) at 10:4.[4]

**B. The delegation clause is independently unconscionable.**

A party challenging a delegation clause may rely on the same arguments made against the agreement as a whole, so long as it explains how they apply to the delegation clause. *Bielski*, 87 F.4th at 2012; *see also Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670, 681 (9th Cir. 2024) ("A court must consider the parts of the agreement that impact the delegation provision to decide its enforceability. If a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable.") (cleaned up).

1. <u>The delegation clause is procedurally unconscionable.</u>

Uber's delegation clause is imposed as a contract of adhesion, and "is obscure and surprising"—buried in multiple sections of dense and conflicting text. *See Pandolfi v. AviaGames, Inc.*, 2024 WL 4051754, at *4, *11 (N.D. Cal. Sept. 4, 2024); *see also Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975, 986 (N.D. Cal. 2025) (surprise exists with a "lengthy . . . single-spaced contract, and the [challenged] provision is embedded deep within the dense text"). The "Arbitration Agreement" alone spans 11 single-spaced pages. Terms § 2. Moreover, "a layperson would be surprised to find that the delegation clause is subject to the batching provision." *Pandolfi v. Aviagames, Inc.*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025). Claimants "would not reasonably anticipate [Uber's] complex" Mass Action challenge procedures, or that "the identity of their yet-unknown attorneys, and the number of other claimants that the attorneys represent, could comprise a substantial obstructive hurdle in the path toward resolving" threshold challenges to the delegation clause. *See Rios*, 807 F. Supp. 3d at 986. There is no opt-out that might mitigate the procedural

[4] Regardless, this Court is bound to follow Ninth Circuit precedent. Uber's own authority, *Mohamed*, 848 F.3d at 1211, chastised the district court for applying "California law as announced by the California Supreme Court" rather than federal court precedents. *Id.* at 1211.

Further, "[w]hen neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law." *Homedics, Inc. v. Valley Forge Ins. Co., a Pennsylvania Corp.*, 315 F.3d 1135, 1138 (9th Cir. 2003) (citation omitted). Uber identifies no conflict here and Plaintiffs therefore primarily cite to California authorities, although New York and Pennsylvania law would require the same result.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

unconscionability.

2. The delegation clause is substantively unconscionable.

Uber's delegation clause unfairly and indefinitely delays the resolution of delegated threshold questions. *See Pandolfi,* 2024 WL 4051754, at *6 (mass-arbitration provision delaying "resolution of the gateway issue of whether a claim is arbitrable in the first instance" renders the delegation itself unconscionable). Uber's claim-deterring machinery operates directly on the delegated questions. As discussed above, before an arbitrator could rule on any threshold question, a claimant must: (1) send a detailed notice of claim in hard copy; (2) "personally" join a "meet and confer" with Uber and "fully participate;" (3) commence arbitration with specific hard copy and signature requirements, and (4) send Uber a copy of any litigation-funding agreement and waive privilege over any materials shared with a funder—a disclosure that cannot be undone, Terms § 6.

The claim may be kicked out if those requirements are not met, requiring the claimant to start over. Or the claim may be derailed into a separate "Mass Action" process if Uber asserts that too many other claimants filed similar claims. "[A]ny further arbitration proceedings" are then stayed, including proceedings on whether the arbitration agreement is enforceable, until a three-arbitrator panel rules on the Mass Action issue, with no deadline. Terms § 2(a)(3)(b). The claim may then be kicked out of arbitration based on other claimants' actions in filing similar claims, and claimants' choice of counsel—without the delegated questions ever being decided. No statutes of limitations are tolled while Uber disputes compliance with its pre-dispute requirements, or the existence of a "Mass Action." All of this occurs ***before*** the claimant can even raise unconscionability challenges, rendering any delegation clause unconscionable.

If the claims stay in arbitration, the Special Master stage halts "further processing" again, so that Uber can raise "threshold disputes regarding the arbitration demands," also with no deadline. *Id.* § 2(a)(3)(c)(i). Plaintiffs' unconscionability challenge is a threshold dispute regarding Uber's terms, and not a dispute regarding the arbitration demands, so they likely must endure yet another round of briefing and decision-making before their unconscionability arguments are heard.

*Pandolfi* held that a mass-arbitration provision delaying "resolution of the gateway issue of whether a claim is arbitrable in the first instance" renders the delegation itself unconscionable. 2024

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

WL 4051754, at *6. The same is true here. Judge Chen's recent decision in *Rios* is instructive. There, the defendant's terms would only toll claims on receipt of a "'fully complete Notice.'" *Rios*, 807 F. Supp. 3d at 992. "Whether a Notice [wa]s 'fully complete'" [was] not defined by any objective criteria, and seem[ed] instead to be subject to [defendant's] exclusive interpretation." *Id*. This provided defendant "with an opportunity to dispute the appropriateness of tolling whenever it deems a Notice incomplete." *Id*. The provision was substantively unconscionable for imposing a "continued risk that [the defendant] will seek to defeat claims as untimely after prolonged delays imposed by the bellwether process." *Id*. at 933. Although *Rios* did not address a delegation clause, its reasoning applies equally to any delegation clause here. Uber can challenge claimant's compliance with multiple aspects of its elaborate pre-dispute resolution framework, so "claimants may find themselves wholly unable to vindicate their claims" or raise unconscionability challenges, "by operation of the . . . ambiguous, subjective, and asymmetrical tolling provisions." *See id.*[5]

Meanwhile, Uber has exempted from delegation and this onerous process the Class Action and Mass Action Waivers. So the provisions that matter most to Uber are fast tracked to court while all other issues are subject to lengthy delays and may never even be heard by an arbitrator. This compounds the unconscionability. *See Peters v. Guaranteed Rate, Inc.*, 2025 WL 1904424, at *2 (9th Cir. July 10, 2025) ("The Agreement's structure reinforces its one-sidedness by mostly carving out exemptions to arbitration for claims likely to be brought by GRI, rather than Peters.").

