# EXHIBIT C

FILED
Superior Court of California
County of Los Angeles
05/01/2026
David W. Slayton, Executive Officer / Clerk of Court
By: E. Martinez Deputy

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF LOS ANGELES**

DEPARTMENT 15

| | |
|---|---|
| YEGANEH MAFAHER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware corporation; and JOHN DOES 1–10.<br><br>Defendants. | Case No. 25STCV17232<br><br>**ORDER RE:**<br><br>UBER TECHNOLOGIES, INC.'S MOTION TO COMPEL ARBITRATION, DISMISS CLASS CLAIMS, AND STAY THE PROCEEDINGS |

## I. BACKGROUND

Uber Technologies, Inc. ("Uber ") is a transportation company that provides ridesharing and food delivery services. (First Amended Complaint ("FAC"), ¶ 1.) Uber's food delivery service applications are called Uber Eats and Postmates. (FAC ¶ 1.) Yeganeh Mafaher ("Plaintiff") is a resident of Los Angeles County and registered for an account to use Uber's services. (FAC ¶¶ 10, 35; motion, p. 10, lines 17-18.)

On June 13, 2025, Plaintiff filed a class action against Uber. On September 5, 2025, Plaintiff filed the FAC asserting the following causes of action: 1) unfair competition, 2) false advertising, 3) violations of the Consumer Legal Remedies Act. Plaintiff alleges that Uber "(a) fails to include its delivery fees in the price of the food items it sells; (b) fails to disclose the all-in price of its delivery fees either on the webpages where customers order food or on the checkout page; (c) falsely advertises the amount of its delivery fees; (d) misleadingly hides a portion of its delivery fees in "Taxes and Other Fees"; and (e) fails to disclose either the fact or the amount of the fees that Uber charges to the restaurants on its platform." (FAC ¶ 20.)

On October 13, 2025, Uber filed a motion to compel arbitration. Uber's motion seeks: "[A]n order compelling arbitration on an individual, non-class basis of the claims asserted by Plaintiff Yeganeh Mafaher." (Notice of motion, p. 2, lines 6-7.) Further, according to Uber, the "Court should stay the action pending a ruling on this motion; and in granting the motion, the Court should stay this action pending completion of Plaintiff's individual arbitration." (Notice of motion, p. 2, lines 14-16.) Plaintiff filed an opposition on December 3, 2025. Uber replied on December 10, 2025. On January 15, 2026, Plaintiff filed a proposed surreply. On January 29, 2026, Uber filed an opposition and a proposed surrebuttal. At the hearing, the parties agreed that the court may consider these additional papers. Plaintiff does not dispute that the Federal Arbitration Act applies as argued by Uber.

## II. DISCUSSION

### A. Legal Standards

Courts shall order the parties to arbitrate if it determines an agreement to arbitrate a controversy exists. (Code Civ. Proc., §1281.2.) In determining the enforceability of an arbitration agreement, the court considers "two 'gateway issues' of arbitrability: (1) whether there was an agreement to arbitrate between the parties, and (2) whether the agreement covered the dispute at issue." (*Omar v. Ralphs Grocery Co.* (2004) 118 Cal.App.4th 955, 961.)

The moving party has the initial burden of proving a valid arbitration agreement exists by a preponderance of the evidence. (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284.) "The moving party 'can meet its initial burden by attaching . . . a copy of the arbitration agreement purporting to bear the [opposing party's] signature' or 'by setting forth the agreement's provisions in the motion.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165-166.) Once the moving party alleges that an arbitration agreement exists, the burden shifts to the opposing party to prove the falsity of the purported agreement, and no evidence or authentication is required to find the arbitration agreement exists. (*Condee v. Longwood Mgt. Corp*. (2001) 88 Cal.App.4th 215, 219.) "If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties. The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Gamboa v. Northeast Community Clinic, supra*, 72 Cal.App.5th at pp. 165-166.)

### B. Motion to Compel Arbitration

#### 1. Valid Agreement

A contract is not formed unless the parties have reached mutual assent, meaning each party has consented to the terms of the contract and communicated its consent to the other party. (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 777.) The question of mutual assent is answered by evidence of the parties' "outward manifestations," their words and acts, as the manifestations appear to an objective observer. (*Ibid.*)

A "clickwrap" agreement is "one in which the internet user accepts a website's terms of use by clicking an 'I agree' or 'I accept' button, with a link to the agreement readily available." (*B.D. v. Blizzard Ent., Inc*. (2022) 76 Cal. App. 5th 931, 945.) A website user is bound to a clickwrap agreement if the defendant's website gave her constructive notice of the agreement and its terms. (*Sellers v. JustAnswer LLC* (2021) 73 Cal.App.5th 444, 461.) In the clickwrap context, constructive notice is given if the website gave "reasonably conspicuous notice" of the agreement and the terms thereof. (*Herzog v. Superior Court* (*Dexcom, Inc.*) (2024) 101 Cal.App.5th 1280, 1296.) The question of whether the notice was reasonably conspicuous depends on "the context of the transaction and the content of the screen on which [the] clickwrap is presented." (*Id.* at pp. 1296-1297.)

