# EXHIBIT D

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 01/08/2026 TIME: 9:30 AM DEPT: C-71

JUDICIAL OFFICER: GREGORY W. POLLACK
CLERK: Valeria Contreras
REPORTER/ERM: Nicole Canales; CSR #12435
BAILIFF/COURT ATTENDANT: D. DiValerio

CASE NO: **25CU012082C** CASE INIT.DATE: 03/07/2025
CASE TITLE: **Huber vs Uber Technologies Inc**
CASE CATEGORY: Civil CASE TYPE: (U)Business Tort/Unfair Business Practice

---

**HEARING TYPE**: Motion Hearing
MOVING PARTY:

---

**APPEARANCES**
Theane Evangelis, Attorney for Defendant Uber Technologies Inc, present via remote video appearance.
Brandon Stoker, attorney for Uber Technologies Inc, Defendant, present via remote video appearance.
Emily Weissler, attorney for Uber Technologies Inc, Defendant, present via remote video appearance.
Tom Warren, attorney for Phoenix Huber, Plaintiff, present in person.

---

The Court orally advises the parties of its tentative ruling, after which oral argument is conducted. Upon completion of oral argument, the Court (1) makes the following Order, (2) enters the date of this hearing for the following Order, and (3) gives Notice of Entry of the following Order:

**I.**

**INTRODUCTION**

This is a class action case brought by plaintiff Phoenix Huber ("Huber") against defendant Uber Technologies, Inc. ("Uber").

On April 17, 2025, Huber filed the legally operative first amended class action lawsuit ("FAC") against Uber, alleging the following four causes of action:

1. Unfair Competition (Cal. Bus. & Prof. Code §17200 et seq.)
2. False Advertising (Cal. Bus. & Prof. Code §17500 et seq.)
3. Violation of Consumer Legal Remedies Act (Cal. Civil Code §1770(a)(29)
4. Violation of the Yelp Law (Cal. Civil Code §1670.8)

The gravamen of the FAC is that Uber's subscription service involves "drip pricing." Uber advertises to subscribers a $0 delivery fee on eligible food purchases, a "bait and switch" involving mandatory fees that consumers are required to pay that are not disclosed until late in the purchase process after consumers have already committed to a particular purchase. The FAC further alleges that Uber improperly restricts subscribers' ability to criticize Uber's services, sales, and business practices.

In this motion, Huber seeks an order from this court compelling arbitration and staying this superior court action pending completion of that arbitration. The operative updated arbitration agreement governing Huber's claims is the version with an effective date of January 17, 2023.

**II.**

**<u>APPLICABLE LAW</u>**

Both federal law and California state law express a "strong public policy in favor of enforcing arbitration agreements." *Broughton v. Cigna Health Plans* (1999) 21 Cal.4th 1066, 1073-1074. As such, "any doubts regarding the validity of an arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today, LLC* (2012) 205 Cal.App.4th 1138, 1144. "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary for its defense. In these summary proceedings, the trial court sits as trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.

A statement of decision is *not* required when the court *grants,* as it does here*,* as opposed to *denies*, a motion to compel arbitration. *See* CCP §1291 ("A statement of decision shall be made by the court, if requested pursuant to Section 632, whenever an order or judgment, except a special order after judgment, is made that is appealable under this title."); CCP §1294(a)("An aggrieved party may appeal from: (a) An order dismissing or denying a petition to compel arbitration. …"); *Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 353 ("While an order denying a petition to compel arbitration is expressly made appealable [citation], an order compelling arbitration is nonappealable."). Thus, this written decision granting Uber's motion to compel arbitration is not intended to gratuitously constitute a formal statement of decision precluding the Court of Appeal from applying the doctrine of implied findings should Huber mount a later challenge at the appellate level.

**III.**

**ANALYSIS**

There is no dispute that the subject Arbitration Agreement is governed by the FAA. *See* Section 2(c) ("[T]he parties agree and acknowledge that this Arbitration Agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act, 9 U.S.C. §1 et seq. ("FAA"), will govern its interpretation and enforcement and proceedings pursuant thereto.").

