**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN CA 313138)
SHarutyunyan@jenner.com
515 S. Flower Street, Suite 3300
Los Angeles, California 90071
Telephone: 213 239-5100
Facsimile: 213 239-5199

**JENNER & BLOCK LLP**
Adam G. Unikowsky (*pro hac vice*)
AUnikowsky@jenner.com
1099 New York Ave NW
Washington, DC 20001
Telephone: 202 639-6000
Facsimile: 202 639-6066

*Attorneys for Defendant*
*Uber Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUCY YE, JULIA FLEMING, and JACQUELINE CLAY, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>Defendant. | Case No. 4:26-cv-01744-KAW<br><br>**DEFENDANT UBER TECHNOLOGIES, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Date: November 19, 2026<br>Time: 1:30 p.m.<br>Courtroom: 4<br>Judge: Hon. Kandis A. Westmore |

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. The Delegation Agreement Is Enforceable. ..... 1

A. The Delegation Agreement Is Clear and Unmistakable. ..... 1

B. The Delegation Agreement Is Not Unconscionable ..... 3

1. The Delegation Agreement Is Not Procedurally Unconscionable. ..... 4

2. The Delegation Agreement Is Not Substantively Unconscionable. ..... 5

II. The Mass Action Waiver and Class Action Waiver Are Enforceable ..... 7

A. The Mass Action Waiver Does Not Apply to Plaintiffs, and No Ruling on It Changes the Outcome of This Motion. ..... 7

B. Even If the Court Reaches the Mass Action Waiver, It Is Enforceable. ..... 9

C. The Class Action Waiver Is Enforceable ..... 10

III. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable ..... 11

A. The Arbitration Agreement Is Not Procedurally Unconscionable. ..... 11

B. The Pre-Arbitration Conference Requirement Is Not Unconscionable. ..... 12

C. The Grouping Provision Is Not Unconscionable ..... 13

D. Plaintiffs' Miscellaneous Attacks Are Meritless. ..... 14

IV. Severance Is the Remedy for Any Unenforceable Provision ..... 15

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## CASES

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)....9, 10

*Bielski v. Coinbase, Inc.*, 87 F.4th 1003 (9th Cir. 2023)....12

*Blair v. Rent-A-Center, Inc.*, 928 F.3d 819 (9th Cir. 2019)....11

*Booth v. United States*, 914 F.3d 1199 (9th Cir. 2019)....10

*Burkhardt v. Extra Space Management, Inc.*, 2025 WL 2172287 (E.D. Cal. July 31, 2025)....9

*Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th Cir. 2026)....8

*Gardner v. AMN Healthcare Services, Inc.*, 2025 WL 3751929 (N.D. Cal. Dec. 29, 2025)....7, 8

*Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000)....7

*Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881 (N.D. Cal. Feb. 2, 2017)....15

*Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), *cert. denied*, 146 S. Ct. 96 (2025)....10, 12

*Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021)....7, 11

*Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997 (9th Cir. 2023)....4

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)....7, 10

*Jack v. Ring LLC*, 91 Cal. App. 5th 1186 (2023)....3

*Jones v. Starz Entertainment, LLC*, 129 F.4th 1176 (9th Cir. 2025)....14

*Mafaher v. Uber Technologies, Inc.*, No. 25STCV17232 (Cal. Super. Ct. May 1, 2026)....11

*Mitton v. State Bar of California*, 455 P.2d 753 (Cal. 1969)....13

*Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016)....2, 3, 4

*Mortensen v. Bresnan Communications, LLC*, 722 F.3d 1151 (9th Cir. 2013)....13

*Niesig v. Team I*, 558 N.E.2d 1030 (N.Y. 1990)....13

*O'Malley v. Williams-Sonoma, Inc.*, __ F. Supp. 3d __, 2026 WL 2640697 (N.D. Cal. Sept. 8, 2026)....passim

*Pandolfi v. AviaGames*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), *cert. denied*, 146 S. Ct. 2657 (2026)....passim

*Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192 (N.D. Cal. Nov. 18, 2025), *appeal docketed*, No. 25-7725 (9th Cir. Dec. 9, 2025) ... 3

*Ramirez v. Charter Communications, Inc.*, 551 P.3d 520 (Cal. 2024) ... 7, 15

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ... 3

*Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025), *appeal docketed*, No. 25-7199 (9th Cir. Nov. 14, 2025) ... 4, 6, 9, 14

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.*, 425 P.3d 1 (Cal. 2018) ... 13

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ... 5

*SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033 (N.D. Cal. 2018) ... 3

*Taylor v. Shutterfly, Inc.*, 2018 WL 4334770 (N.D. Cal. Sept. 11, 2018) ... 2

**STATUTES**

42 Pa. Cons. Stat. § 5527(b) ... 5

9 U.S.C. § 3 ... 5, 10

9 U.S.C. § 5 ... 12

Cal. Bus. & Prof. Code § 17208 ... 5

Cal. Civ. Code § 1783 ... 5

N.Y. C.P.L.R. 214(2) ... 5

**OTHER AUTHORITIES**

Cal. R. Prof. Conduct 1.2(a) ... 10

Cal. R. Prof. Conduct 1.7(b) ... 10

Cal. R. Prof. Conduct 4.2 ... 12, 13

JAMS, *Mass Arbitration Procedures and Guidelines* (eff. May 1, 2024), https://tinyurl.com/ytz56n4e ... 14

Order, *Pandolfi v. AviaGames*, No. 23-cv-05971 (N.D. Cal. May 21, 2024), Dkt. 113 ... 5

## INTRODUCTION

The Court should enforce Uber's Arbitration Agreement. The bulk of Plaintiffs' arguments contend that the Arbitration Agreement is invalid as a whole. But the Arbitration Agreement contains a Delegation Agreement that will give Plaintiffs a fair opportunity to raise all of those arguments to the arbitrator.