Uber misplaces reliance on ADR Services Rule 10. Mot. 17, Rule 10 governs a single threshold arbitrator, the role the Terms assign to the Special Master. Terms § 2(a)(3)(c)(i); ADR Servs. Arb. R. 10(B)–(C) (eff. Oct. 7, 2024). The Terms assign the question of whether a claimant violated the Mass Action Waiver to a panel of three arbitrators "[n]otwithstanding any provision to the contrary in the applicable arbitration provider's rules." Terms § 2(a)(3)(b). So Rule 10 does not apply to the panel stage and does nothing to shorten it. And even where Rule 10 does apply, it adds delay: it lets ADR Services suspend processing of disputed demands and bars appointing an

[5] Uber responded to very limited discovery claiming, subject to many objections and limitations, that it had not delayed claims in this manner, and without specifying whether any claims subject to these provisions had yet been filed. Regardless, the relevant inquiry focuses on the language of the Terms themselves at formation, so the absence is not exculpatory.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

arbitrator to hear the claims until every threshold issue is resolved, with no deadline for doing so. ADR Servs. Arb. R. 10(B), (E).

## II. The "Arbitration" Agreement Is Unconscionable.

The Terms expressly authorize this Court to consider unconscionability issues related to the Waivers, and any delegation of other unconscionability issues is unclear and unenforceable for the reasons above. This Court should hold many aspects of the Terms unconscionable, and given the pervasive nature of the unconscionability, refuse to sever them.

### A. The agreement is procedurally unconscionable.

An agreement "is at least minimally procedurally unconscionable if it is a contract of adhesion." *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1033 (N.D. Cal. July 1, 2022). The court also examines whether the circumstances of the agreement's formation created "oppression or surprise that closer scrutiny of its overall fairness is required." *Rios*, 807 F. Supp. 3d at 985.

The Terms are adhesive. *Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 492–94 (2024); *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 915 (2015). Plaintiffs could not negotiate them, could not use the app without accepting them, and—unlike parties to agreements with an upfront opt-out, *see Mohamed*, 848 F.3d at 1211—had no means to decline Uber's dispute resolution terms. Uber's reliance on competitors like Lyft and Waymo, Mot. 14, fails; market alternatives do not negate an adhesion contract's procedural unconscionability. *O'Malley v. Williams-Sonoma, Inc.*, 2026 WL 2640697, at *5 (N.D. Cal. Sept. 8, 2026); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 985 (9th Cir. 2007); *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 583 (2007). Those competitors' offerings are not identical to Uber's, and they impose their own arbitration agreements and class waivers.[6] Also, the "'meaningful choice' rationale applies only where surprise is not an issue. *Gerber v. Twitter, Inc.*, 2024 WL 5173313, at *6 (N.D. Cal. Dec. 18, 2024) (citing *Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1096 (2021)).

The Terms also carry hallmarks of surprise. Uber may modify them "at any time, effective

[6] *See, e.g., Ye v. Lyft,* 3:26-cv-00575, (N.D. Cal), Dkt. No. 75 at ¶¶ 58–73.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

upon posting," and then apply them retroactively. Terms §§ 1, 2(a)(1). The Ninth Circuit has found surprise where a drafter could retroactively modify its terms. *Heckman*, 120 F.4th at 682–83; *see Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003). And as in *Heckman*, the dispute provisions here are so dense and internally contradictory that no consumer could anticipate how they operate—for instance, that an individual claim may be retroactively swept into the Mass Action process based on strangers' filings. Terms § 2(a)(3)(a), (c)(iii). Conspicuous headings, Mot. 10, cannot cure surprise that arises from substance. *See Rios*, 807 F. Supp. 3d at 986 (finding surprise because consumers "would not reasonably anticipate [a] complex bellwether and batching scheme" or "that the identity of their yet-unknown attorneys … could comprise a substantial obstructive hurdle in the path toward resolving their dispute"); *Pandolfi*, 2025 WL 2463742, at *1 (finding "modest degree of procedural unconscionability because [delegation clause was] hidden in the Terms of Service, incorporates [] rules that are subject to change, and a layperson would be surprised to find that the delegation clause is subject to the batching provision"). The heading "Delegation Agreement" means nothing to a reasonable consumer, so Uber's use of that label does not help.