Here, Uber provides the declaration of Steven Wong to establish that Plaintiff agreed to

arbitrate her causes of action. Wong is employed as Uber's litigation paralegal. Wong states that he is familiar with Uber's database records and the user terms of agreement ("Terms"). (Wong Declaration "Decl.," ¶¶ 2, 3.) Wong states that on December 12, 2016, Plaintiff registered for an account with Uber and agreed to its Terms which included an arbitration agreement. (Wong Decl. ¶ 7, Exhibit "Exh." A.) "[O]n January 20, 2021, June 17, 2021, December 22, 2021, and January 24, 2023, [Plaintiff] was presented with an in-app blocking pop-up screen with the header 'We've updated our terms.' It also stated in large type, 'We encourage you to read our updated Terms in full,' and under that message were the phrases, 'Terms of Use' and 'Privacy Notice,' displayed in underlined, bright blue text, which set the text apart from other text on the screen and indicated a hyperlink. When a user clicked either hyperlink, the Terms of Use or Privacy Notice—which were published on Uber's website—were displayed. . . The in-app blocking pop-up screen expressly stated that: 'By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice.' " (Wong Decl., ¶ 8.) Wong states that a user cannot use the application unless they click on the checkbox and "confirm" button. (Wong Decl., ¶ 9.) Wong states that Uber's database shows that on January 20, 2021, June 17, 2021, December 22, 2021, and January 24, 2023, Plaintiff was presented with the in-app blocking pop-up and agreed to the terms by clicking the checkbox and "confirm" button. (Wong Decl., ¶ 11.) Thus, Plaintiff had sufficient constructive notice of the arbitration agreement.

The arbitration agreement states: "By agreeing to these Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration as set forth in this Arbitration Agreement, and not as a class, collective, coordinated, consolidated, mass and/or representative action. You and Uber are each waiving your right to a trial by jury." (Wong Decl., Exh. G.) Thus, the parties mutually agreed to arbitrate their causes of action. Plaintiff does not dispute that she visited Uber's application and was shown a pop-up window, that she clicked the checkbox and "confirm" button, or that she did not have constructive notice of the arbitration agreement. Thus, Uber carries its burden to establish the existence of a valid arbitration agreement.

**2. Covered Causes of Action**

Here, the arbitration agreement states that it covers disputes arising out of the Terms, the use of Uber's services, personal injury in connection with the use of Uber's services, and the relationship between the parties. Plaintiff's causes of action arise out of her use of Uber's services. Therefore, Uber meets its burden to establish the existence of a valid arbitration agreement that covers all of Plaintiff's causes of action.

**C. Delegation Clause**

Ordinarily, in ruling on a motion to compel arbitration, the court's role is to determine: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. (*Brennan v. Opus Bank,* (9th Cir. 2015) 796 F.3d 1125, 1130.) However, parties may delegate gateway issues to the arbitrator provided "(1) the delegation is clear and unmistakable, and (2) the delegation is not revocable under any contract defenses, such as fraud, duress, or unconscionability." (Who Determines Unconscionability, Cal. Judges Benchbook Civ. Proc. Before Trial § 3.43 (citing *Rent-A-Center, West, Inc. v. Jackson* (2010) 561 U.S. 63, 68-69,

fn.1 (*Rent-A-Center*); *Sonic-Calabasas, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1142-1143; *Pineda v. Nieman Marcus Group, Inc.* (2015) 238 Cal.App.4th 227, 249-250; *Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1560 (*Malone*); *Chin v. Advanced Fresh Concepts Franchise Corp.* (2011) 194 Cal.App.4th 704, 709; and *Hartley v. Superior Court* (2011) 196 Cal.App.4th 1249, 1255-1258.)

"If a party challenges the validity under [FAA] § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with" the delegation clause. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc.* (2018) 22 Cal.App.5th 1096, 1108.) "If the party's challenge is directed to the agreement as a whole--even if it applies equally to the delegation clause--the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will determine whether the agreement is enforceable. In contrast, if the party is making a specific challenge to the delegation clause, the court must determine whether the delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable)." (*Malone, supra*, 226 Cal.App.4th at pp. 1559-1560.)