"Under the Federal Arbitration Act (FAA), Title 9 U.S.C.sec. 1-16-16, the enforceability of an arbitration agreement is ordinarily to be determined by the court. The parties may agree in the arbitration provision, however, that the enforceability issue will be delegated to the arbitrator. To establish this exception, it must be shown by 'clear and unmistakable' evidence that the parties intended to delegate the issue to the arbitrator. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator". [Internal citations omitted.] *Ajamian v. Cantor* C02e, L.P. (2012) 203 Cal.App.4th 771, 781.

The court's review of the subject Arbitration Agreement found within Section 2 of the applicable Terms of Use agreement between Huber and Uber reveals that the determination of the issue of arbitrability, except for carve-outs as to the enforceability of the class action and mass action waivers, has, indeed, been "clearly and unmistakably" delegated to the arbitrator. Section 2(a)(4) of the Terms of Use provides:

> ***Delegation Clause*: Only an arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or**

> ***relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement, including without limitation any claim that all or any part of this Arbitration Agreement is void or voidable. An arbitrator shall also have exclusive authority to resolve all threshold arbitrability issues, including issues relating to whether these Terms are applicable, unconscionable, or illusory and any defense to arbitration, including without limitation waiver, delay, laches, or estoppel.*** *However, only a court of competent jurisdiction, and not an arbitrator, shall have the exclusive authority to resolve any and all disputes arising out of or relating to the Class Action Waiver and Mass Action Waiver, including, but not limited to, any claim that all or part of the Class Action Waiver and/or Mass Action Waiver is unenforceable, unconscionable, illegal, void, or voidable-except that, as stated and pursuant to the procedures provided in Section 2(a)(3) (b), an arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver.* [Boldface added.]

In The Rutter Group's Civil Litigation Series - Bus. & Prof. C. §17200 Practice, §7.266.11, pp. 7-136 to 137 (2025-2026), the author sets forth a nice summary of the limited role of the trial court in deciding arbitrability in an FAA case involving a valid delegation clause:

> *In deciding whether to compel arbitration under the Federal Arbitration Act (9 USC §1 et seq.), a court evaluates two "gateway" issues (1) whether there is a valid agreement to arbitrate; and (2) whether it covers the dispute. [PacifiCare Health Systems, Inc. v. Book (2003) 538 US 401, 407, 123 S.Ct. 1531, 1536 fn. 2] If the answer to both is yes, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." [9 USC §4]*

> *Suppose, however, the arbitration agreement contains a "delegation" clause. That can happen if the parties have agreed either that the arbitrator will decide "arbitrability," or they incorporate the rules of a private arbitration service provider (such as American Arbitration Association or JAMS) that, in turn, delegate to the arbitrator the power to decide arbitrability. Where there is such a delegation clause, the court examines not whether the agreement to arbitrate is enforceable, but rather, only whether the agreement to arbitrate arbitrability is enforceable. [Brennan v. Opus Bank (9th Cir. 2015) 796 F3d 1125, 1130] In such circumstances, a court's role is to decide whether there is a "clear and unmistakable" agreement between the parties to arbitrate arbitrability. [Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co. (9th Cir. 2017) 862 F3d 981, 985; accord, Momot v. Mastro (9th Cir. 2011) 652 F3d 982, 987; Mohamed v. Uber Technologies, Inc. (9th Cir. 2016) 848 F3d 1201, 1208-1209.*

*California law is to the same effect: "[Defendant] asserts that if we conclude the delegation clause is enforceable, we should affirm the trial court's order and not reach the Aanderuds' arguments concerning enforceability of the arbitration provision, as those are properly reserved for the arbitrator. We agree …" [Aanderud v. Sup.Ct. (2017) 13 CA5th 880, 897, 221 CR3d 225, 239] Thus, because AAA and JAMS provide that the arbitrator's jurisdiction includes the power to decide arbitrability, the incorporation by reference of AAA rules or JAMS rules is generally assumed to be a "clear and unmistakable" agreement by the parties that the arbitrator will decide arbitrability – i.e., plaintiff's defenses to arbitration – and not a court. [See Brennan v. Opus Bank, supra, 796 F3d at 1130-1131 (AAA rules, and collecting cases); Aanderud v. Sup.Ct., supra, 13 CA5th at 897, 221 CR3d at 239 (JAMS rules)]*