The limited question before the Court is whether the Delegation Agreement, as well as the Mass Action Waiver and Class Action Waiver (the "Waivers"), are enforceable. They are. The Delegation Agreement is a standard provision of the sort that is routinely enforced. Plaintiffs' objections to the Mass Action Waiver are irrelevant to Plaintiffs and, even as to non-parties, rest upon a speculative and implausible chain of contingencies. Plaintiffs' objections to the Class Action Waiver conflict with well-settled law enforcing such provisions. The Court should resolve those narrow questions in Uber's favor, enforce the Arbitration Agreement, and allow the arbitrator to resolve the issues Plaintiffs now raise.

Even setting aside the Delegation Agreement, the Arbitration Agreement is fair. To arbitrate their claims, all Plaintiffs must do is notify Uber of their dispute in writing, participate in an informal resolution conference, and—if the conference does not resolve the dispute—file an arbitration demand. That is a reasonable protocol of the kind courts routinely enforce. The Court should grant Uber's motion to compel arbitration and stay these proceedings (Dkt. 35, "Mot.").

## ARGUMENT

### I. The Delegation Agreement Is Enforceable.

#### A. The Delegation Agreement Is Clear and Unmistakable.

Uber's Delegation Agreement reserves disputes over the Class Action Waiver and Mass Action Waiver for the Court, and unambiguously delegates other enforceability disputes to the arbitrator. Mot. at 8–10. Plaintiffs nonetheless claim to have located ambiguities in the Delegation Agreement, and leap to the conclusion that the Delegation Agreement should *never* be enforced. That argument fails.

Plaintiffs identify no ambiguities in the Delegation Agreement at all—and certainly no ambiguities that could possibly implicate this case. Plaintiffs' lead argument confuses the scope of arbitration with the scope of delegation. Section 2(b) of the Terms lists "Exceptions to Arbitration"—categories of claims, such as individual small claims and claims for injunctive relief regarding intellectual property, that are not

arbitrated at all. Dkt. 48-2 (hereafter, "Terms"[1]) § 2(b). The Delegation Agreement at Section 2(a)(4) addresses a different question: which decisionmaker resolves threshold disputes about claims that *are* within the scope of arbitration. Plaintiffs' complaint that the carveouts do not appear in Section 2(b), where the "only exceptions" to arbitration are listed, Opp. at 6, therefore identifies no contradiction at all.

Nor is the Mass Action Waiver carveout ambiguous. The Court considers challenges to the Mass Action Waiver itself, while an arbitrator considers whether the Mass Action Waiver applies (*i.e.*, whether a Mass Action exists). The Delegation Agreement says so clearly: "[A]n arbitrator or panel of arbitrators shall have authority to determine whether the party bringing any claim has violated the Mass Action Waiver." Terms § 2(a)(4). Plaintiffs label this a "carveout to the carveout," Opp. at 6, but such a division of authority between the court and arbitrator is commonplace. Mot. at 9–10 (listing cases); *see Taylor v. Shutterfly, Inc.*, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) ("[A]n express delegation provision is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court."). Plaintiffs do not point to any specific type of dispute that creates ambiguity under the Terms as to whether a court or arbitrator should hear it—much less show that *this* dispute creates such ambiguity. Vague suggestions that the division of authority might blur in some unspecified hypothetical do not warrant discarding a delegation clause that is clear as applied to the challenges actually before the Court. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (any ostensible conflict created by a clause introducing exceptions was "artificial").

Plaintiffs insist that *all* of their unconscionability arguments are "disputes concerning" the Waivers because the Waivers "work together" with other provisions. Opp. at 7. The Court should reject Plaintiffs' contrived effort to nullify the Delegation Agreement. The bulk of Plaintiffs' challenges to the Arbitration Agreement have nothing to do with the Waivers. For instance, the grouping provision in Section 2(a)(3)(c) applies only if neither party enforces the Mass Action Waiver, so it cannot possibly "concern" the Mass Action Waiver. To the extent any ambiguity exists at the margins about what is carved out from delegation,

---

[1] Plaintiffs insinuate that Uber has not identified the relevant Arbitration Agreement. But there is no dispute over which Arbitration Agreement controls. As Uber's Motion explains, Plaintiffs' complaint attacks the Arbitration Agreement in the January 2026 Terms, and each Plaintiff assented to an identical version. Mot. at 2. Both versions of the Terms containing the Arbitration Agreement are before the Court. Dkt. 22-1 at 102 (March 2026 Terms); Dkt. 48-2 (January 2026 Terms). For clarity, Uber incorporates Dkt. 22-1 and Dkt. 48-2 into its Motion.

"the question of arbitrability, even on the subject of what has been carved out, must be decided by the arbitrator." *SteppeChange LLC v. VEON Ltd.*, 354 F. Supp. 3d 1033, 1044 (N.D. Cal. 2018).