Further, as to non-California residents, like Plaintiffs Fleming and Clay, the Terms do not specify which arbitration rules will apply or where arbitration claims can be filed.[7] This "made it virtually impossible for [these plaintiffs] to knowingly agree to the rules, as [they] would . . . have had to research [multiple] arbitration providers' respective rules" and "guess which additional unnamed providers" might exist. *Sanchez v. Superior Ct.*, 108 Cal. App. 5th 615, 627 (2025) (finding unfair surprise where "the contract purported to have the parties agree to the arbitration rules as promulgated by 'JAMS, Judicate West, or equivalent'"). Uber's Terms provide even less information about which rules will apply; surprise is inevitable.

Given the breadth of procedural unconscionability here, little substantive unconscionability is required. *Armendariz v. Foundation Health Psychcare Services, Inc,* 24 Cal. 4th 83, 114 (2000). Either way, Uber's Terms have it in spades.

---

[7] Terms § 2(c): "For disputes arising outside of California" the parties must "meet and confer to select a neutral arbitration provider," "the ensuing arbitration shall commence pursuant to the rules of the designated arbitration provider," and absent agreement "the applicable arbitration provider will appoint the Arbitrator in accordance with its rules."

JANOVE PLLC
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
115 Broadway, 5th Fl. New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103

**B. The agreement is substantively unconscionable.**

"Substantive unconscionability 'considers the fairness of an agreement's actual terms, focusing on whether the contract will create unfair or one-sided results.'" *Pandolfi*, 2025 WL 2463742, at *1 (quoting *Ramirez*, 16 Cal. 5th at 530). Uber's agreement is riddled with unfair and asymmetrical provisions. Many are expressly one-sided; others are facially neutral but will inevitably "create unfair or one-sided results." *Pandolfi*, 2025 WL 2463742, at *1 (citation omitted); *see also Heckman*, 120 F.4th at 686 (finding unconscionable a mutual right to appeal that was "functionally reserved for Defendants").

1. <u>The one-sided pre-arbitration requirements frustrate claims.</u>

The pre-arbitration requirements lack mutuality. Consumers must proceed by mail; Uber may proceed by email. Terms § 2(d). A claimant must appear personally, while Uber can designate any low-level employee to attend. *Id.* And while a consumer's premature demand "shall" be dismissed, nothing happens if Uber fails to "meet and confer" within the required 60 days. *Id.*

Uber's analogies to *Bielski* and to mediation and settlement conferences fail. Mot. 19–20. Coinbase's terms, at issue in *Bielski*, provided for a process where consumers would "contact Coinbase through [its customer] support team to attempt to resolve any such dispute amicably," then file a complaint using an easily available online form, or mail if preferred by the claimant. Vitale Decl. Ex. E § 8.2. The process imposed meaningful requirements on Coinbase too: within 15 days, "a Coinbase customer relations agent ('Agent')" would review the customer's written complaint and "address the issues raised in [the customer's] Complaint form by sending you an e-mail ('Resolution Notice') in which the Agent will: (i) offer to resolve your complaint in the way you requested; (ii) make a determination rejecting your Complaint and set out the reasons for the rejection; or (iii) offer to resolve your Complaint with an alternative solution." *Id.* at 8.2.2; *Bielski*, 87 F.4th at 1014.[8] Uber's process imposes no such requirements. Yet Uber has four times as long to complete it—60 days instead of 15 days. Terms § 2(d).

[8] *Bielski* also did not wholeheartedly approve of even these procedures. Rather, the Ninth Circuit found that, absent other hallmarks of unconscionability, the "low level" of unconscionability there was not enough to "render the provision unconscionable and therefore unenforceable." *Bielski*, 87 F.4th at 1015.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

Nor does Uber's mandatory "personal[] meet and confer" have anything in common with court-ordered settlement conferences—which occur within pending proceedings, not as impediments to starting them. Those are overseen by judges or mediators, who must be impartial. Cal. R. Ct. 3.855(a), 3.857(b). Parties attend so they can communicate with *the mediator*, not directly with their adversary. Uber's conference has no neutral, no tribunal, and a mandatory consequence: the arbitrator "shall dismiss" any demand filed before it is completed to Uber's exacting specifications. Terms § 2(d). It is an obstacle to adjudication, not an invitation to settle.

Uber cites no authorities requiring represented parties to directly and "personally meet and confer" about legal claims, much less to "fully participate" in some undefined way beyond appearing with counsel. *Cf.* Terms § 2(d).[9] Perhaps recognizing this, Uber now argues that "a person can 'fully participate' in a conference even if she communicates through counsel." Mot. 20. But the text forecloses that reading. It states that "counsel may participate in the conference, but the party must *also* appear at and *fully participate* in the conference." Terms § 2(d) (emphasis added). If counsel's participation satisfied the party's obligation, the requirement that the party "also . . . fully participate" would add nothing.

This requirement invites communications with represented parties that California Rule of Professional Conduct 4.2(a) forbids. Rule 4.2(a) bars communications with a represented person about the subject of the representation, including communications whose content "originates with or is directed by the attorney." *S.F. Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 153 Cal. Rptr. 3d 583, 602 (Ct. App. 2013); *see also* ABA Mod. Prof. Rule 4.2 cmt. 1. The Terms explicitly authorize Uber's counsel to attend the required "meet and confer," which claimant must also personally attend and "fully participate" in. Terms § 2(d) ("[I]f either party is represented by counsel, that party's counsel may participate in the conference"). This is not allowed, even with the claimant's consent.[10]

[9] Uber mistakenly relies on *Wisniewski v. Clary*, 46 Cal. App. 3d 499, 503 (Ct. App. 1975), which involved a court-ordered settlement conference, did not address Rule 4.2, nor approve any mandatory meeting between represented parties and opposing counsel unsupervised by a neutral.