### 1. Clear and Unmistakable Delegation Clause

The clear and unmistakable requirement is a "heightened standard." (*Rent-A-Center, supra*, 561 U.S. at p. 69, fn.1.) It " 'pertains to the parties' *manifestation of intent* [as to who will decide the gateway issue of arbitrability], not the agreement's *validity* …' ." (*Hartley v. Superior Court, supra,* 196 Cal.App.4th at p. 1254.) In *Rent-A-Center*, the United States Supreme Court held the following language clearly and unmistakably created a delegation clause: " '[T]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Rent-A-Center, supra*, 561 U.S. at pp. 71-72.) In *Malone*, the court held that the following language was clear in delegating arbitrability to an arbitrator: " 'The arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement.' " (*Malone, supra*, 226 Cal.App.4th at p. 1561.) And in *Momot v. Mastro* (9th Cir. 2011) 652 F.3d 982 (*Momot*), the court held the following language constituted a clear delegation clause: "If a dispute arises out of or relates to this Agreement, the relationships that result from this Agreement, the breach of this Agreement *or the validity or application of any of the provisions of this Section 4,* and, if the dispute cannot be settled through negotiation, the dispute shall be resolved exclusively by binding arbitration." (*Id.* at p. 988.)

The arbitration agreement states: "Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel. However, only a court of competent jurisdiction, and not an arbitrator, shall have the

exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable—except that, as stated and pursuant to the procedures provided in Section 2(a)(3)(b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver." (Wong Decl., Exh. G.)

Here, arbitration agreement contains a clear and unmistakable delegation clause that delegates disputes of interpretation, applicability, enforceability, and formation of the arbitration agreement to the arbitrator. It is clear that it does not refer to substantive issues. The arbitration agreement creates a carve-out for disputes regarding the class and mass action waiver. It states: "However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver." (Wong Decl., Exh. G.)

Plaintiff argues that delegating some disputes to the arbitrator while giving the court jurisdiction over other disputes creates ambiguity. Plaintiff's reliance on *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186 is misplaced. In *Jack v. Ring LLC*, the delegation clause did not clearly and unmistakably delegate authority to the arbitrator. The arbitration agreement stated: " 'We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, representative or private attorney general action. . . If *a court* decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.' " (*Id*. at p. 1194.) The court held: "[T]he arbitration provision points in two directions on the question whether a court or an arbitrator is to decide the enforceability of the agreement to arbitrate, at least with respect to challenges to the 'subsection's limitations as to a particular claim for relief' such as plaintiffs' claim here that the limitations are unenforceable under *McGill*. Because of this uncertainty, we cannot conclude the parties clearly and unmistakably delegated to the arbitrator exclusive authority to decide whether the arbitration provision is valid under *McGill*." (*Id*. at p. 1199.)

Here, the delegation clause includes an exception that requires the court, not an arbitrator, to hear disputes regarding the class action waiver and mass action waiver. The language does not state that the court "may" decide class action waiver and mass action waiver disputes, but rather that the court "shall" decide. Unlike in *Jack*, where the delegation clause contemplated court involvement without clearly stating who had what authority, here, there is no ambiguity as to who decides issues about the class action waiver and mass action waiver. The delegation clause, the covered disputes clause, mass action waiver, and the class action waiver are clear and unambiguous. There is no inconsistency among these clauses. In sum, there is a clear and unmistakable delegation clause with a carve-out for disputes regarding the class action waiver and mass action waiver. Other than challenges to the class action waiver and mass action waiver, the arbitrator decides all challenges to the arbitration agreement. (*See B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 959 ["Here, the arbitration provision expressly carves out three classes of claims that remain subject to litigation in court. Thus, the fact the Dispute Resolution Policy contemplates that courts may, on occasion, be called upon to construe various provisions of the policy does not undermine the policy's otherwise clear and

unmistakable delegation of gateway issues to the arbitrator on claims subject to arbitration."].)

**2. Contractual Defenses to the Delegation Clause**

A lack of a specific defense to the delegation clause means the arbitrator, not the court, will decide whether the agreement as a whole is unconscionable. (*Nielsen Contracting, Inc. v. Applied Underwriters, Inc, supra,* 22 Cal.App.5th at p. 1108.) The United States Supreme Court in *Rent-A-Center* held that there was no specific challenge to the delegation clause where the plaintiff challenged the entire arbitration agreement stating the "arbitration agreement as a whole [was] substantively unconscionable." (*Rent-A-Center, supra*, 561 U.S. at p. 73.)

In *Malone v. Superior Court, supra,* 226 Cal.App.4th 1551, the court held: "A delegation clause requires issues of interpretation and enforceability of an arbitration agreement to be resolved by the arbitrator. Delegation clauses have the potential to create problems of circularity. . . . For this reason, courts have treated the delegation clause as a separate agreement to arbitrate solely the issues of enforceability. In other words, courts have separately enforced an enforceable delegation clause; thus, it has been held that whether the arbitration agreement as a whole is ultimately held to be unenforceable will have no bearing on the enforcement of the delegation clause itself. [Citation.] [¶] For this reason, when a party is claiming that an arbitration agreement is unenforceable, it is important to determine whether the party is making a specific challenge to the enforceability of the delegation clause or is simply arguing that the agreement as a whole is unenforceable. If the party's challenge is directed to the agreement as a whole--even if it applies equally to the delegation clause--the delegation clause is severed out and enforced; thus, the arbitrator, not the court, will determine whether the agreement is enforceable. In contrast, if the party is making a specific challenge to the delegation clause, the court must determine whether the delegation clause itself may be enforced (and can only delegate the general issue of enforceability to the arbitrator if it first determines the delegation clause is enforceable). [Citation.]" (*Id.* at pp. 1559-1560.)