*In Henry Schein, Inc. v. Archer & White Sales, Inc. (2019) __ US __, 139 S.Ct. 524, the U.S. Supreme Court held that where there is a written agreement to arbitrate, which also contains a delegation clause, the issue of arbitrability must be decided by the arbitrator: "Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." [Ibid., at 530] In Henry Schein, the Court found there had been a delegation as a result of the parties' agreement that incorporated the arbitration rules of the American Arbitration Association, which provide that arbitrators have the power to resolve arbitrability questions. In so holding, the Court rejected the "wholly groundless" exception, by which a court may choose to decide the threshold question of arbitrability if it finds that the defendant's argument for arbitration is "wholly groundless": "In sum, we reject the 'wholly groundless' exception. The exception is inconsistent with the statutory text and with our precedent. It confuses the question of who decides arbitrability with the separate question of who prevails on arbitrability. When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." [Ibid., at 528.] [Boldface added.]*

Here, the Arbitration Agreement, itself, expressly delegates the threshold issue of arbitrability to the Arbitrator, and so, too, does the designated arbitral provider, ADR Services, Inc. *See* Section 2(c) of the Arbitration Agreement ("For disputes arising in California, the arbitration will be administered by ADR Services, Inc. ("ADR") in accordance with ADR's Arbitration Rules (the 'ADR Rules' in effect at the time that the claim is brought, unless the parties agree otherwise in writing."). ADR Rule 8 expressly provides that unless the court has already determined the issue of arbitrability, the arbitrator determines arbitrability:

*Unless the issue of arbitrability has been previously determined by the court, the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with*

*respect to the existence, scope, or validity of the arbitration agreement. In addition, the arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the balance of the contract is void shall not for that reason alone render invalid the arbitration clause.*

*A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final Award.*

There is no real dispute whether the Arbitration Agreement(s) was entered into by Huber (it was), that the Arbitration Agreement is governed by the FAA (it is), that the scope of the dispute falls well within the terms of the Arbitration Agreement (it does), and that the Arbitration Agreement contains a delegation clause. The parties do, however, dispute the enforceability of that delegation clause.

Huber challenges the enforceability of the delegation clause, claiming it is ambiguous, unconscionable, and, therefore, unenforceable.

The court has reviewed the language of the delegation clause, considered the arguments raised by counsel, and concludes that the language of the delegation clause "clearly and unmistakenly" delegates the threshold issue of arbitrability to the arbitrator. Further, there is no merit to Huber's claim that the delegation clause, itself, is unconscionable. "[I]f a party cites provisions outside of the delegation clause in making an unconscionability challenge, it must explain how those provision make *the fact of an arbitrator deciding arbitrability unconscionable."* *Holley-Gallegly v. TA Operating, LLC* (9th Cir 2023) 74 F.4th 997, 1002. [Italics in original text.] Huber's numerous challenges and arguments regarding enforceability of the Arbitration Agreement, to whom the parties have by contract delegated to the Arbitrator, can, of course, be raised with, and decided by, the Arbitrator when he/she decides threshold issue of arbitrability.

**IV.**

**<u>CONCLUSION</u>**

**Uber's motion is granted.**

The Arbitrator is to rule on the threshold issue of arbitrability. *If* the Arbitrator finds in favor of Uber of the issue of arbitrability, *i.e.*, the arbitration agreement is enforceable, the Arbitrator shall thereafter proceed by deciding Huber's claims on an individual, non-class basis. The Arbitrator is *not* to rule on the enforceability of the purported class action waiver, which is an issue that is left to this court to decide pursuant to Section 2(a)(4) of the Terms of Use agreement.

If the Arbitrator finds in favor of Huber on the issue of arbitrability, *i.e.*, the Arbitration Agreement is unenforceable, the case is to be remanded back to the superior court for further handling, including a ruling on the validity of the class action waiver.

This superior court action is stayed pending completion of the Arbitrator's involvement.

Gregory W. Pollack

Judge Gregory W. Pollack