Plaintiffs insist that Uber's cases "do not condone splitting review of interrelated and overlapping aspects of a complex dispute resolution process between courts and arbitrators." Opp. at 7. But the division of labor in the Terms—challenges to the Waivers go to the court, other arbitrability challenges go to the arbitrator—is not complex. Further, in *Mohamed*, the Ninth Circuit enforced a delegation clause in Uber's agreement that—much like the Delegation Agreement here—reserved for the court "any claim that all or part of the Class Action Waiver, Collective Action Waiver or Private Attorney General Waiver is invalid, unenforceable, unconscionable, void or voidable," while sending all other arbitrability questions to the arbitrator. 848 F.3d at 1208–09. Plaintiffs' effort to distinguish *Mohamed* as involving a "single carve-out," Opp. at 8, fails: the *Mohamed* carveout reached three different waivers.

Supreme Court precedent forecloses Plaintiffs' complaint that the Delegation Agreement is unenforceable because "no single forum can hear a complete unconscionability challenge." Opp. at 7. The Supreme Court held in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) that when plaintiffs challenge delegation clauses, the unconscionability challenge is divided between court and arbitrator: the court considers the delegation clause, and the arbitrator considers the arbitration agreement as a whole. *Id.* at 71–72. The Delegation Agreement here works the exact same way except the Court may hear challenges to two additional provisions: the Class Action Waiver and Mass Action Waiver.

Plaintiffs' cases on delegation clauses are inapposite. They feature arbitration agreements containing contradictions, not mere divisions of authority between the arbitrator and the court. *See Jack v. Ring LLC*, 91 Cal. App. 5th 1186, 1199 (2023) (delegation clause was contradicted by a separate "poison pill" provision permitting a court to address enforceability of individualized arbitration); *Peters v. Guaranteed Rate, Inc.*, 2025 WL 3679192, at *1 (N.D. Cal. Nov. 18, 2025) (delegation clause was contradicted by a separate provision requiring parties' consent to court jurisdiction for actions relating to the arbitration agreement). The carveouts in Uber's Delegation Agreement do not create any contradiction.

**B. <u>The Delegation Agreement Is Not Unconscionable.</u>**

A challenge to a delegation clause must focus on the *validity of the delegation clause* specifically, and a party relying on other provisions must "explain[] how 'unrelated' provisions make the delegation

unconscionable."[2] *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1002 (9th Cir. 2023). By that standard, most of Plaintiffs' arguments are really challenges to the Arbitration Agreement as a whole. Plaintiffs complain about the pre-arbitration notice requirement, the informal conference, the manner of serving an arbitration demand, and the litigation-funding disclosure. Opp. at 10. Plaintiffs are free to challenge these provisions in arbitration. But none of those provisions concerns *who decides* arbitrability.

Plaintiffs' only delegation-specific theory is that the Mass Action procedure might delay the arbitrator's decision of arbitrability questions. That theory is irrelevant here because there is no Mass Action. Even if it were relevant and had merit, the remedy would be to sever the Mass Action provisions—a remedy that would have no effect on Plaintiffs' case—not to discard the Delegation Agreement. *Mohamed*, 848 F.3d at 1209; Mot. at 9–10 (citing cases).

**1. <u>The Delegation Agreement Is Not Procedurally Unconscionable.</u>**

There is no procedural unconscionability here. Contrary to Plaintiffs' claim, the garden-variety Delegation Agreement is neither buried nor surprising. The first page of Uber's Terms says—in prominent, capitalized text flagged as "IMPORTANT"—that the Terms contain an arbitration agreement and that it "REQUIRES YOU TO RESOLVE ALL DISPUTES WITH UBER ON AN INDIVIDUAL BASIS AND, WITH LIMITED EXCEPTIONS, THROUGH FINAL AND BINDING ARBITRATION." Terms at 1. The Delegation Agreement itself is a separately numbered provision marked by an underlined subheading—"(4) <u>Delegation Agreement</u>"—and set out in bolded text. Terms § 2(a)(4); *see* Mot. at 13–14; *O'Malley v. Williams-Sonoma, Inc.*, __ F. Supp. 3d __, 2026 WL 2640697, at *5 (N.D. Cal. Sept. 8, 2026) (similar preamble in arbitration agreement precluded high degree of procedural unconscionability).

Judge Chen's analyses from *Rios v. HRB Digital LLC*, 807 F. Supp. 3d 975 (N.D. Cal. 2025), and *Pandolfi v. AviaGames*, 2024 WL 4051754 (N.D. Cal. Sept. 4, 2024), *aff'd*, 2025 WL 2463742 (9th Cir. Aug. 27, 2025), are distinguishable. *Rios* did not involve any delegation clause and located the element of surprise in the bellwether and batching scheme of the arbitration agreement. *Rios*, 807 F. Supp. 3d at 986.

---

[2] Unconscionability requires an analysis of state law. Plaintiffs do not meaningfully contest Uber's choice-of-law analysis that the law of each Plaintiff's state applies, Mot. at 7; they cite only an inapposite case that did not involve a contractual choice-of-law provision. Opp. at 9 n.4. Thus, to the extent Plaintiffs rely on California-specific rules, these apply only to Plaintiff Ye. But in any event, the Court should grant Uber's motion under all three states' laws.

As explained below, those features are absent in Uber's Terms, and in any event, batching applies only in the event of a Mass Action, which this action is not. And the delegation clause in *Pandolfi* used "8-point font in barely readable, light gray text" and "[wa]s not even numbered, let alone titled." Order at 12–13, *Pandolfi*, No. 23-cv-05971 (N.D. Cal. May 21, 2024), Dkt. 113; *Pandolfi*, 2024 WL 4051754, at *2 (incorporating this analysis). Uber's Delegation Agreement shares none of those defects.