[10] *See* State Bar Formal Opinion 2011-181, available at https://www.calbar.ca.gov/sites/default/files/portals/0/documents/ethics/Opinions/2011-

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

Further, even if Uber's counsel does not attend, the Terms allow counsel to impermissibly speak to a represented party by using Uber's representative as a mouthpiece. Ethics rules prohibit Uber's counsel from, *inter alia*, "scripting the questions to be asked or statements to be made in the communications or otherwise using the client as a conduit for conveying to the represented opposing party words or thoughts originating with the attorney." *S.F. Unified Sch. Dist.*, 153 Cal. Rptr. at 602; CA ST RPC Rule 4.2(a) ("a lawyer shall not communicate directly *or indirectly* about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer") (emphasis added); n.10, *supra*. In this case, Plaintiffs sought discovery into copies of "written processes, scripts or template questions used by Uber representatives in connection with any Pre-Arbitration Dispute Resolution process, including documents reflecting any efforts made 'in a good-faith effort to resolve' claims 'informally' . . . . " Dkt. No. 43 at 5. Uber responded that discovery concerning "Uber's internal scripts, [and] templates. . . for the pre-arbitration conferences—if such things exist at all … amounts to a broad, invasive fishing expedition into material certain to include a significant amount of attorney work product and other privileged internal documents of Uber's." Dkt. No. 43 at 5:21–25. In other words, even if Uber's counsel does not join these meetings with represented claimants, Uber all but confirmed that the conferences still involve content that impermissibly originates with or is directed by attorneys and communicated to represented parties.

Because Uber's dispute terms serve this illegal purpose, they are unconscionable. The Court should invalidate them. *See Sheppard, Mullin, Richter & Hampton, LLP v. J-M Mfg. Co.*, 6 Cal. 5th 59, 74 (2018) ("[A] n attorney contract that has as its object conduct constituting a violation of the Rules of Professional Conduct is contrary to the public policy of this state and is therefore unenforceable."). Uber's suggestion that claimant's counsel can cure these issues by attending the conference is wrong. *See* Mot. 20. This is not allowed, unless *the claimant's counsel* (and not the claimant) consents, regardless of whether claimant's counsel is also in attendance. *See* n.10, *supra.*

---

181%20%5b10-0002%5d%20-%20PAW.pdf, discussing former Rule 2-100, Rule 4.2's predecessor: "Consent of the represented party is not sufficient. … [T]he presence of the other lawyer is not necessarily sufficient" either.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

It also ignores that attending the conference without consent from *Uber's counsel* places claimant's counsel at risk of violating Rule 4.2(a) by communicating directly with Uber.

2. The Mass Action protocol is unconscionable.

Courts in this District have repeatedly held similar mass arbitration protocols substantively unconscionable. *O'Malley*, 2026 WL 2640697 at *7–8; *Pandolfi*, 2024 WL 4051754, at *5–8, *11; *Rios*, 807 F. Supp. 3d at 990–92; *MacClelland*, 609 F. Supp. 3d at 1040–44; *McKeown v. SAS Retail Servs., LLC*, 2025 WL 3563717, at *7–8 (N.D. Cal. Dec. 12, 2025); *Gustin v. Club Demonstration Servs., Inc.*, 2026 WL 1948873, at *8 (E.D. Cal. July 6, 2026). As Judge Lin explained, mass action procedures "come in different flavors," but are unreasonably one-sided where they present (1) "an inherent risk of extreme delays" and an attendant chilling effect; (2) interference with "the right to counsel of [claimants'] choice"; and (3) "built-in asymmetry." *O'Malley*, 2026 WL 2640697 at *7. Each defect appears on the face of the Terms.

Because unconscionability is assessed as of "the time [the contract] was made," Cal. Civ. Code § 1670.5(a); *Ramirez*, 16 Cal. 5th at 506, the question is what these provisions permit, not how Uber says it will use them. "Plaintiffs may challenge the arbitration agreement on the basis that, at formation, it contained unconscionable provisions, even if those provisions were not later applied in an unfair manner to Plaintiffs." *O'Malley*, 2026 WL 2640697, at *5 (N.D. Cal. Sept. 8, 2026); *see* Part II.B.3; *see also Peters v. Guaranteed Rate, Inc.*, 2024 WL 2925309, at *1 (N.D. Cal. June 10, 2024), *aff'd* 2025 WL 1904424 (9th Cir. July 10, 2025) ("Guaranteed Rate cannot avoid the legal consequences of these blatantly illegal provisions by simply agreeing in litigation not to enforce them. What matters is whether the provisions, when read together, were unconscionable at the time the agreement was made.").