Here, Plaintiff argues that she asserts specific challenges to the delegation clause. The delegation clause provides that the court adjudicates any disputes about the class action waiver and mass action waiver. According to a list provided in Plaintiff's opposition memorandum, Plaintiff argues that the delegation clause is unconscionable for the following reasons:

- Procedural unconscionability
  - It is unconscionable to wrest from the court the authority to decide threshold questions of arbitrability without a clear and unmistakable delegation of authority.
  - It is unconscionable to delegate threshold questions of arbitrability to an arbitrator based on a delegation clause buried in a 10-page arbitration agreement in a contract of adhesion.
  - It is unconscionable to delegate threshold questions of whether an agreement was formed to an arbitrator when the issue of whether an arbitration agreement exists at all is a question for a court to decide.

- Substantive unconscionability
  - It is unconscionable to delegate threshold questions of arbitrability to an arbitrator when the claims Uber is most likely to bring are not subject to arbitration, which makes the delegation clause nonmutual.
  - It is unconscionable to delegate threshold questions of arbitrability to an arbitrator when the arbitrator, unlike a court, is precluded from applying offensive nonmutual collateral estoppel to Uber based on the adverse decisions of other arbitrators. (Opp. p. 14, lines 14-28.)

The degree of procedural unconscionability involving the delegation clause is low. The delegation clause is in an adhesive contract. Plaintiff voluntary chose to register for the application and use Uber's services which includes agreeing to the Terms.[1] Notice of the arbitration agreement is in large font on the first page of the terms of use. There is not much surprise present. The paragraph starts with: "IMPORTANT." The delegation clause, listed within the arbitration provisions, includes a header ("Delegation Clause"). The other procedural challenges to the delegation clause in her list do not establish procedural unconscionability. As stated, the delegation clause is clear and unambiguous. Against controlling authorities, Plaintiff is really arguing that it is not appropriate to include a delegation clause in an arbitration agreement. It is well-established that a delegation clause can be effective in an arbitration agreement as long as it is clear and unmistakable. (See *Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1197.)

As to Plaintiff's substantive unconscionability arguments, Plaintiffs do not explain why an argument based on the nature of the claims Uber is most likely to assert is an effective specific challenge to the delegation clause. This is a challenge to the arbitration agreement as a whole for the arbitrator to adjudicate. As Uber points out, the provision about "offensive non-mutual collateral estoppel" is consistent with California law.[2] In any event, Plaintiff again does not explain how this provision renders the delegation clause unconscionable. The ADR Services, Inc. rule about jurisdictional challenges grants the arbitrator the discretion to rule on jurisdiction at the onset or later in the arbitration proceeding. The arbitrator would have such authority to control the timing of issuing rulings even in the absence of this ADR rule. The ADR rules explicitly grant such discretion to the arbitrator. The ADR rules state: "A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the

---

[1] Plaintiff submits a declaration stating: "Uber's terms, including the arbitration clause within it, were drafted by Uber and unilaterally imposed on me by Uber. I could not negotiate the terms, and Uber provided the terms on a take-it-or-leave-it-basis."

[2] In *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, the California Supreme Court concluded, "the policies underlying the doctrine of [issue preclusion] must yield to the contractual basis of private arbitration, i.e., the principle that the scope and effect of the arbitration are for the parties themselves to decide." (*Id.* at pp. 833–834.) The court accordingly held "a private arbitration award, even if judicially confirmed, can have no [issue preclusion] effect in favor of third persons unless the arbitral parties agreed, in the particular case, that such a consequence should apply." (*Id.* at p. 834.)

filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final Award." (ADR Services arbitration rules, p. 6, ¶ 8.) There is no substantive unconscionability. Plaintiff does not carry her burden.

In sum, Plaintiff does not carry her burden to establish that the delegation clause is unconscionable.

**D. Class Action Waiver and Mass Action Waiver**

**1. Batching and Settlement Provisions**

As stated, Plaintiff's challenges to the class action waiver and the mass action waiver are for the court to adjudicate. Plaintiff misread the "batching" language in the mass action waiver. There is no class procedure for adjudication contemplated. The cases are just grouped for pre-decision handling and processing. The first sentence of the mass action waiver provides: "Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration." Section (g) of the arbitration provisions provides: "The Arbitrator may award declaratory or injunctive relief only in favor of the claimant and only to the extent necessary to provide relief warranted by the claimant's individual claim."