**2. <u>The Delegation Agreement Is Not Substantively Unconscionable.</u>**

Plaintiffs' substantive unconscionability argument reduces to the claim that the Mass Action procedures could delay decisions on arbitrability. As explained below, those procedures do not apply to the three Plaintiffs in this case, so Plaintiffs cannot rely on them to show why delegation is unconscionable. Even if the Court reached the argument, any delay would be a defect in those provisions, not in the Delegation Agreement, and the remedy would be to sever them, not to nullify delegation. *Infra* Section IV.

In any event, Plaintiffs' argument fails on the merits. Plaintiffs first say that a claim "may be derailed into a separate 'Mass Action' process" and "kicked out of arbitration," at which point limitations might expire. Opp. at 10. But the limitations are tolled during the conference, Terms § 2(d), and Plaintiffs' claims are already pending in this action. Terms § 2(a)(3)(b)–(c); 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024). A finding that the Mass Action Waiver was violated would not extinguish the claims. It would give each Plaintiff 30 days to opt out and return to this docket (where the action will be stayed), and otherwise the demands proceed in groups.[3]

Nor does the grouping procedure make the Delegation Agreement unconscionable. To the contrary, the Delegation Agreement *resolves* any concern about delay associated with grouping by giving the arbitrator the flexibility to resolve challenges to the grouping process should they arise. In any event, Plaintiffs' cases do not hold that theoretical delay renders a delegation provision unconscionable. *Pandolfi* and Plaintiffs' other cases which do not address delegation, involved counsel representing thousands of

[3] Plaintiffs provide no analysis of their statutes of limitations. For good reason: their state-law claims carry limitations periods of three years or more. *See, e.g.*, Cal. Bus. & Prof. Code § 17208 (four years); Cal. Civ. Code § 1783 (three years); N.Y. C.P.L.R. 214(2) (three years); 42 Pa. Cons. Stat. § 5527(b) (six years). Plaintiffs claim injury from rides occurring not long before the FAC. Dkt. 32 ("FAC") ¶¶ 7–9. Even assuming the tightest timeline, Plaintiffs' claims under their respective state's limitations period would not expire until 2028 at the earliest, and more likely later in 2028 or 2029. Plaintiffs in effect assume, without any reasoning, that arbitration will consume more than a year just to resolve simple procedural questions.

people with the same claims as the plaintiffs *and* small, strictly sequential batches of claims. 2024 WL 4051754, at *6 (4000+ clients with same claims); *see also Rios*, 807 F. Supp. 3d at 982 (no delegation and notice of dispute filed for approximately 2,500 people). Plaintiffs here are differently situated: they are three individuals who have not alleged they will file a mass action after the informal dispute process.[4]

Indeed, *Pandolfi* confirms by contrast the speculative nature of Plaintiffs' argument. Importantly, the sequential batching provision in *Pandolfi* created a tangible risk: it allowed only twenty cases to proceed at a time, and it appointed one arbitrator to each case in the batch. 2024 WL 4051754, at *6. Plaintiffs' other authorities likewise involved small sequential batching. *See infra* Section III.C; *O'Malley*, 2026 WL 2640697, at *7 (no delegation and "years" in delay for later batched claimants); *Rios*, 807 F. Supp. 3d at 990 ("13-year timeline to resolve a batch of 2,000 Notices"). By contrast, Uber's grouping procedure allows groups of 100 arbitration demands to proceed simultaneously, and it assigns each group (not each case) to one arbitrator. Terms § 2(a)(3)(c)(ii). As an illustration: if 2,000 arbitration demands were filed, the protocol in *Pandolfi* would require them to proceed in 100 *sequential* rounds of 20 arbitrations each, with *every* round requiring 20 arbitrators. Under Uber's Terms, 20 groups of 100 demands can proceed *concurrently* and would require only 20 arbitrators *total*. *Pandolfi* thus offers no basis to find Uber's grouping procedures unconscionable.

Despite spending months litigating their entitlement to pre-arbitration discovery as purportedly relevant for proving their unconscionability claims directed at the Delegation Agreement, Dkt. 33 at 2–4, Dkt. 42 at 2–3, Plaintiffs bury in a footnote the fact that Uber's discovery responses revealed that Plaintiffs' challenges lack any factual footing. Opp. at 11 n.5. Indeed, Uber identified zero instances in which it challenged a "claimant's compliance" with its pre-dispute resolution process under the operative Terms, such as filing a demand and attending an informal conference. Plaintiffs' rejoinder that unconscionability "focuses on the language of the Terms themselves at formation," *id.*, only proves Uber's point. "[T]he language of the Terms" neither shows that Uber's grouping provision incorporates any dilatory sequential

[4] Plaintiffs' assertion that many other Uber users may file similar claims has no bearing on this point. Opp. at 21. Contrary to Plaintiffs' assertion, Uber does not use a "litigation concession" to cure an unconscionable term. *Id.* Uber simply points out that, by its terms, the Mass Action Waiver does not apply to a three-plaintiff case.

batching nor proves Plaintiffs' apparent belief that an arbitrator will waste an inordinate amount of time to decide simple procedural questions.