*a. Extreme, open-ended delay.*

The Terms produce the exact dynamic courts have condemned: "any delay in one arbitration halts progress for all remaining claimants." *Rios*, 807 F. Supp. 3d at 990; *O'Malley*, 2026 WL 2640697 at *7. A single assertion that claims form a Mass Action stays every affected claim until the panel rules, on no deadline. Terms § 2(a)(3)(b). A single manufactured dispute before the Special Master, who likewise faces no deadline, then delays assignment of every claim, disputed or not. *Id.*

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

§ 2(a)(3)(c)(i)–(ii). The grouping procedure next places each claimant in a queue of up to 100 before a single arbitrator—all with no order or time limit for hearings. *Id.* §§ 2(a)(3)(b)–(c), 2(g). And no group can begin until any fee-dispute panel has also finished. *Id.* § 2(h).

Even surviving that stage brings no finality: the Terms preserve, without deadline or procedure, objections that "the filing or presentation of multiple arbitration demands by or with the assistance of the same law firm or organization violates any term of this Agreement." *Id.* § 2(a)(3)(c)(ii). That the claims are nominally "filed" but may not be processed is a distinction without a difference to a claimant who cannot get a merits hearing.

The "'prospect of delay' itself may have a 'chilling effect on claimants, deterring them from vindicating their rights.'" *Rios*, 807 F. Supp. 3d at 990 (citations omitted). Uber's responses fail. The violation inquiry is not "narrow," Mot. 17: the panel must determine how many demands were filed, when, by which "collection of law firms," whether they are "substantially similar," and what else falls within the open-ended definition—all with briefing, evidence, and three arbitrators' deliberation. There is no closure because the inquiry can always be restarted if others file new claims. Terms § 2(a)(3)(c)(iii).[11] ADR Services' rules cannot supply missing deadlines for the reasons described above. *See also Pandolfi*, 2024 WL 4051754, at *8 (general provider rules do not override specific mass-arbitration terms). Nor is the delay "speculative" under *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000), Mot. 17. The stay is immediate and mandatory; only its duration is uncertain. *Green Tree* does not apply where "the arbitration agreement . . . is not silent on the contested matter." *Pandolfi*, 2024 WL 4051754, at *7. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220 (1987) Mot. 17, does not help Uber either because even a competent Special Master following the Terms to the letter faces no limit on duration, across potentially thousands of claims, with no power to consolidate. Terms § 2(a)(3)(c)(i).

Delay is especially harmful here because the Terms toll limitations only during the informal conference process, Terms § 2(c)–(d), so claims can expire while they wait. AC ¶ 95. Equitable

[11] The ambiguous 180-day time-period does not cure this. It is unclear what 180-day period is referenced, and the "including, but not limited to" language vitiates any boundaries it might otherwise provide (*see* Section II.B.2.b. below).

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

tolling is no answer: *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019), an FTCA case on which Uber relies, Mot. 17, *denied* tolling under demanding standards. Uber's tepid assurance that it "would likely voluntarily toll," Mot. at 17, only serves to confirm that the Terms do not.

*b. Ambiguous trigger and interference with chosen counsel.*

The Terms define Mass Action as "includ[ing], but [] not limited to" cases in which a party's lawyers have filed 50 or more "substantially similar" demands within 180 days. Terms § 2(a)(3)(a). Nothing limits what else qualifies; Uber could argue that similar claims brought through different counsel, or by unrepresented consumers, are Mass Actions. Even the 50-demand example is indeterminate: the Terms do not define "collection of law firms" or "substantially similar," or say whether the 180-day window runs backward, forward, or both.

The 50-demand example also turns on the conduct of counsel, not the claimant. Fifty consumers who independently retain the same consumer-protection firm are swept in. *O'Malley* explained why that is unconscionable. Because small consumer claims are economical to litigate only in volume, a counsel-based trigger means a firm cannot represent many clients "without subjecting them to potentially lengthy delays." *O'Malley*, 2026 WL 2640697 at *8. "In turn, consumers would have fewer lawyers to choose from, and would plausibly be chilled from advancing their claims." *Id.*; *accord. Pandolfi*, 2024 WL 4051754, at *11; *Rios*, 807 F. Supp. 3d at 991. Given Uber's size, any company-wide practice could easily draw 50 similar claims.

*c. Built-in asymmetry.*

That the Mass Action Waiver nominally applies to "you or Uber" does not save it. Courts look to how a provision actually operates, and a waiver has "a built-in asymmetry" where "it is far from clear that [the drafter] would ever have claims that would trigger the provision." *Pandolfi*, 2024 WL 4051754, at *7; *O'Malley*, 2026 WL 2640697 at *7. Uber's claims against consumers—a cleaning fee, a disputed fare—are individual in nature; it has no reason to file 50 similar demands within 180 days. The protocol responds to a threat only Uber faces. As Uber's own authority noted, "[i]t is inconceivable that Uber would file a mass action against its customers." *Mafaher v. Uber Techs., Inc.*, No. 25STCV17232, Order (Cal. Super. Ct., L.A. Cnty. May 1, 2026), Vitale Decl. Ex. C at 8.