The settlement provisions in the class action waiver and the mass action waiver that permit settlement on a collective basis are not unconscionable or unlawful. The provisions are mutual. A settlement by definition needs to be mutual. Plaintiffs can settle on a class basis if they choose to do so. Under well-established law, class action waivers are permitted. There is nothing unfair under these circumstances. The right to opt out of a mass arbitration if a customer is found to have violated the mass action waiver is also mutual. It is inconceivable that Uber would file a mass action against its customers.

**2. Public Injunctive Relief**

Plaintiff argues that the class action waiver is unconscionable because it bars public injunctive relief in any forum in violation of the precedent established in *McGill v. Citibank, N.A.*, (2017) 2 Cal.5th 945, 961 (*McGill*). In *McGill*, the arbitration agreement prohibited the plaintiff from seeking public injunctive relief in any forum, whether arbitration or court, by requiring him to arbitrate his claims, but prohibiting the arbitrator from awarding relief "for or against anyone who is not a party," among other terms. (*Id*. at p. 956.) In *McGill*, the arbitration agreement provided: "(1) '[a]n award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute'; (2) '[t]he arbitrator will not award relief for or against anyone who is not a party'; (3) 'the arbitrator may award relief only on an individual (non-class, nonrepresentative) basis'; and (4) 'neither you, we, nor any other person may pursue the Claims in arbitration as a class action, private attorney general action or other representative action.' " (2 Cal.5th at p. 956.) In *McGill*, the Court held: "To summarize, public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting

unlawful acts that threaten future injury to the general public. (*Broughton, supra*, at p. 1077.) Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." (2 Cal.5th at p. 955.)

In *Khan v. Coinbase, Inc.* (2025) 115 Cal.App.5th 518, the court held: "Applying *McGill*, we affirm the order denying Coinbase's petition. To start, we conclude Khan seeks public injunctive relief to enjoin violations of the UCL and FAL. Khan alleges that particular Coinbase conduct in operating its online cryptocurrency exchange constitutes a deceptive business practice that is likely to deceive or confuse the public; he alleges this unlawful conduct is ongoing; and he seeks injunctive relief solely to prohibit Coinbase from continuing to violate the statutes in this manner. These allegations establish the public nature of the relief Khan seeks, and how that relief will benefit the general public if he is able to establish his claim. (*McGill, supra*, 2 Cal.5th at pp. 956-958, 216 Cal.Rptr.3d 627, 393 P.3d 85.)" (115 Cal.App.5th at p. 527.)

The court in *Khan* further held: "When the primary purpose of an injunction is to prohibit an ongoing violation of consumer protection laws, the relief sought is usually public relief because the benefit to the plaintiff or a group of similarly situated individuals is not materially different from the benefit that inures to the broader public. By contrast, when the primary purpose of the injunction is to resolve a dispute by redressing or preventing injury to the individual plaintiff or an ascertainable group of similarly situated persons, the plaintiff is seeking a private injunction. The injunction Khan seeks in this case falls squarely into the former category. Khan seeks to enjoin Coinbase from continuing to engage in unlawful practices pertaining to the operation of an online cryptocurrency business that is accessible to members of the public. Neither the complaint's allegations nor Khan's prayer for relief are narrowly focused on his specific injury, nor does he seek a specific change to Coinbase's platform that would benefit existing account holders but not members of the public who become future users of the Coinbase platform." (115 Cal.App.5th at p. 530.)

The court in *Jack v. Ring LLC, supra,* 91 Cal.App.5th 1186 held: "In this case, the arbitration provision states, 'An arbitrator . . . can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages), and must follow the terms of these Terms [of Service].' Ring argues the phrase that an arbitrator can award 'the same damages and relief as a court,' including injunctive relief, means public injunctive relief is available in arbitration. But the very next phrase requires the arbitrator to 'follow the terms,' which includes the limitation that injunctive relief be awarded 'only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim.' This language, in turn, is both commonly understood by parties to arbitration agreements to preclude public injunctive relief in arbitration (*McArdle, supra*, 2017 WL 4354998 at p. *4), and interpreted by courts to preclude public injunctive relief in arbitration (*MacClelland, supra*, 609 F.Supp.3d at p. 1037; *Rogers, supra*, 452 F.Supp.3d at pp. 917-918; *Brown, supra*, 2021 WL 3861457 at p. *8.) By giving meaning to the term limiting injunctive relief in arbitration to awards "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim,' we are not creating internal contradictions in the arbitration provision. To the extent there is a contradiction, it is

inherent in the arbitration provision itself. Nor would be honoring the contracting parties' expressed intent if we were to ignore the term limiting injunctive relief in arbitration." (91 Cal.App.5th at p. 1207.)[3]