Plaintiffs' position boils down to the extreme argument that any time an arbitration agreement fails to specify a precise timeline for an arbitrator's various decisions, the risk of delay creates substantive unconscionability for a delegation clause. That is wrong. In *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)—which Uber's Motion cited and Plaintiffs ignored—the Supreme Court made clear that procedural questions such as "*time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" are for an arbitrator to decide, not for the court. *Id.* at 84–85 (emphasis in original) (quotation marks omitted). The fact that the Terms are "silent on the contested matter" of an arbitrator's timeline for deciding procedural issues, Opp. at 18 (quoting *Pandolfi*, 2024 WL 4051754, at *7), further shows that Plaintiffs' suspicion of an arbitrator's competence is "too speculative" a basis to support unconscionability. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## II. <u>The Mass Action Waiver and Class Action Waiver Are Enforceable.</u>

### A. <u>The Mass Action Waiver Does Not Apply to Plaintiffs, and No Ruling on It Changes the Outcome of This Motion.</u>

Plaintiffs' challenge to the Mass Action Waiver flounders because that Waiver does not apply here. As the Ninth Circuit explained in *Hodges v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021), courts should not "stretch to invalidate contracts based on hypothetical issues." *Id.* at 541. Plaintiffs point to a statement in *O'Malley* that the decision in *Ramirez v. Charter Communications, Inc.*, 551 P.3d 520 (Cal. 2024), may displace *Hodges*'s analysis. *O'Malley*, 2026 WL 2640697, at *5. *Ramirez* holds that courts should analyze the enforceability of discovery limitations in arbitration agreements based on the face of the agreement, rather than waiting for discovery disputes affecting particular parties to arise. 551 P.3d at 539. Uber's argument here is not that disputes over the Mass Action Waiver's applicability lie in the future. Uber's argument is that the Mass Action Waiver is irrelevant because this is not a mass action, so there is nothing to waive. *Gardner v. AMN Healthcare Servs., Inc.*, 2025 WL 3751929 (N.D. Cal. Dec. 29, 2025), which Plaintiffs cite, Opp. at 20, draws the line that defeats this argument: it distinguishes provisions that "did not apply to the plaintiff" at all—where *Hodges* controls—from provisions that apply to the plaintiff but happen to cause no harm in the particular dispute. *Gardner*, 2025

WL 3751929, at *2. The Mass Action Waiver falls in the first category; it applies when 50 or more substantially similar arbitration demands are filed by one firm within 180 days. Terms § 2(a)(3)(a).

Plaintiffs nonetheless insist that the definition of a Mass Action is so "open-ended" that their claims "could easily be swept in," complaining that the definition uses the phrase "includes, but is not limited to." Opp. at 19, 21. The Ninth Circuit foreclosed this very argument in *Cocom v. ABM Aviation, Inc.*, 179 F.4th 1168 (9th Cir. 2026), decided after Uber's Motion. Explaining that the phrase "including, but not limited to" was "not necessarily a phrase without limits" but instead "connotes an illustrative listing," the Ninth Circuit reversed the district court's conclusion that the phrase rendered a definition substantively unconscionable. *Id.* at 1175–77 (quotation marks omitted). So too here: the phrase builds some flexibility into the definition of a Mass Action but does not create substantively unconscionable ambiguity.

Plaintiffs' last-ditch effort to manufacture a present stake through the indemnity provision in Section 8 of the Terms fails. Opp. at 21. Section 8 is not a part of the Arbitration Agreement. As Uber already explained, it is a general indemnity provision that "addresses claims arising from a consumer's use of Uber's services and does not relate to the fairness of the Arbitration Agreement." Mot. at 23. Plaintiffs' theory is also speculative several times over: it presupposes a Mass Action that does not exist, a finding that Plaintiffs violated the Mass Action Waiver, and an indemnity demand that Plaintiffs merely imagine. Meanwhile, the Terms' actual fee provisions cap a claimant's filing, administrative, and arbitrator fees at what she would pay in court, Terms § 2(h), and require Uber to bear all costs of the panel that would decide any Mass Action dispute, Terms § 2(a)(3)(b)(ii).

Even if Plaintiffs could challenge the Mass Action Waiver, the remedy would not help them. The Terms provide that any unenforceable provision "shall be severed" with "no impact whatsoever on the remainder of the Arbitration Agreement or the parties' ability to compel arbitration of any remaining claims on an individual basis." Terms § 2(j). The only remedy Plaintiffs can seek—severing the Mass Action Waiver—would leave Plaintiffs exactly where they are: three claimants required to arbitrate their claims individually. Plaintiffs' only answer is that severance is discretionary, but their anti-severance argument depends on finding a web of unconscionable provisions and, as shown below, there is none. Because no ruling on the Mass Action Waiver could change the disposition of this Motion, the Court should decline Plaintiffs' invitation to issue one.

**B. Even If the Court Reaches the Mass Action Waiver, It Is Enforceable.**

Most of Plaintiffs' challenges to the "Mass Action protocol," Opp. at 17–20, are directed not at the Mass Action Waiver but at the grouping provision in Section 2(a)(3)(c). *See supra* p. 2. But the grouping provision has nothing to do with the Mass Action Waiver—it would kick in only if the parties *do not* invoke the Mass Action Waiver and instead elect to arbitrate the Mass Action. Thus, under the Delegation Agreement, the arbitrator—not this Court—decides Plaintiffs' challenge to the grouping procedure. If the arbitrator concluded that the grouping procedure operated unconscionably, the arbitrator would have full authority to say so and to decline to enforce it. *See* Terms §§ 2(a)(4), 2(j). Assigning that challenge to the arbitrator not only comports with the Terms but also makes sense: the arbitrator presiding over the Mass Action is better positioned to assess the risk of delay and potential remedial measures. That contrasts with the cases Plaintiffs rely on, where "[n]o provision … provide[d] arbitrators with discretion to address delays or to undo terms of the [agreement]." *Rios*, 807 F. Supp. 3d at 990; *see O'Malley*, 2026 WL 2640697, at *8 (noting the absence of any "flexibility to depart from the rigid bellwether structure").