1617 John F. Kennedy Blvd., 20th Fl. Philadelphia, PA 19103
115 Broadway, 5th Fl. New York, NY 10006
979 Osos St., Ste. A5 San Luis Obispo, CA 93401
JANOVE PLLC

The Terms' text confirms the asymmetry. Consumers may never consolidate claims, Terms § 2, yet fee disputes "may be consolidated . . . at. . . the election of the party common to all such disputes," *id.* § 2(h)—a power only Uber can exercise. And because Uber owes nearly all arbitration fees, provisions staying "the due date for any disputed fees" while a threshold dispute is pending, *id.* §§ 2(a)(3)(c)(i), 2(h), let Uber suspend its own payment obligations and further delay arbitrations from proceeding by simply raising a dispute. Neither the neutral panel nor the back end opt-out cures the defects.

Uber stresses that a neutral panel, not Uber, decides whether a Mass Action Waiver violation occurred. Mot. 9. But the panel must apply the open-ended definition Uber wrote, and Uber can trigger the procedure (and its automatic, indefinite stay) before any neutral decides whether it applies. Uber's opt-out cases are inapposite. Mot. 11. The definition of mass arbitration in *Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287 (E.D. Cal. July 31, 2025) was far more definite. *Id.* at *4–6. *Jenkins v. PetSmart, LLC*, 2023 WL 8548677 (E.D. Pa. Dec. 11, 2023), did not even consider substantive unconscionability because it found no procedural unconscionability. *Id*. at *13–14. Most importantly, *Burkhardt*, and *Jenkins*, involved agreements that allowed *upfront* opt-outs, making any later opt-out a second safety valve. Uber's Terms offer no upfront opt-out. The one they do offer arrives only after a consumer successfully navigates a maze of procedural hurdles and a panel proceeding with no deadline. Terms §§ 2(a)(3)(b), 2(d). There is no way to opt-out of that unconscionable process. Uber's back-end opt-out is also illusory if the statute of limitations has run because there is no tolling during most of these processes.

3. <u>Plaintiffs Have Standing to Challenge the Mass Action Protocol.</u>

Uber argues that the Mass Action Waiver is "irrelevant" to Plaintiffs. Mot. 9–10. But unconscionability is assessed at the time of formation, not enforcement, and a provision that chills claims is unconscionable, whether or not it has been invoked. *Pandolfi*, 2024 WL 4051754, at *5 (applying *Ramirez*); Cal. Civ. Code § 1670.5(a); *see also Gardner v. AMN Healthcare Servs., Inc.*, 2025 WL 3751929, at *2 (N.D. Cal. Dec. 29, 2025). *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 541 (9th Cir. 2021), is not to the contrary. Its caution about "hypothetical issues" was dicta that "does not appear to be good law anymore." *O'Malley*, 2026 WL 2640697, at *5.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

In any event, the Waiver is relevant here. First, as described above, Uber's open-ended definition of "Mass Action" means Plaintiffs' claims could easily be swept in. Additionally, claims challenging a company-wide policy "will often be brought by law firms that represent a multitude of claimants, especially when the dollar amounts are small." *Pandolfi*, 2024 WL 4051754, at *6. In 2025 alone, Uber had over two-hundred million monthly active platform consumers who, collectively, took over thirteen and a half *billion* trips. AC ¶ 50. Uber often fails to deliver on its promise of faster arrival times for premium fares. *Id.* ¶ 51. If even a tiny fraction of the customers affected pursued claims, it would still mean millions of potential claims like Plaintiffs' here. Uber's litigation concession that it would not treat this case as a Mass Action, Mot. 9, "does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1004 (9th Cir. 2021); *Peters*, 2024 WL 2925309, at *1 (rejecting attempt to "simply agree[] in litigation not to enforce" unconscionable terms).

Uber's one-sided indemnity provision compounds the chilling effect of the Mass Action Waiver. It requires consumers to indemnify Uber for "any and all" costs, "including attorneys' fees," arising from any "breach or violation of any of these Terms." Terms § 8. If a panel found that a claimant "violated" the Mass Action Waiver, *id.* § 2(a)(3)(b) (*e.g.*, because his lawyer filed too many similar demands, or other claimants filed similar claims), Uber could invoke the indemnity provision to seek its fees from that point forward, both in arbitration and, after any opt-out, in court. It matters to Plaintiffs now whether these provisions—through which they may face potentially uncapped exposure to Uber's legal bills in a relatively low-value dispute—are enforceable.

4. <u>The Class Action Waiver unlawfully bars public injunctive relief.</u>

A provision waiving the right to seek public injunctive relief in any forum is unenforceable under California law, *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 961–63 (2017), and the FAA does not preempt that rule. *McBurnie v. RAC Acceptance E., LLC*, 95 F.4th 1188, 1193 (9th Cir. 2024); *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019). Plaintiffs seek paradigmatic public injunctive relief: an injunction against Uber's marketing deceptive ride times to the public at large, including prospective customers. AC ¶¶ 183–185, 194–195, 205–207, 216–217, 234–235; *see Hodges*, 21 F.4th at 542 (false-advertising injunction is paradigmatic public relief). The Terms state

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

that "[t]he parties [] expressly waive the right to seek, recover, or obtain any non-individual relief," Terms §§ 2(a)(2), 2(a)(3)(a). Public injunctive relief—relief whose "primary purpose and effect" is to prohibit unlawful acts that threaten future injury to "the general public," *McGill*, 2 Cal. 5th at 955, is non-individual relief by definition. So this waiver is unenforceable under *McGill*.[12] It also weighs heavily against severance. *See* Part II.C; *MacClelland*, 609 F. Supp. 3d at 1045. And at a minimum, Plaintiffs' public injunctive relief claims must remain in this Court, *Blair*, 928 F.3d at 831, as Uber's own severance clause contemplates. Terms § 2(a)(2). The Court should not stay them and delay relief that protects the public from ongoing deception.