Plaintiff argues that she seeks public injunctive relief. The FAC alleges: "Plaintiff and members of the proposed Class are entitled under the UCL to restitution to the extent of Defendants' unjust enrichment as a result of the scheme, or such other amount as the Court may find equitable, as well as public injunctive relief to enjoin Uber from falsely advertising the price of goods and services on its food-delivery platforms and other public injunctive relief as the Court deems warranted." (FAC ¶ 60.) "Plaintiff and members of the proposed Class are entitled under the FAL to restitution to Plaintiff to the extent of Defendants' unjust enrichment as a result of the scheme, or such other amount as the Court may find equitable, as well as public injunctive relief to enjoin Uber from falsely advertising the price of items on its food-delivery platforms and from engaging in illegal drip pricing, and other public injunctive relief as the Court deems warranted." (FAC ¶ 65.) "Plaintiff and members of the proposed Class seek injunctive relief, including public injunctive relief, to enjoin Uber from falsely advertising the price of items on its food-delivery platforms and from engaging in illegal drip pricing and other public injunctive relief as the Court deems warranted." (FAC ¶ 79.)

The class action waiver provides: "Any and all disputes, claims, or controversies between the parties shall be resolved only in individual arbitration. The parties expressly waive the right to have any dispute, claim, or controversy brought, heard, administered, resolved, or arbitrated as a class, collective, coordinated, consolidated, and/or representative action, and neither an arbitrator nor an arbitration provider shall have any authority to hear, arbitrate, or administer any class, collective, coordinated, consolidated, and/or representative action, or to award relief to anyone but the individual in arbitration. The parties also expressly waive the right to seek, recover, or obtain any non-individual relief. Notwithstanding anything else in this agreement, this Class Action Waiver does not prevent you or Uber from participating in a classwide, collective, and/or representative settlement of claims." (Wong Decl., Exh. G.) (Wong Decl., Exh. G.)

---

[3] In *Jack v. Ring LLC, supra,* 91 Cal.App.5th 1186, the court held: "The arbitration provision in this case specifies arbitration is to be "conducted only on an individual basis and not in a class, representative or private attorney general action," an arbitration award must be "on an individual basis," and the arbitrator may award injunctive relief "only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim." [¶] The arbitration agreement in *McGill* contained similar language; claims could not be brought " 'as a class action, private attorney general action or other representative action,' " relief could be awarded " 'only on an individual (non-class, nonrepresentative) basis' " and could not be awarded " 'for _ anyone who is not a party,' " and an arbitration award was limited to " 'determin[ing] the rights and obligations between the named parties only.' " (*McGill, supra,* 2 Cal.5th at p. 956, 216 Cal.Rptr.3d 627, 393 P.3d 85.) The parties in that case agreed that the language meant McGill could not seek public injunctive relief in arbitration (or in court). (*Ibid*.)" (91 Cal.App.5th at p. 1204.)

Based on Plaintiff's allegations, causes of action, and requested relief, Plaintiff seeks public injunctive relief. Plaintiff asserts causes of action for unfair competition, false advertising, and violations of the CLRA. Plaintiff seeks broad injunctive relief in each of these causes of action. Plaintiff alleges ongoing conduct by Uber. Plaintiff seeks "to enjoin Uber from falsely advertising the price of items on its food-delivery platforms and from engaging in illegal drip pricing." (*See McGill, supra*, 2 Cal.5th at p. 955 ["[P]ublic injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has 'the primary purpose and effect of' prohibiting unlawful acts that threaten future injury to the general public."].)

Defendant's argument that Plaintiff seeks private, not public, relief because Defendant only advertised to existing customers is unavailing. Uber's platforms are open to the public. They are not private and actively seek new business. Based on Plaintiff's allegations, there is benefit to the public through the requested injunctive relief. (*See Khan v. Coinbase, Inc., supra,* 115 Cal.App.5th at p. 529 ["*First*, we are not persuaded that Coinbase can insulate itself from a public injunction simply by requiring a consumer to create a user account before engaging with Coinbase and its platform. In our view, the unlawful business practice that Khan describes and seeks to enjoin affects the general public because any member of the public may access and elect to use Coinbase's online platform. True, a potential Coinbase customer must first create a user account before attempting to make a trade, but this is simply the online equivalent of driving to, parking at, and walking into a brick-and-mortar store."].)

The class action waiver is unlawful because it bars public injunctive relief in any forum.

**3. Severability**

In *Jack v. Ring LLC, supra,* 91 Cal.App.5th 1186, "the arbitration provision included the following severability clause/'poison pill': 'If a court decides that applicable law precludes enforcement of any of this subsection's limitations as to a particular claim for relief, then that claim (and only that claim) must be severed from the arbitration and may be brought in court.' " (91 Cal.App.5th at p. 1209.) Rejecting the defendant's argument that "this means the parts of plaintiffs' three causes of action that involve a prayer for public injunctive relief should be severed from arbitration and that plaintiffs should be ordered to arbitrate "liability, damages, and non-public injunctive relief," the court *Jack v. Ring LLC* held that "it is far more reasonable to read 'claim for relief' to refer to a person's claim and not to a particular remedy requested in respect to a claim." (91 Cal.App.5th at p. 1209.) The court in *Jack v. Ring* concluded: "In short, we agree with the trial court that the severability clause/'poison pill' means plaintiffs' claims (that is, their three causes of action under the CLRA, false advertising law, and UCL, respectively) cannot be arbitrated and may be brought in court." (91 Cal.App.5th at p. 1210.)