Plaintiffs cite several cases that concerned unconscionability challenges to bellwether or batching protocols, but those cases concerned procedures when mass actions *occur*—not a provision that allows either party to ensure that a mass action *will not* occur. Such a waiver accords with the FAA's emphasis on individualized arbitration and cannot be unconscionable. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 347–48 (2011). Nor does the Mass Action Waiver's supposed "built-in asymmetry," Opp. at 19, change that. Plaintiffs' point—that only consumers are likely to file 50 similar demands—is equally true of class actions, which did not stop *Concepcion* from enforcing a class action waiver. The Mass Action Waiver operates evenhandedly: either party may opt out of a Mass Action, an exit that returns the claimant to court without triggering the grouping provision Plaintiffs decry, and either may participate in a mass settlement. Terms § 2(a)(3)(a)–(b); *see Burkhardt v. Extra Space Mgmt., Inc.*, 2025 WL 2172287, at *6 (E.D. Cal. July 31, 2025) (observing that a similar opt-out in a mass action waiver "preserv[ed] [claimant's] ability to opt out of its mass arbitration and bellwether protocols later").

Plaintiffs' primary challenge against the Mass Action Waiver reprises their speculative argument that the Mass Action Waiver causes unconscionable delay by requiring an arbitrator to determine the existence of a Mass Action prior to any merits proceedings. But courts routinely resolve threshold issues

like venue and jurisdiction (also with no deadline, usually) before reaching the merits, so there is nothing unconscionable about an arbitrator deciding threshold procedural "conditions precedent to an obligation to arbitrate." *Howsam*, 537 U.S. at 84–85. While the determination of a Mass Action is pending, the Terms place the entire cost of the threshold panel on Uber and stay all fee obligations, Terms § 2(a)(3)(b)(ii), (iv), meaning no claimant bears any expense while the question is decided.

Plaintiffs also claim that a Mass Action is triggered by the conduct of counsel, not the claimant. Opp. at 19. That is false. Under the Rules of Professional Conduct, counsel must obtain each client's informed written consent before undertaking a representation that could materially limit counsel's responsibilities to that client, and must "abide by a client's decisions concerning the objectives of representation." Cal. R. Prof. Conduct 1.2(a), 1.7(b). Plaintiffs' counsel would thus have to consult them before retaining numerous other claimants, and if Plaintiffs do not wish to proceed as part of a Mass Action, they may instruct counsel accordingly or retain different counsel; nothing in the Terms limits that choice. The trigger for every delay Plaintiffs forecast is thus in their own hands.

Finally, Plaintiffs' concern about the statute of limitations expiring is misplaced. If the concern is that their claims could expire after a party opts out of a Mass Action, 9 U.S.C. § 3 ensures Plaintiffs can return to this docket. If some unforeseen situation arises where statutes of limitations become an issue, Plaintiffs could invoke equitable tolling. *See Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019).

**C. <u>The Class Action Waiver Is Enforceable.</u>**

Under *Concepcion*, an arbitration agreement under the FAA cannot be held unconscionable on account of incorporating a class action waiver. 563 U.S. at 344, 352. Plaintiffs wrongly claim that the FAA does not preempt California's *Discover Bank* rule here because Uber's Class Action Waiver "remain[s] in effect" if "a claim does not proceed in arbitration." Opp. at 24 (quoting Terms § 2(a)(2)). But this claim *is* proceeding in arbitration, so *Concepcion* requires enforcing the requirement of individualized arbitration.[5]

[5] Uber's Motion addresses in full Plaintiffs' fallback argument that under *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), the Terms depart so far from bilateral arbitration that the FAA does not apply to them at all. Mot. at 4–6.

Plaintiffs also claim that the Class Action Waiver bars public injunctive relief. Opp. at 21–22. That is wrong. The Terms elsewhere expressly preserve a claimant's ability to seek public injunctive relief: "Except as to claims for public injunctive relief where required by law, the Arbitrator may award declaratory or injunctive relief only in favor of a party." Terms § 2(g);[6] *cf. Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 830 (9th Cir. 2019) (explaining that arbitration of public injunctive relief is feasible). Public injunctive relief is also irrelevant here because Plaintiffs are suing in their capacity as Uber's consumers. "[P]ublic injunctive relief within the meaning of *McGill* is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party." *Hodges*, 21 F.4th at 542. Plaintiffs' Complaint does not allege false advertising to the general public, but rather alleges that the Uber app's in-ride description of a "Faster" ride, presented to a user selecting a ride, is false advertising. FAC ¶¶ 2–4, 187–196. An injunction regulating that in-app representation would benefit "a particular class of persons"—Uber riders—not the public at large. *See Hodges*, 21 F.4th at 542, 548–49 (relief benefiting a company's existing customers is not public injunctive relief).

Even if the Court concluded that Plaintiffs seek public injunctive relief and that the Class Action Waiver precludes it, the result would be severance, not invalidation. The Class Action Waiver itself provides that if any portion of the Class Action Waiver is held unenforceable, that portion "shall be severed from this Arbitration Agreement" and the claims subject to that portion "shall proceed in a court of competent jurisdiction." Terms § 2(a)(2); *see also* Terms § 2(j). Thus, Plaintiffs' request for public injunctive relief would proceed in court, but their claims for damages would remain in arbitration.