### C. The remaining one-sided provisions confirm a systematic effort to prevent consumers from vindicating their rights and that severance is inappropriate.

Severance is discretionary, and never automatic. Cal. Civ. Code § 1670.5(a); *Ramirez*, 16 Cal. 5th at 513–17. The "overarching inquiry is whether the interests of justice would be furthered by severance;" courts should not sever where it "condone[s] an illegal scheme" or where the defects show "a systematic effort to impose arbitration . . . to secure a forum that works to the stronger party's advantage." *Id.* at 514–17 (cleaned up); *Armendariz*, 24 Cal. 4th at 124. Courts also consider deterrence, because routine severance rewards drafters who overreach. *Ramirez*, 16 Cal. 5th at 517.

The number and character of defects matter. Here, they reveal a systematic effort to tilt the forum in Uber's favor. *Armendariz*, 24 Cal. 4th at 124. In addition to all of the defects described above, the Terms contain many other one-sided provisions that benefit only Uber. Uber disclaims liability for consequential damages, while requiring consumers to indemnify it. Terms § 8. Only Uber's failure to enforce a right is protected from waiver. *Id.* § 9. Uber asserts that this is "unrelated to any arbitral proceeding Plaintiffs would pursue," Mot. at 23:24–25, but it excuses Uber's failure to enforce any dispute resolution terms without providing Plaintiffs the same benefit. Rule 11-style requirements apply to the consumer's demand, but not to Uber's defenses or challenges to claimants' compliance with pre-dispute requirements or the Mass Action Waiver. Terms § 2(d). The offer-of-judgment provision shifts costs to consumers in small-dollar disputes, including potentially

---

[12] The Los Angeles County Superior Court held that Uber's Class Action Waiver "is unlawful because it bars public injunctive relief in any forum." Ex. C (*Mafaher)*, at 11.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

arbitrator's fees and other costs not incurred in court. *Id.* § 2(f). Consumers who do not dispute a charge in Uber's app within 30 days "waive[] [their] right to later dispute the amounts charged." Terms § 7—a one-sided 30-day limitations period on the very claims Plaintiffs bring. *Pandolfi* held such a clause independently unconscionable. 2025 WL 2463742, at *2. The Terms also include an intellectual-property carve-out exempts from arbitration the claims only Uber would bring. Terms § 2(b). *See Ramirez*, 16 Cal. 5th at 498.

In addition, the requirement that consumers disclose litigation-funding agreements and waive privilege over materials shared with funders serves only to deter funding of claims against Uber. Terms § 6. That Uber hid a privilege waiver in Section 5 of the Terms, titled "Accessing the Services," exemplifies its approach. Even now Uber offers no justification for these requirements, instead falsely equating them to disclosure of the *identity* of litigation funders. Mot. at 24.

In *O'Malley*, the court refused to sever because doing so "would condone the unconscionable scheme and incentivize keeping the Terms the same in case future claimants are chilled from bringing claims or do not challenge this provision." 2026 WL 2640697, at *9; *see also Rios*, 807 F. Supp. 3d at 994; *Pandolfi*, 2024 WL 4051754, at *13; *MacClelland*, 609 F. Supp. 3d at 1046; *Heckman*, 686 F. Supp. 3d at 968. That reasoning applies with even greater force here. Uber's Waivers, dispute procedure, Special Master and grouping procedures, and delegation clause are structurally intertwined: the delegation's carve-outs are defined by the Waivers, and the dispute procedure controls access to the arbitrator who would decide the delegated questions. Add an unlawful waiver of public injunctive relief, the coercive conference, the limitations traps, and the remaining one-sided terms, and the agreement's central purpose is plain—to delay and impede consumer claims. Curing these defects would require rewriting the agreement, which the Court may not do. *Ramirez*, 16 Cal. 5th at 502–503.

Uber's severance clauses, Terms §§ 2(a)(2), 2(j), do not change the analysis. A severance clause is evidence of intent, *Ramirez*, 16 Cal. 5th at 517, but it cannot displace the Court's statutory discretion. And if the Court is inclined to consider Uber's intent here, it weighs against severance. As in *O'Malley*, the "agreement indicates a view that, when there are a significant number of similar claims, [Uber] would rather be in court than arbitrate if it cannot take advantage of the

JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
115 Broadway, 5th Fl.
New York, NY 10006
1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

unconscionable mass arbitration procedures." 2026 WL 2640697, at *9.