Relying on *Jack v. Ring LLC,* Plaintiff argues that Plaintiff's causes of action must be litigated in court because "[t]his case is even clearer, as the severance provision does not even use the term 'claim for relief'—it simply uses the term 'claims'." On the other hand, Uber argues: "Should the Court, however, find that the injunction sought is public, then that claim for relief should be severed and stayed, pending individual arbitration of Plaintiff's individual claims."

The class action waiver states that should a provision be unenforceable or unlawful for any reason: "(i) any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s) shall proceed in a court of competent jurisdiction; (ii) the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration; (iii) the unenforceable or unlawful portion(s) shall be severed from this Arbitration Agreement; and (iv) severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement or the arbitrability of any remaining claims asserted by you or Uber." (Wong Decl., Exh. G.) The "Severability and Survival" provision of the arbitration agreement provide: "If any portion of this Arbitration Agreement is found to be unenforceable or unlawful for any reason, (i) the unenforceable or unlawful provision shall be severed from these Terms; (ii) severance of the unenforceable or unlawful provision shall have no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis pursuant to the Arbitration Agreement; and (iii) to the extent that any claims must therefore proceed on a class, collective, consolidate, or representative basis, such claims must be litigated in a civil court of competent jurisdiction and not in arbitration, and the parties agree that litigation of those claims shall be stayed pending the outcome of any individual claims in arbitration."

While the language here states that "any class, collective, coordinated, consolidated, and/or representative claims subject to the unenforceable or unlawful portion(s)," the severability language in the class action waiver is different from and more extensive than the language at issue in *Jack v. Ring LLC*. There is much additional language here that must be interpreted. Plaintiff's argument ignores the rest of the pertinent language. The focus of the clause at issue is on severance of "any portion" of the class action waiver and preserving arbitration, not on keeping claims in court as was accomplished with the precise and direct language in *Jack v. Ring LLC*. In several places, the clause refers to any "portion" of the class action waiver that is enforceable and any "portion" of the waiver that is unenforceable. To maintain the arbitral forum, the language makes this dichotomy between enforceable and unenforceable "portions" of the class action waiver (e.g., "the portion of the Class Action Waiver that is enforceable shall be enforced in arbitration," "the unenforceable or unlawful potion(s) shall be severed from this Arbitration Agreement"). This distinction and emphasis on upholding the enforceable portions of the class action waiver are set forth throughout the clause (e.g., "severance of the unenforceable or unlawful portion(s) shall have no impact whatsoever on the enforceability, applicability, or validity of the Arbitration Agreement"). The enforceable portion of the class action waiver is enforced in arbitration. Any unenforceable portion of the class action waiver is severed for later determination in court.

The intent is to slice off the unenforceable portion of the class action waiver and enforce the remainder. The language states a strong preference for arbitration unlike the brief provision in *Jack v. Ring LLC*. The intent is not to have entire causes of action litigated in court. The arbitration agreement's general severability and survival provisions confirm this conclusion, the unenforceable portions are severed (e.g., "if any portion . . . is found to be unenforceable or unlawful . . . the unenforceable or unlawful provision shall be severed."). The direct and succinct language in *Jack v. Ring LLC* focused on severance of a "claim for relief" (e.g., "then that claim (and only that claim) must be severed"). It did not contain any reference to "portion"

of a class action waiver, much less the repeated references designed to preserve arbitration. Nor does the *Jack v. Ring LLC* language create the dichotomy between enforceable and unenforcement portions of a class action waiver. Plaintiff's interpretation would negate the agreement to arbitrate. Given the language in the class action waiver requiring the court to order to arbitration of any valid portion of the class action waiver and to sever any unenforceable portion, the court severs the prohibition on public injunctions for later adjudication in this court.