## III. The Arbitration Agreement Is Not Procedurally or Substantively Unconscionable.

### A. The Arbitration Agreement Is Not Procedurally Unconscionable.

Plaintiffs argue that Uber's Arbitration Agreement is procedurally unconscionable because it is surprising. But Uber's Terms call attention to the existence of the Arbitration Agreement in prominent, capitalized text on the first page. *See supra* Section I.B.1; *O'Malley*, 2026 WL 2640697, at *5 (preamble noting "the Terms 'contain an arbitration provision' and direct[ing] [users] to review that section"

---

[6] The California Superior Court's decision in *Mafaher v. Uber Technologies, Inc.*, No. 25STCV17232 (Dkt. 48-4), addressed an older version of Uber's Terms that did not include this language.

precluded high degree of unconscionability); Mot. at 13–14. Plaintiffs' invocation of Uber's modification clause, Opp. at 12–13, founders on the record: Plaintiffs do not point to any retroactive modification of the Terms, and consistent with Uber's practice of periodically prompting users to renew their consent, each Plaintiff affirmatively accepted the updated Terms in April 2026, which contain an arbitration agreement substantively identical to the January 2026 Terms Plaintiffs challenge. Dkt. 35-1, Declaration of Allison Gordon, ¶¶ 19–22; *see O'Malley*, 2026 WL 2640697, at *5 (rejecting identical argument under *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), where "the record does not indicate [the defendant] actually made any modifications to the arbitration agreement"). And Plaintiffs' complaint that the Terms do not identify an arbitration provider for non-California disputes, Opp. at 13, ignores that the Terms prescribe exactly how the provider will be selected—by agreement or, failing that, by court appointment under 9 U.S.C. § 5—as well as other logistical details. Terms §§ 2(c), 2(e), 2(h).

**B. <u>The Pre-Arbitration Conference Requirement Is Not Unconscionable.</u>**

Because the degree of procedural unconscionability is minimal, "Plaintiffs must show a high degree of substantive unconscionability" with respect to the provisions they challenge. *O'Malley*, 2026 WL 2640697, at *7. They cannot. Plaintiffs take objection to the pre-arbitration conference requirement, but "[p]re-arbitration dispute resolution procedures are commonplace and can be both reasonable and laudable." *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1014 (9th Cir. 2023) (internal quotation marks omitted). The requirement asks little of Plaintiffs—a written notice and a telephone or video conference their counsel may attend, with limitations tolled throughout—and it binds both parties equally. Terms § 2(d). Plaintiffs complain that the window for scheduling conferences is 60 days compared to 15 days in *Bielski*, but a lengthier window allows for more flexible scheduling for claimants, and the limitations period is tolled throughout that period.

Plaintiffs do not dispute Uber's authorities on the salubrious effects of personal attendance in settlement conferences.[7] *See* Mot. at 19. Plaintiffs claim instead that the conference requirement is unenforceable because it violates Rule of Professional Conduct 4.2. But there is no Rule 4.2 violation

[7] Undeterred by the Court's determination that the content of these conferences "does not appear relevant," Dkt. 45 at 4, Plaintiffs continue to speculate that Uber uses a conference "script," Opp. at 16. Their only basis is Uber's statement in a discovery letter that these materials, "if such things exist at all," would be privileged. Dkt. 43 at 6. Uber's conditional objection is not an admission.

because the Arbitration Agreement permits Plaintiffs' counsel to be present. The no-contact rule "was designed to permit an attorney to function adequately in his proper role and to prevent the opposing attorney from impeding his performance in such role. If a party's counsel is present when an opposing attorney communicates with a party, counsel can easily correct any element of error in the communication or correct the effect of the communication …." *Mitton v. State Bar of Cal.*, 455 P.2d 753, 758 (Cal. 1969) (discussing predecessor to Rule 4.2); *see Niesig v. Team I*, 558 N.E.2d 1030, 1032–33 (N.Y. 1990) ("[T]he presence of the party's attorney theoretically neutralizes the contact." (quotation marks omitted)).

More broadly, Plaintiffs' Rule 4.2 theory would upend basic contractual principles and the FAA. When Plaintiffs assented to the Terms, there was nothing unlawful about their agreement to participate in the conference, even under Plaintiffs' theory. Plaintiffs in effect claim that a party can back out of an arbitration agreement by subsequently invoking an ethics rule to trump the FAA, nullifying the principle that "the FAA preempts contrary state law." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013). Indeed, on Plaintiffs' telling, no contract to confer in person can ever be valid, because a party can retain counsel, instruct counsel to refuse to attend the meeting, and claim a Rule 4.2 violation.

*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co.*, 425 P.3d 1 (Cal. 2018) does not help Plaintiffs. That case held unenforceable an attorney-client agreement whose very object—a representation undertaken without disclosure of a known conflict—itself violated the Rules of Professional Conduct. *Id.* at 5. The conference requirement is nothing like an attorney's contract with a client whom she cannot represent. Its object is prompt and informal dispute resolution, not any ethical violation.