Severance would also be inappropriate because "the effects of these unconscionable provisions were 'entirely foreseeable and intended.'" *Heckman*, 120 F.4th at 688 (holding that district court did not abuse its discretion in declining to sever). And "under an overly generous severability policy, 'companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights.'" *Id.*

**III. The Class Action Waiver is Unenforceable.**

Under *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005), a class action waiver in a consumer contract is unconscionable when (1) it is in a contract of adhesion, (2) disputes between the parties predictably involve small damages, and (3) the stronger party allegedly carried out a scheme to cheat large numbers of consumers out of individually small sums. Each condition is met here. Further, the CLRA guarantees consumers the right to bring a class action, Cal. Civ. Code § 1781, and declares any waiver of its provisions "contrary to public policy" and "unenforceable and void," *id.* § 1751.

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344–52 (2011), does not save the waiver; it preempted rules like *Discover Bank* only insofar as they obstruct bilateral arbitration. Uber's waiver reaches beyond arbitration: if "for any reason a claim does not proceed in arbitration," it "shall remain in effect." Terms § 2(a)(2). As applied in court, including after Uber opts out, the waiver is no agreement to arbitrate at all, so the FAA cannot preempt *Discover Bank* or the CLRA.

**IV. Uber's Scheme Departs from the Bilateral Arbitration the FAA Protects and is not an Agreement to Arbitrate.**

Uber's Terms are not enforceable under the FAA for two additional reasons. First, even within arbitration, *Concepcion* does not help Uber, because Uber's Terms are comparable to those the Ninth Circuit condemned in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024). There, the court held that the FAA "simply does not apply to and protect" a mass-arbitration model that materially departs from bilateral arbitration. *Id.* at 689. So the FAA cannot preempt *Discover Bank* or the CLRA as applied to it. And because Uber's Motion rests on the FAA, Mot. 1, 4–5, it fails for that reason alone. Uber emphasizes the absence of bellwethers, Mot. 4–5,

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

but *Heckman* condemned interlocking procedures that tilted the process toward the drafter, not any single feature. As described above, Uber's Terms do the same through different mechanics.

Second, Uber's dispute resolution terms are not a "written provision . . . to settle by arbitration a controversy," under the FAA, *see* 9 U.S.C. § 2. Uber's Terms route consumers through a series of hurdles, some administered by an arbitration provider, but ultimately Uber may not be bound to settle any controversies there. A labyrinthine pre-dispute procedure coupled with a mass filing process that allows Uber to return everything to court at its choice is not arbitration under the FAA. It "'sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment.'" *Heckman*, 120 F.4th at 690 (quoting *Concepcion*, 563 U.S. at 348– 49).[13]

Uber's other authorities also did not examine procedures like the ones at issue here. For instance, in *Jones v. Starz Entertainment, LLC*, 129 F.4th 1176 (9th Cir. 2025), claimants filed JAMS arbitrations, and JAMS consolidated them under its own procedural rules. *See id.* at 1179. There was no lengthy and one-sided pre-dispute process, no series of bespoke challenge procedures that created delays without tolling, and no mechanism for defendant to cancel arbitration and send everything back to court.[14] Uber's authorities say nothing about whether the FAA envisioned "arbitration" as a set of procedural hurdles after which a counterparty can abandon the forum based on strangers' actions and a vaguely defined Mass Action trigger, and without "settling" the dispute.

---

[13] As explained in Part II.B.2.c., *Burkhardt*, 2025 WL 2172287 at *8, and *Jenkins*, 2023 WL 8548677, at *14, did not hold otherwise. Nor do *Barnett v. V.T. Motors LLC*, 2021 WL 5759113, at *4 (D. Ariz. Dec. 3, 2021) and *Batory v. Sears, Roebuck & Co.*, 124 F. App'x 530, 533–34 (9th Cir. 2005) support Uber. Both applied Arizona law, not the FAA. *Barnett* held not unconscionable an opt-out in response to a specific trigger event controlled by the claimant and *Batory* held that a cancellation right did not make an agreement illusory where it did not apply to existing claims.

[14] The same is true of *Davis v. Experian Info. Sols., Inc.*, 2025 WL 2998157 (N.D. Cal. Oct. 24, 2025), *Kohler v. Whaleco, Inc.*, 757 F. Supp. 3d 1112 (S.D. Cal. 2024) and *Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 291 (S.D.N.Y. 2025). For example, in *Kohler* claimants argued unconscionability "principally due to one section—Section 19.9, the Batch Arbitration Provision," without showing how it "would result in delay." *Id.* at 1128–29. *Wray v. Humble Bundle, Inc.*, 824 F. Supp. 3d 868 (N.D. Cal. 2025) did not even reach the issue of the mass filing protocol because "Plaintiffs ha[d] not made any arguments about how the mass filing procedures render the delegation of gateway issues unconscionable." *Id.* at 880.

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103
115 Broadway, 5th Fl.
New York, NY 10006
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
JANOVE PLLC

**CONCLUSION**

The Court should deny Uber's Motion to Compel Arbitration and Stay Proceedings.

DATED: October 16, 2026

Respectfully submitted,

By: /s/ *Liana Roza Vitale*
Liana Roza Vitale

**JANOVE PLLC**
Raphael Janove (SBN 361193)
raphael@janove.law
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940

Liana Roza Vitale (SBN 348772)
liana@janove.law
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Telephone: (805) 505-9550

*Attorneys for Plaintiffs and the Proposed Classes*