Litigation is often sequenced with proceedings to occur in arbitration and then in court after completion of arbitration. For example, in *McGill v. Citibank, N.A., supra,* 2 Cal.5th 945, the California Supreme Court held: "Moreover, case law establishes that a stay of proceedings as to any inarbitrable claims is appropriate until arbitration of any arbitrable claims is concluded. (*Cruz, supra*, 30 Cal.4th at p. 320.) Thus, arbitration of claims the parties have agreed to arbitrate may proceed pursuant to whatever procedures the arbitration agreement specifies, unaffected by any subsequent proceedings made necessary by invalidation of the waiver regarding the public injunctive relief claims the parties did not agree to arbitrate. According to the high court, " 'piecemeal' litigation" of claims the parties have agreed to arbitrate and claims they have not agreed to arbitrate is consistent with the FAA. (*Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 221.) In *Broughton, supra*, 21 Cal.4th at page 1088, this court extended this principle to piecemeal litigation of "arbitrable and inarbitrable remedies derived from the same statutory claim." We therefore reject Citibank's assertion that "post-arbitration judicial or other procedures" to resolve requests for statutory relief the parties did not agree to arbitrate would "violate the FAA's objectives." (2 Cal.5th at p. 966.)[4]

---

[4] In *Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, the California Supreme Court held: "Indeed, it is a regular and accepted feature of litigation governed by the FAA that the arbitration of some issues does not sever those issues from the remainder of the lawsuit. The high court has long recognized that the FAA 'requires piecemeal resolution [of related disputes in different forums] when necessary to give effect to an arbitration agreement.' (*Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765.) In *Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158, the high court held that the FAA requires arbitrable claims to be compelled to arbitration 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.' *Viking River* reiterated that parties may opt for arbitration procedures that depart from standard liberal rules of claim joinder, '[a]nd that is true even if bifurcated proceedings are an inevitable result.' (*Viking River, supra*, 596 U.S. at p. ___ [142 S.Ct. at p. 1923] [citing *Dean Witter* and *Moses H. Cone Hospital*].) When an action includes arbitrable and nonarbitrable components, the resulting bifurcated proceedings are not severed from one another; rather, the court may 'stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.' (9 U.S.C. § 3; see Code Civ. Proc., § 1281.4.) In *McGill v Citibank, N.A.* (2017) 2 Cal.5th 945, 966, 216 Cal.App.3d 627, 393 P.3d 85, we explained that this principle extends to 'piecemeal litigation of 'arbitrable and inarbitrable remedies derived from the same statutory claim." ' " (14 Cal.5th at p. 1125.)

**4. Court and Arbitrator**

In its surreply, Plaintiff argues: "In order to conduct such an analysis, this Court *must* be able to analyze all of the provisions of the arbitration agreement, 'hypothetical' or not. The Court cannot deem whether unconscionability permeates the agreement if it is restricted to assessing certain provisions. [¶] And Uber cannot avoid this outcome by arguing that under the Delegation Clause, this Court can only assess the unconscionability of the Class Action Waiver and Mass Action Waiver, while the unconscionability of the remaining provisions must be assessed by an arbitrator. If the Delegation Clause had the effect of dividing up the unconscionability analysis between the Court and an arbitrator such that neither this Court nor an arbitrator could review the unconscionability of the agreement as a whole and conduct the required severance analysis, the Delegation Clause would be unconscionable and unenforceable for this reason as well." At the hearing, Plaintiff emphasized that not having one decision-maker adjudicate all the unconscionability challenges to the arbitration agreement violates the principles set forth in *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478.

Plaintiff's argument runs into the well-established law regarding delegation clauses. For example, in *Rent-A-Center, supra*, 561 U.S. 63, the United States Supreme Court held that the delegation clause in the arbitration agreement was "simply an additional, antecedent agreement" that was severed under section 2 of the FAA. (*Id*. at p. 70.) Because the employee challenged the arbitration agreement as a whole and did not specifically challenge the severed delegation clause, the Supreme Court in *Rent-A-Center* held "any challenge to the validity of the Agreement as a whole [was] for the arbitrator." (*Id.* at pp. 70, 72.) The Supreme Court suggested that, "had [the employee] challenged the delegation provision by arguing that these [alleged unconscionable] procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court." (*Id.* at p. 74.) The Court stated that such an unconscionability challenge to the delegation clause would have been "a much more difficult argument to sustain" than the same unconscionability argument made regarding the arbitration agreement as a whole. (*Ibid.*) When presented with a clear and unmistakable delegation clause, courts decide the enforceability of delegation clauses and order challenges to arbitration agreements as a whole to arbitration. In *Rent-A-Center*, the Court pointed out that unconscionability challenges to delegation clauses would be narrower than challenges to arbitration agreements as a whole. There is not nothing impermissible with a court severing the delegation clause to issue a ruling and an arbitration later deciding unconscionability disputes about the agreement as a whole. Nothing in *Ramirez* alters this long-standing rule of law. There is also no reason why the arbitrator could not consider the court's rulings regarding the delegation clause, the class action waiver, or the mass action waiver.

## III. CONCLUSION

The court grants Defendant's motion to compel arbitration of Plaintiff's individual causes of action. Plaintiff's class action claims are dismissed. Plaintiff's requests for public injunctive relief remain in court and are stayed pending completion of the arbitration proceeding.

IT IS SO ORDERED.

Dated:
05/01/2026

Timothy Patrick Dillon
Judge of the Superior Court
Timothy Patrick Dillon / Judge