### C. <u>The Grouping Provision Is Not Unconscionable.</u>

Even if the Court were to entertain the speculative scenario in which Plaintiffs' cases turn into a Mass Action, there is no unreasonable, let alone unconscionable, delay. To the contrary, the grouping provision promotes efficient resolution. Plaintiffs can opt out of arbitration and proceed before this Court if they do not like the grouping procedure. If Plaintiffs stay in arbitration, the Special Master (at Uber's expense) resolves common threshold issues, which accelerates merits adjudication. Terms § 2(a)(3)(c). Plaintiffs' accusation that the Special Master would drag her feet over threshold issues to cause "extreme, open-ended delay" is baseless. Opp. at 17. Indeed, every major arbitration provider has independently adopted the same device because it is impossible to process thousands of simultaneous filings without any

measures to ensure procedural efficiency and administrative oversight. Mot. at 17. "[N]o court would tolerate having to try 7,300 identical cases separately. No arbitration provider should have to, either." *Jones v. Starz Ent., LLC*, 129 F.4th 1176, 1184 (9th Cir. 2025). For instance, administering 2,000 demands before JAMS without such measures would require 2,000 arbitrator appointments from a roster of only about 500 arbitrators and mediators across all areas. *That* delay would be extreme. To address such scenarios, the JAMS rules, triggered at 75 demands (or any number an arbitration agreement specifies), assign all threshold issues to a Process Administrator who may batch or group demands. JAMS, *Mass Arbitration Procedures and Guidelines* (eff. May 1, 2024), https://tinyurl.com/ytz56n4e.

After the Special Master proceedings, groups of up to 100 arbitration demands can proceed concurrently, with each group assigned to an arbitrator. Terms § 2(a)(3)(c). Such "concurrent adjudication of claims … significantly alleviates the problems described" in Plaintiffs' cases, which found "an inherent risk of extreme delays" based on "*sequential* bellwether processes." *O'Malley*, 2026 WL 2640697, at *7–8 (emphasis added); *see Pandolfi*, 2024 WL 4051754, at *6; *Rios*, 807 F. Supp. 3d at 990. Some of those arbitration agreements even openly embraced the possibility of delay, creating a risk of chilling claims at the time of contract formation: "you understand and agree that the resolution of your claim might be delayed." *O'Malley*, 2026 WL 2640697, at *1 (quoting arbitration agreement); *see Rios*, 807 F. Supp. 3d at 990 (agreement stated that its scheme "may delay the arbitration" of claims). Uber's efficient grouping provision neither threatens nor creates delay.

Moreover, should an arbitrator presiding over any Mass Action decide that any part of the grouping procedure is unconscionable, that arbitrator has full authority under the Delegation Agreement to say so and decline to enforce it. That is the very "flexibility" whose absence *O'Malley* and *Rios* found dispositive. *O'Malley*, 2026 WL 2640697, at *8; *Rios*, 807 F. Supp. 3d at 990.

### D. Plaintiffs' Miscellaneous Attacks Are Meritless.

Plaintiffs' remaining half-hearted attacks on the Terms, Opp. at 22–23, warrant little discussion. Each concerns a provision that is committed to the arbitrator under the Delegation Agreement; each is unconnected to any dispute Plaintiffs actually have with Uber; and any alleged asymmetry does not rise to unconscionability. *See* Mot. at 22–24. Briefly: the Rule 11 provision expressly authorizes sanctions "for *either party's* violation," Terms § 2(d) (emphasis added); the offer-of-judgment provision is available to

"any party," *id.* § 2(f); the 30-day period for requesting refunds is a customer-service procedure expressly "subject to applicable law," Terms § 7; the litigation-funding disclosure mirrors this District's own disclosure requirement, Civ. L.R. 3-15; and the intellectual-property carve-out is enforceable, *Han v. Synergy Homecare Franchising, LLC*, 2017 WL 446881, at *10–11 (N.D. Cal. Feb. 2, 2017) (Westmore, J.). Plaintiffs' catalog of grievances about provisions that have never affected them is not a basis to refuse enforcement of an agreement to arbitrate.

## IV. Severance Is the Remedy for Any Unenforceable Provision.

None of the provisions Plaintiffs challenge is so intrinsically intertwined with the core agreement to arbitrate individually that severance would be impractical. "The strong legislative and judicial preference is to sever the offending term," and courts must take into account a severance clause "as an expression of the parties' intent." *Ramirez*, 551 P.3d at 544, 547 (internal quotation marks omitted). Plaintiffs' reliance on *O'Malley* is misplaced: the agreement there contained an express *anti*-severance clause providing that, if any part of its mass arbitration procedures were held invalid, the arbitration agreement "shall be severed in its entirety." 2026 WL 2640697, at *9. Uber's Terms express the opposite intent. Terms § 2(j) (directing severance of any unenforceable provision with no impact on the remainder of the Arbitration Agreement). Nor would enforcement offend the "interests of justice." Opp. at 22. That inquiry asks whether severance would "condone an illegal scheme" or reward "a systematic effort to impose arbitration … to secure a forum that works to the stronger party's advantage." *Ramirez*, 551 P.3d at 547. Neither is present. The Terms establish a reasonable and navigable process of the kind courts routinely enforce, and the provisions Plaintiffs attack are efficiency measures collateral to that core agreement to arbitrate. Moreover, the Terms' consumer-protective provisions, Mot. at 3, are the opposite of a forum rigged in Uber's favor.

## CONCLUSION

The Court should grant Uber's motion to compel arbitration of all of Plaintiffs' claims and stay this action pending completion of arbitration. In the alternative, if the Court concludes that any provision of the Arbitration Agreement is unenforceable, the Court should sever that provision, as the Terms direct, Terms §§ 2(a)(2), 2(j), compel arbitration of Plaintiffs' claims on an individual basis, and stay any claims or portions of claims that remain in this Court pending completion of arbitration.

Respectfully submitted,

Dated: October 30, 2026

JENNER & BLOCK LLP

By: */s/ Sati Harutyunyan*

Sati Harutyunyan
Adam Unikowsky*

*Attorneys for Defendant Uber Technologies, Inc.*
* *Pro hac vice*